**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| GK PARANDHAMAIA and JAN PARANDHAMAIA, | ) | CIVIL ACTION |
| | ) | |
| | ) | No. 1:25-cv-02691-SAG |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **FILED ELECTRONICALLY** |
| | ) | |
| SMITH FARM HOLDINGS, LLC and STEVEN G. SMITH, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM IN LAW IN SUPPORT OF DEFENDANTS'</u>
## <u>MOTION TO DISMISS COMPLAINT</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

I.    INTRODUCTION ............................................................................................................... 1

II.   BACKGROUND .................................................................................................................. 1

III.  LEGAL STANDARD ......................................................................................................... 7

IV.   ARGUMENT ...................................................................................................................... 8

    A.    Plaintiffs fail to state a claim for Intentional Infliction of Emotional Distress under Count III of the Complaint. ................................................................................................... 8

    B.    Plaintiffs Fail to State a Claim for Invasion of Privacy (Intrusion Upon Seclusion) Under Count II of the Complaint. ........................................................................................ 10

    C.    Plaintiffs Fail to State a Claim for Retaliatory Eviction Under Count VI of the Complaint. ............................................................................................................................ 12

    D.    Plaintiffs Fail to State a Claim for Breach of the Lease Under Count I of the Complaint. ............................................................................................................................ 15

    E.    Plaintiffs Fail to State a Claim for Trespass Under Count V of the Complaint. ........... 17

    F.    Plaintiffs Fail to State a Claim for Nuisance Under Count IV of the Complaint. ........ 18

    G.    Plaintiffs Fail to State a Claim for Punitive Damages .................................................. 19

V.    CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Adcock v. Freightliner LLC*, 550 F.3d 369 (4th Cir. 2008)…………………………………………8

*Albright v. Fishkind*, 71 A.3d 90 (Md. 2013)……………………………………………….9, 18, 19

*Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462 (D. Md. 2002)………………………………8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………………….8

*Aziz v. Alcolac*, 658 F.3d 388 (4th Cir. 2011)……………………………………………………8

*Demby v. Maryland*, 961 F. Supp. 882 (D. Md. 1997)…………………………………………..8

*Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1126 (Md. 1995)……………………………….19

*Exxon Mobil Corp. v. Albright*, 71 A.3d 30 (Md. App.  2013)………………………………….17

*Ford v. Baltimore City Sheriff's Office,* 814 A.2d 127 (Md. App. 2002)………………………..17

*Gennell v. Denny's Corp.,* 378 F.Supp.2d 551, 560 (D. Md. 2005)……………………………..9

*Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (Md. 1977)…………………………………………9

*Legg v. Castruccio*, 642 A.2d 906 (Md. App. 1994)……………………………………………16

*Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253 (Md. App. 2009)…………16

*Manikhi v. Mass Transit Admin.,* 360 Md. 333, 758 A.2d 95 (Md. 2000)………………………9

*Mathis v. Hargrove,* 888 A.2d 377 (Md. App. 2005)………………………………..……….16

*Miller Bldg. Supply, Inc. v. Rosen*, 510 A.2d 1343, 1346 (Md. 1986)………………………….19

*Mitchell v. Baltimore Sun Co.,* 883 A.2d 1008 (Md. App. 2005)……………………………….17

*Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992)………………………………..19

*Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013)……………………………..8

*Parandhamaias v. Fitzwater* at C-11-CV-19-000026 (Garrett Cty. 2019)………………………2

*Parandhamaias v. SFH*, C-11-CV-22-000109……………………………………………...3

*Parandhamaias v. SFH*, C-11-CV-23-000070……………………………………………....3

*Parandhamaias v. SFH,* 2023-No. 1790 (Md. App.)…………………………………………..4

*Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116 (Md. App. 1986)………………..10

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009)………………………………8

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006)………………………………7

*Ragland v. A.W. Indus.,* No. 08–1817, 2009 U.S. Dist. LEXIS 71889,
2009 WL 2507426  (D. Md. Aug. 13, 2009) …………………………………………………..9

*Royal Inv. Grp., LLC v. Wang*, 183 A.3d 752 (Md. App. 2018)……………………………17, 18

*U.S. Equal Emp. Opportunity Comm'n v. Koerner Mgmt. Grp., Inc.*,
No. CV GLR-21-652, 2021 WL 4255374 (D. Md. Sept. 17, 2021)…………………………15

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008)…………...15

*Waldrop v. Sci. Applications Int'l Corp.*, 2010 WL 2773571 (D. Md. July 13, 2010)…………9

*White v. Franz,* No. 1:22-CV-02543-JRR, 2024 WL 1969763 (D. Md. May 2, 2024)……….12

*Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931 (Md. 2011)………………………………...18

**Statutes**

Md. Code Ann. Criminal Law § 3-902………………………………………………………..11

Md. Code Ann. Criminal Law § 3-903………………………………………………………..11

Md. Code Ann. Real Prop. § 2-115……………………………………………………………16

Md. Code Ann. Real Prop. § 8-208.1……………………………………………………….12, 15

**Rules**

Fed. R. Civ. P. 8……………………………………………………………………………..8

Fed. R. Civ. P. 12……………………………………………………………………………7

**Treatises**

Restatement of Torts 2d, § 652B……………………………………………………………10

iii

## I.   INTRODUCTION

The above captioned action is simply the latest in a long series of efforts by Plaintiffs, GK and Jan Parandhamaia (collectively, "Plaintiffs"), to intimidate and harass Defendants, Smith Farm Holdings, LLC ("SFH") and Steven G. Smith (individually, "Smith" and collectively with SFH, "Defendants"), with the goal to extort SFH into returning the property at issue in this matter and which SFH purchased from Plaintiffs in July 2022 in an arms length transaction in which both sides were represented by counsel.  As set forth at further length herein, the property at issue was Jan Parandhamaia's family farm on which she grew up and almost immediately upon selling it to SFH for $1.3 million dollars, she regretted giving up the property.  However, rather than simply using the $1.3 million dollars she received from SFH to establish a new home and accept the sale of the property, Jan Parandhamaia and her husband GK Parandhamaia instead engaged in a series of actions intended to make SFH's ownership of the property so costly, antagonistic and toxic that SFH would simply give the property back to Plaintiffs.  This course of conduct included trespassing on the property, repeatedly filing criminal charges against Smith, SFH's principal, filing and prolonging multiple lawsuits related to the property, and threatening to file additional lawsuits which never materialized.  Accordingly, the allegations and claims in the instant Complaint should be seen for exactly what they are: Plaintiffs' most recent attempt to use the Courts to harass and intimate SFH, Smith and his family.

## II.   BACKGROUND

This case has its genesis in a real estate transaction that took place in July 2022 between Plaintiffs and SFH (the "Transaction").  Plaintiffs, who are husband and wife, sold two contiguous parcels of land and their attendant improvements to SFH for the total amount of $1.3 million. [Complaint, ¶ 6 and Ex. 1 thereto, [Dkt. No. 2.7]; *see also* 10.4.23 Opinion and Order of the

1

Honorable Judge Timothy Finan (the "Order"), p. 1, attached as Exhibit A to Exhibit 5 of the Complaint [Dkt. No. 2.7]).  Specifically, the sale included: (i) a larger parcel encompassing some 160-acres of farmland and an historic farmhouse and barn located at 2715 Bittinger Road, Swanton, Garrett County Maryland 21561 ("2714 Bittinger")[1] and (ii) a smaller parcel of approximately 9.75 acres which contained a small cabin and garage, located at 2440 Bittinger Road, Swanton, Garrett County Maryland 21561 ("2440 Bittinger" and collectively with 2714 Bittinger, the "Properties").  (*Id.*).  The Properties had been in Jan Parandhamaia's family for generations[2] and she had grown up in the cabin located at 2440 Bittinger.

Smith is the principal and a member of SFH and, in light of the Parandhamaia's history with the Properties, he agreed to allow Plaintiffs to rent the cabin and garage (the "Premises") located at 2440 Bittinger for a period of five years at a total cost of $5 ($1 per year) following the Transaction.  (Order, p. 1, Ex. A to Ex. 5 of Complaint [Dkt. No. 2.7]).  Accordingly, on July 21, 2022, Plaintiffs and SFH entered into a residential lease agreement reflecting these, and other terms (the "Lease").  (Complaint, ¶ 8 [Dkt. No. 2.7]).[3]  Almost immediately upon occupying 2440

---

[1] 2714 Bittinger actually consists of two contiguous parcels of land but for clarity's sake is referred to herein as a single piece of property.

[2] Notably, Plaintiffs previously purchased 2714 Bittinger from Jan Parandhamaia's brother and sued him and his wife in connection with that sale as well. *See Parandhamaias v. Fitzwater* at C-11-CV-19-000026 (Garrett Cty. 2019).

[3] Inexplicably, Plaintiffs attach a copy of the post-settlement occupancy agreement for the farmhouse located on 2714 Bittinger (the "PSOA") and a partially signed prior draft of the lease agreement for the cabin and garage at 2440 Bittinger and describe them collectively as the lease at issue in this case.  (*Id.*).  However, the PSOA governed the period from closing on the sale of the Properties until September 1, 2022, during which Plaintiffs were allowed to stay in the farmhouse at 2714 Bittinger before moving to the cabin and garage (i.e. the Premises) at 2440 Bittinger and has no bearing on Plaintiffs' claims in this action.  Further, the partially executed lease relating to 2440 Bittinger contains terms that were later modified in the fully executed Lease, which itself is attached as Exhibit D to the Motion for Sanctions attached as Exhibit 5 to the Complaint.  (*Id.*).  While the minor differences in the partially executed lease and the fully executed Lease have no bearing on Plaintiffs' Claims or the instant Motion to Dismiss, Plaintiffs failure to attach the appropriate documents in support of their claims despite being in possession of same are indicative of the lack of rigor, substance and truth in their pleadings as a whole.

2

Bittinger Plaintiffs began causing issues for its landlord, SFH, and Smith and his family who ultimately renovated and occupied the farmhouse on the adjacent 2714 Bittinger Property.

Plaintiffs claimed that a well that serviced the Premises on 2440 Bittinger did not work, despite previously having owned and controlled the property for years prior to the sale to SFH, and that SFH was required to install a new well pursuant to the terms of the Lease. Further, Plaintiffs began farming portions of 2440 Bittinger despite the Lease only allowing them access to the cabin and garage (i.e. the Premises) and they trespassed upon other portions of 2440 Bittinger and 2714 Bittinger – essentially acting as if the sale to SFH had never occurred and the Properties still belonged to them. When SFH indicated that it was Plaintiffs' obligation to fix the well under the Lease, Plaintiffs instituted two lawsuits against SFH.[4] The first suit, a landlord-tenant action, was filed on October 21, 2022 and requested that Plaintiffs be excused from paying the $1 a year rent because the Premises at 2440 Bittinger purportedly lacked water as a result of the alleged issues with the well. (*See Parandhamaias v. SFH*, C-11-CV-22-000109).[5] On April 13, 2023, Plaintiffs subsequently filed a second action demanding that SFH install a new well on the property and for damages as a result of the purported lack of water at the Premises. (*See Parandhamaias v. SFH*, C-11-CV-23-000070).[6]

Moreover, Plaintiffs refused to cease farming 2440 Bittinger and trespassing on the Properties and Jan Parandhamaia also filed at least two criminal complaints against Smith; claiming that he was trespassing on Plaintiffs' property despite the fact that SFH owned the entirety of 2440 Bittinger and 2714 Bittinger. Accordingly, SFH filed a Counterclaim asserting, *inter alia*,

---

[4] Smith was not a party to these prior suits in the Trial Court.

[5] A true and correct copy of the complaint initiating the landlord-tenant action, which is a matter of public record, is attached hereto as Exhibit A.

[6] A true and correct copy of the complaint initiating this second action, which is a matter of public record, is attached hereto as Exhibit B.

that it had no obligation to install a new well at 2440 Bittinger, that Plaintiffs had failed to disclose any issues with the well during the sale of the Properties, that the Lease allowed Plaintiffs access only to the cabin and garage on 2440 Bittinger (i.e., the Premises) and that Jan Parandhamaia stole a camera from SFH's property.  In turn, SGH also sought an injunction barring Plaintiffs from utilizing any portion of the Properties beyond the cabin and garage at 2440 Bittinger.

The parties' various actions were consolidated for trial in the Circuit Court for Garrett County (the "Trial Court"), which was held on September 5 and October 4, 2023.  Plaintiffs' principal complaint during trial was that they simply regretted selling the 2440 Bittinger parcel to SFH and wished they had retained it as it was the home that Jan Parandhamaia grew up in and she was emotionally attached to same.

On October 13, 2023, the Trial Court issued its Declaratory Judgment and Order and Memorandum Opinion (i.e. the Order), finding that SFH was required to take steps to ensure that Plaintiffs had access to water at 2440 Bittinger and that the property rented to Plaintiffs pursuant to the Lease is "limited to the house and garage and the curtilage area immediately surrounding the house" and that Plaintiffs "are not entitled to any other access, beyond the house and garage, other than for use of the driveway." (Order, p. 1, Ex. A to Ex. 5 of Complaint [Dkt. No. 2.7]).

In compliance with its obligations under the Order, and at significant cost, SFH ensured that a new well was drilled at 2440 Bittinger.  Despite SFH's compliance with the Trial Court's Order, Plaintiffs appealed the Order to the Appellate Court of Maryland on November 13, 2023 (the "Appeal"), ultimately asserting through convoluted and often contradictory briefing that the Trial Court erred in resolving all of the pending claims between the parties at the trial. (*See Parandhamaias v. SFH,* 2023-No. 1790 (Md. App.)).

4

Following the trial and during the pendency of the appeal, Plaintiffs continuously violated the Trial Court's Order by trespassing on the Properties beyond the Premises and harassing Smith and his family, despite repeated requests by Defendants that Plaintiffs cease this conduct. (Motion for Sanctions, ¶¶ 8-14, Ex. 5 to Complaint [Dkt. No. 2.7]). Further, SFH learned that Plaintiffs had actually purchased a new home approximately 3.5 miles away from the Properties in September 2023 and failed to disclose this to the Trial Court even though this purchase occurred *during the trial.* (*Id.* at ¶¶ 8-14 and Ex. C to Ex. 5 to the Complaint [Dkt. No. 2.7]). Despite purchasing a new home and no longer residing at the Premises on 2440 Bittinger, Plaintiffs continued to claim that they needed a new well at 2440 Bittinger, could not find an alternative place to live, were entitled to damages as a result of the alleged lack of water at the property, and continued to use their access to the property to harass and intimidate SFH and Smith and his family. (*Id.*). Accordingly, SFH filed a Motion for Sanctions on June 12, 2024, requesting that the Trial Court find Plaintiffs in contempt of the Order and deem Plaintiffs to be in violation of the Lease for failing to use the Premises "solely for residential purposes." (*Id.* at ¶¶ 21-22). The Trial Court denied the Motion for Sanctions without opinion on July 17, 2024. (A true and correct copy of the Order denying the Motion for Sanctions is attached hereto as Exhibit C).

In turn, and after briefing and argument on the appeal, Plaintiffs summarily dropped the appeal of the Order on March 13, 2025, without any notice or communication to SFH. Following the withdrawal of the Appeal, Defendants counsel inquired as to what happened with Plaintiffs' counsel, who indicated that despite their previous vigorous pursuit of the Appeal, Plaintiffs believed that a decision in their favor would provide them with little actual relief and that they

instead intended to file *yet another lawsuit* against SFH[7] relating to the existence of cameras on SFH's own property and the construction of a fence on 2440 Bittinger beyond the curtilage of the home located on the property and that they did not want the Appeal interfering with those claims as they felt it was "cleaner" to simply file a new action entirely.  Despite the foregoing, and the fact that Plaintiffs do not live at 2440 Bittinger, Counsel for Plaintiffs reasserted that Plaintiffs regretted selling 2440 Bittinger, that he was being paid hourly (not on a contingency) and claimed that he and Plaintiffs apparently believed that they could recover hundreds of thousands of dollars for these purported "claims" in light of a recent large invasion of privacy verdict in Garrett County.[8]

It is against this backdrop that the instant matter has been filed.  Plaintiffs now summarily claim that Defendants have breached the Lease (Count I), invaded their privacy (Count II), intentionally caused them emotional distress (Count III), engaged in nuisance (Count IV) and trespass (Count V), and engaged in  retaliatory action against Plaintiffs for raising issues under the Lease (Count VI).  While virtually every fact set forth in the Complaint is untrue or misrepresented, and accordingly vehemently denied, Defendants recognize the Court's standard of review at the Motion to Dismiss stage.  However, even with this deferential standard, Plaintiffs have not, and indeed cannot, support their claims.

In short, Plaintiffs assert that Defendants (i) installed cameras outside of the Premises leased by Plaintiffs and on property owned by SFH, (ii) installed a "barbed wire"[9] fence beyond

---

[7] In addition to the two prior suits filed against SFH and the two criminal complaints against Smith in the three years since the Transaction, Plaintiffs also previously threatened to file another suit related to the sale of the Properties but apparently backed down when Defendants' counsel made clear that the case lacked any merit or justification.

[8] To date, Defendants have been unable to identify this purported case.

[9] It is denied that the fence is "barbed wire."

the curtilage of the cabin they lease and on property owned by SFH, (iii) drove vehicles on the driveway owned by SFH, (iv) disabled a security gate owned by SFH and located on property owned by SFH, (v) filed a Motion for Sanctions against Plaintiffs stemming from their violation of the Lease, which was denied, and (vi) attempted to enter the Premises on one occasion almost year ago "without notice or permission."[10]  (Complaint ¶¶ 11-15 [Dkt. No. 2.7]).  Plaintiffs merely opine that the cameras "appear capable of recording private activities inside the home" without any factual support or allegation of what said private activities were or that the cameras did in fact record same, nor do they allege that the cameras capture audio or that anyone viewed footage of these private activities or otherwise disseminated footage of same, all of which is denied. Likewise, Plaintiffs offer no factual support regarding the purported lack of safety at the Premises and indeed claim that they continue to reside at same.  (Complaint, ¶ 3 [Dkt. No. 2.7]).   And, finally, Plaintiffs provide no particularized allegations of the injuries they allegedly suffered as a result of this alleged conduct, whether financial or otherwise, and indeed the only references to any emotional injury pertains to solely Jan Parandhamaia and not GK Parandhamaia.  (*See e.g.* Complaint, ¶¶ 11-15 [Dkt. No. 2.7]).

Accordingly, the Complaint must be dismissed, with prejudice.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." The rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[10] Smith's attempt to enter the premises was part of an inspection authorized under the Lease and which Plaintiffs were notified of in advance and consented to.  Moreover, Plaintiffs were not even at the Premises during this event.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Well-pleaded facts must be accepted as true, *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), and construed in the light most favorable to the plaintiff, *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008). However, conclusory allegations or speculation cannot withstand dismissal. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (stating that it "is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss"). While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss including publicly available information. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## IV.    ARGUMENT

### A.  Plaintiffs fail to state a claim for Intentional Infliction of Emotional Distress under Count III of the Complaint

Count III of Plaintiffs' Complaint asserts a claim for Intention Infliction of Emotional Distress ("IIED"). However, Maryland courts have "severely limited" recovery for IIED. *Demby v. Maryland*, 961 F. Supp. 882, 884 (D. Md. 1997). To prevail, Plaintiffs must establish: (1) intentional or reckless conduct; (2) conduct that is extreme and outrageous; (3) causation; and (4) severe emotional distress. Id. Each element must be pled and proved with specificity, and

deficiency in any element is fatal. *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).

To establish the requirement of "extreme and outrageous" conduct, Plaintiff must show that "the behavior 'was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Gennell v. Denny's Corp.,* 378 F.Supp.2d 551, 560 (D. Md. 2005) (quoting *Harris v. Jones,* 281 Md. 560, 380 A.2d 611, 614 (Md. 1977)).

Here, Plaintiffs allege only that Defendants installed cameras on SFH's own property, built a fence on SFH's own property, drove on a driveway owned by SFH, attempted (unsuccessfully) to enter the Premises on one occasion, and filed a motion for sanctions. The conduct alleged here, even if true, falls well short of the requirement that extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Harris*, 380 A.2d at 614.

Even if Plaintiffs could satisfy the first prong, Plaintiffs must also allege facts demonstrating "a severely disabling emotional response, so acute that no reasonable person could be expected to endure it." *Gennell*, at 560. To do so, a plaintiff must "plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Manikhi v. Mass Transit Admin.,* 758 A.2d 95, 113 (Md. 2000). In other words, General allegations of "emotional distress" or "mental anxiety" are insufficient. *Waldrop v. Sci. Applications Int'l Corp.*, 2010 WL 2773571, at *5 (D. Md. July 13, 2010); see also *Ragland v. A.W. Indus.,* No. 08–1817, 2009 U.S. Dist. LEXIS 71889, at *34, 2009 WL 2507426 (D.Md. Aug. 13, 2009) (granting motion to dismiss where the plaintiff made general allegation that he suffered "severe emotional distress" without providing more information about the degree of his distress).

Here, Plaintiffs allege only vague emotional harms, attributable solely to Jan Parandhamaia, without detailing the severity, duration, diagnosis or treatment of such harms. Plaintiffs do not allege disabling trauma, medical treatment, or the severity, intensity, or duration of distress. (*See* e.g. Complaint, ¶¶ 18, 29 [Dkt. No. 2.7]).  They simply assert that they suffered "distress," despite the fact that they claim to still live at the Premises.  Such threadbare assertions cannot sustain an IIED claim.

Accordingly, Plaintiffs' IIED claim fails as a matter of law and must be dismissed.

### B. Plaintiffs Fail to State a Claim for Invasion of Privacy (Intrusion Upon Seclusion) Under Count II of the Complaint

Count II of Plaintiffs' Complaint purports to set forth a claim for Invasion of Privacy (Intrusion Upon Seclusion).  Maryland recognizes intrusion upon seclusion where a defendant intentionally intrudes into the private affairs of another in a manner "that would be highly offensive to a reasonable person." *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116 (Md. App. 1986) (citing Restatement of Torts 2d, § 652B).

Here, the Complaint alleges only that cameras were installed outside Plaintiffs' leased Premises, on an adjacent property, and "appear capable" of recording private activities and that Defendants physically encroached upon the curtilage of the leased premises. (Complaint ¶¶ 11, 23–24 [Dkt. No. 2.7]). Critically, Plaintiffs do not allege that any footage was actually captured, viewed, disseminated, or otherwise invaded their privacy nor do they identify what, if any, private moments or areas of the home were *actually* recorded.   Because Plaintiffs allege only the speculative possibility of —but not actual —intrusion, Count II must be dismissed.

This is particularly true where Plaintiffs have no expectation of privacy in the outside of their home.  Here, Plaintiffs lease only the cabin and the garage (i.e. the Premises) at 2440 Bittinger, which are surrounded by approximately 170 acres of land owned by SFH.  Plaintiffs

concede that the alleged cameras are located on SFH's property and not on or in the Premises. (Complaint, ¶ 11 [Dkt. No. 2.7]).  Further, Plaintiffs at all times were and are aware of the cameras' existence and there is no allegation that they were surreptitiously placed to avoid detection (*Id.* at ¶¶ 11, 24).  Accordingly, they knew and have known of the cameras' presence and operation and, as such, cannot have an expectation of privacy in actions taken around or even in the Premises if they believe the cameras can capture same, which is explicitly denied.  Indeed, there is no allegation that Plaintiffs attempted to cover their windows but SFH sought to circumvent this expectation of privacy or otherwise did anything besides conspicuously placing cameras on its own property to protect same.

Indeed, this distinction is emphasized by Maryland statutes which explicitly provide for criminal and civil penalties for those who surreptitiously place cameras on private property with the intent to observe individuals within a private residence located on the property or those who use cameras to observe the "private areas" [11] of an individual without consent and for a prurient interest.  Md. Code Ann. Criminal Law §§ 3-902 and 3-903.  Section 3-902, relating to video surveillance with prurient intent, explains that no criminal or civil cause of action will lie where the camera is not placed with a prurient interest and/or its placement is intended to protect private property.  *Id.*  Likewise, Section 3-903, relating to camera surveillance, states that no claim for criminal or civil liability can lie where the camera is not hidden and/or is not located on the property there the private property is located.  *Id.*

Instantly, not only is there no allegations that Defendants surreptitiously placed the cameras, possessed a prurient interest in placing same or intended or did, in fact, observe Plaintiffs' "private areas," the facts alleged by Plaintiffs establish that the cameras were not hidden, were

---

[11] Defined as "the naked or undergarment-clad genitals, pubic area, buttocks, or female breast of an individual."  Md. Code Ann. Criminal Law § 3-902(a)(4).

11

placed on SFH's property and it is clear from the history of the parties that they were placed because of the ongoing disputes between Plaintiffs and Defendants.

Accordingly, the claim for invasion of privacy must be dismissed.

### C. Plaintiffs Fail to State a Claim for Retaliatory Eviction Under Count VI of the Complaint

In Count VI of the Complaint, Plaintiffs claim that Defendants "initiated a baseless eviction proceeding" in purported retaliation for Plaintiffs filing the actions in the Trial Court to obtain water for the Premises at 2440 Bittinger and for damages arising from same and for obtaining a judgment in connection with these actions. (Complaint, ¶¶ 13, 40-41 [Dkt. No. 2.7]). Further, Defendants claim that this "eviction proceeding" was initiated because Plaintiffs requested that the cameras on SFH's property be removed. (*Id.* at ¶¶ 42-43). Specifically, Plaintiffs claim that Defendants violated Maryland Real Property Code Section 8-208.1 by filing the Motion for Sanctions in retaliation for these purportedly protected actions.

In relevant part, Section 8-208.1 explains that a landlord may not "bring or threaten to bring an action for possession against a tenant…because the tenant or the tenant's agent has provided written or actual notice of a good faith complaint about an alleged violation of the lease, violation of law, or condition on the leased premises that is a substantial threat to the health or safety of occupants to…the landlord…or because the tenant or the tenant's agent has…filed a lawsuit against the landlord." *Id.*; *see also White v. Franz,* No. 1:22-CV-02543-JRR, 2024 WL 1969763, at *5 (D. Md. May 2, 2024). The corollary to this is that where an action for possession is filed for reasons *unrelated* to Plaintiffs' actions against the landlord, it is not retaliatory. *See Id.* Moreover, "an action by a landlord may not be deemed to be retaliatory for purposes of this section if the alleged retaliatory action occurs more than 6 months after a tenant's action that is protected under [the statute]." § 8-208.1(e).

Initially it must be noted that SFH, not Smith, is Plaintiffs' landlord. (*See* Lease, attached as Ex. D to Ex. 5 to Complaint [Dkt. No. 2.7]). Accordingly, he is not a proper defendant in any claim alleging retaliatory eviction. Further, SFH, as the landlord, did not initiate an action for possession against Plaintiffs. Rather, SFH[12] filed a Motion for Sanctions *in the existing action* between Plaintiffs and SFH and arising out of Plaintiffs' failure to comply with the Trial Court's Order confirming the terms of the Lease and holding specifically that Plaintiffs were "not entitled to any other access, beyond the house and garage, other than for use of the driveway, to any other part of the parcel they sold to Smith Farm holdings, LLC, at 2440 Bittinger Road or 2714 Bittinger Road." (*See* Motion for Sanctions, Ex. 5 to Complaint [Dkt. No. 2.7]; Order at Ex. A to Ex. 5 of Complaint [Dkt. No. 2.7]). While SFH sought to terminate the lease as a sanction for Plaintiffs' continued violations of the Order, the relief was denied, and did not constitute an action for possession in any instance. (Order Denying Motion for Sanctions, Ex. D).

Further, and as set forth at further length in the Motion for Sanctions, SFH filed the Motion for Sanctions as a result of Plaintiffs' continued failure to comply with the terms of the Trial Court's Order and the Lease by, *inter alia¸* refusing to move items that Plaintiffs had stored on SFH's property off of the property, continuing to access the full 9.75 acres of 2440 Bittinger, and failing to use the cabin for residential purposes as they no longer lived there. (*See* Motion for Sanctions, Ex. 5 to Complaint [Dkt. No. 2.7]). Indeed, Plaintiffs concede that at least one of the stated reasons for the filing of the Motion for Sanctions was SFH's belief that Plaintiffs no longer resided at the Premises. (Complaint, ¶ 43 [Dkt. No. 2.7]). Accordingly, the Motion for Sanctions was *not* filed because Plaintiffs had filed the underlying lawsuits related to the well[13] or raised

---

[12] Smith was not a party to this suit or the Motion for Sanctions.

[13] Again, SFH in fact complied with the Trial Court's Order and installed a new well to service the Premises at 2440 Bittinger.

13

issues about the cameras on SFH's property and, as such, the motion was not, and could not be, retaliatory.

Section 8-208.1(e) also makes clear that "an action by a landlord may not be deemed to be retaliatory for purposes of this section if the alleged retaliatory action occurs more than 6 months after a tenant's action that is protected under [the statute]." *Id.* Plaintiffs first claim that SFH filed the Motion for Sanctions on June 21, 2024 because "Plaintiffs had previously filed a claim against Defendants to secure water for the premises [sic] said suit was successful and Plaintiffs obtained a judgment requirement Defendants to provide water to the premises." (Complaint, ¶ 40 [Dkt. No. 2.7]). However, Plaintiffs' rent escrow action and suit for a new well and damages arising from the alleged lack of water were filed on October 21, 2022 and April 13, 2023, respectively, and the Trial Court issued its Order on October 13, 2023. (Landlord Tenant Complaint, Ex. A; Damages Complaint, Ex. B). Accordingly, the Motion for Sanctions cannot be deemed retaliatory as it was filed more than six months beyond any of these dates.

Plaintiffs further claim that "Plaintiffs, through their counsel Adam Greivell, Esq. exercised their legal right to demand removal of the invasive cameras violating their privacy and quiet enjoyment of the leased premises," and that "**[i]n direct response** to Plaintiffs' demand, Defendants initiated a baseless eviction proceeding…as an act of retaliation for asserting their rights." (Complaint, ¶¶ 42-43 [Dkt. No. 2.7]) (emphasis added). Plaintiffs allege that this demand through their attorney was made by letter, however, they do not state the date such letter was sent and, as a result, cannot state a claim arising out of this purported protective activity because it has not satisfied the requirements of Section 8-208.1(e) that the landlord's alleged retaliatory action occur within six months following the tenants' protected act. (Complaint, ¶ 11 [Dkt. No. 2.7]). Moreover, granting Plaintiffs leave to amend this claim to include the date of the letter would be

14

futile, as Plaintiffs' counsel, in fact, sent the letter requesting the removal of the cameras on SFH's property on December 23, 2024, a full *six months after* SFH filed its Motion for Sanctions on June 21, 2024 and, as such, the motion could not possibly have been filed in retaliation for Plaintiffs' request that SFH remove the cameras. (A true and correct copy of the 12.23.24 Letter is attached hereto as Exhibit D).[14] Indeed, leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. *U.S. Equal Emp. Opportunity Comm'n v. Koerner Mgmt. Grp., Inc.*, No. CV GLR-21-652, 2021 WL 4255374 (D. Md. Sept. 17, 2021) (citing *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

Finally, Plaintiffs appear to claim that they are entitled to recover for "emotional distress" that arose from the alleged retaliatory eviction. (Complaint, ¶ 44 [Dkt. No. 2.7]). However, Section 8-208.1(c)(1) is clear that the only damages recoverable for a claim for retaliatory eviction consist of "damages not to exceed the equivalent of 3 months' rent,[15] reasonable attorney fees, and court costs." There is no provision for the recovery of "emotional distress," accordingly this claim should be dismissed.

### D. Plaintiffs Fail to State a Claim for Breach of the Lease Under Count I of the Complaint

In Count I of the Complaint, Plaintiffs claim that "Defendants" breached the "implied covenant of quiet enjoyment and explicit terms [of the Lease] requiring **defendants** to maintain the premises in a safe and habitable condition; **Defendants** breached these obligations by installing cameras, disabling the security gate, restricting the curtilage of the house with barbed wire fence, and attempting to forcibly enter the house." (Complaint, ¶ 21 [Dkt. No. 2.7]) (emphasis added). "In an action for breach of contract, the plaintiff must prove that the defendant had a contractual

---

[14] While this letter is not publicly available, it is attached here to establish the futility of an amendment to this claim.

[15] It is worth noting that three months' rent under the Lease amounts to approximately eight cents ($0.08).

15

obligation and that the obligation was breached." *Mathis v. Hargrove,* 888 A.2d 377, 396 (Md. App. 2005).  Further, Section 2-115 of Maryland's Real Property Code recognizes an implied covenant "by the lessor that the lessee shall quietly enjoy the land."  Md. Code Ann. Real Prop. § 2-115.

As set forth above, Smith was neither a party to the Lease nor the lessor of the Premises at 2440 Bittinger and, as such, must be dismissed from the breach of contract claim.  Further, Plaintiffs have failed to point to a single term or provision of the Lease that SFH breached aside from the implied covenant of quiet enjoyment.  Indeed, in the Lease there is no obligation of SFH to provide a security gate for the driveway which accesses the Premises at 2440 Bittinger, nor is there any discussion whatsoever of SFH's right to place security cameras or fencing on its own property outside the curtilage of the Premises.  (*See generally* Lease, Ex. D to Ex. 5 to Complaint [Dkt. No. 2.7]).  Likewise, there is no bar to Landlord attempting to gain access to the Premises in an emergency or upon proper notice. (*See Id.* at § 12).

Moreover, these purported actions do not amount to a violation of the implied covenant of quiet enjoyment.  Maryland Courts have explained that "[t]he scope or magnitude of the interference necessary to constitute a breach of the covenant of quiet enjoyment must be such as goes to the essence of what the landlord is to provide." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253, 266 (Md. App. 2009) (citing *Legg v. Castruccio*, 642 A.2d 906, 920 (Md. App. 1994)).  Pursuant to the Lease, SFH was required to provide a cabin and garage for rent at $1 per year for 5 years.  (*See generally* Lease, Ex. D to Ex. 5 to Complaint [Dkt. No. 2.7]). There is no dispute that SFH provided this and, indeed, Plaintiffs continue to claim that they live on the Premises.  (Complaint ¶ 3 [Dkt. No. 2.7]).  Plaintiffs do not explain how cameras and a fence on an adjacent property preclude them from living in the cabin or accessing the garage.

16

Likewise, there is no obligation under the Lease to provide a security gate for the driveway which Plaintiffs may only use to access the leased Premises and they provide no example or allegation of an interference with their use of the cabin or garage as a result of same.  Further, Plaintiffs provide no explanation as to how a single purported attempt by SFH to access the cabin, which was allegedly unsuccessful, likewise deprived them of the very essence of the Lease.  Accordingly, these allegations cannot support a claim for a breach of the implied covenant of quiet enjoyment.

Finally, Plaintiffs claim damages for emotional distress in connection with this breach of contract claim.  However, under Maryland law, a plaintiff cannot recover damages for emotional distress or mental anguish in an action for breach of contract. *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 58 (Md. App.  2013) ("In Maryland, recovery of damages for emotional distress must arise out of tortious conduct").  Accordingly, this claim must be dismissed.

### E.  Plaintiffs Fail to State a Claim for Trespass Under Count V of the Complaint

In Count V of the Complaint, Plaintiffs assert a claim for trespass.  "[T]respass is a tort involving 'an intentional or negligent intrusion upon or to the possessory interest in property of another.' " *Mitchell v. Baltimore Sun Co.,* 883 A.2d 1008 (Md. App. 2005) (quoting *Ford v. Baltimore City Sheriff's Office,* 814 A.2d 127 (Md. App. 2002)), *cert. denied,* 889 A.2d 418 (Md. 2006). "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent." *Id.*  Trespass requires unauthorized physical entry onto another's property. *Royal Inv. Grp., LLC v. Wang*, 183 A.3d 752, 757 (Md. App. 2018).

Instantly, Plaintiffs claim that by placing cameras and a fence on SFH's own property beyond the Premises of 2440 Bittinger and driving on the driveway and land owned by SFH, that

Defendants have somehow committed a trespass on property held by Plaintiffs. However, Plaintiffs lease only the cabin and garage of 2440 Bittinger and have no claim in or right to any other portion of the property. (Order, Ex. A to Ex. 5 to Complaint [Dkt. No. 2.7]. The driveway and the surrounding 170 acres of the Properties belong to SFH. Plaintiffs cannot recharacterize the landlord's entry onto its own property as "trespass."

Further, Plaintiffs vague assertions that Smith "attempted to enter" the Premises without permission on what appears to be a single occasion and without success lack factual detail of actual, unauthorized entry and interference with Plaintiffs' right to use and possess the Premises. (Complaint ¶¶ 11, 12, 35 [Dkt No. 2.7]). Indeed, Plaintiffs claim to continue to use and reside at the Premises without interruption. Without specific allegations of unlawful entry into the Premises to the exclusion of Plaintiffs' exclusive possession, Count V fails as a matter of law and must be dismissed.

### F. Plaintiffs Fail to State a Claim for Nuisance Under Count IV of the Complaint

In Count IV of the Complaint, Plaintiffs assert a claim for "Nuisance." A private nuisance under Maryland law requires a nontrespassory invasion of another's interest in the use and enjoyment of land. *Albright v. Fishkind*, 71 A.3d 90, 94 (Md. 2013) (quoting *Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931, 943 (Md. 2011)). By contrast, physical intrusions onto land constitute trespass, not nuisance. *See Wang*, 183 A.3d at 757 (Md. App. 2018) (trespass is an "unauthorized entry onto another's property").

Here, almost every allegation Plaintiffs rely on in support of Count IV involves Defendants exclusive use of SFH's own property: allegedly erecting a fence and cameras on its property, using the driveway and property to travel across and disabling the gate at the end of the driveway. None of these alleged activities involved a non-physical intrusion onto the Premises

18

leased by Plaintiffs nor is there any allegation that same interfered with Plaintiffs' actual use of the cabin as a residence and the garage for storage. (Complaint ¶ 31, [Dkt. No. 2.7]). Indeed, these are not the type of intangible, nontrespassory interference—such as noise, odor, smoke, or vibration—that is required to sustain a nuisance claim. *See Albright*, 71 A.3d at 94 (nuisance requires interference "of such a character as to diminish materially the value of the property as a dwelling and seriously interfere with ordinary comfort and enjoyment"). Again, Plaintiffs claim to continue to reside in the Premises uninterrupted.

Further, the allegation that Smith entered the curtilage, peered into windows, and attempted to open doors of the Premises, which is denied, is nevertheless a physical intrusion upon the Premise that cannot sustain a claim for nuisance. (Complaint ¶ 31, [Dkt. No. 2.7]). Accordingly, Count IV fails to state a claim for nuisance and should be dismissed with prejudice.

### G. Plaintiffs Fail to State a Claim for Punitive Damages

In Plaintiffs' Prayer for Relief, they seek punitive damages for Defendants' purported "willful, wanton, and malicious conduct." (Complaint, Prayer for Relief [Dkt. No. 2.7]). However, Plaintiffs do not identify under which of their six counts they request such relief.

Punitive damages are not legally available under the claims asserted. Under Maryland law, punitive damages are not recoverable in ordinary contract actions. *Miller Bldg. Supply, Inc. v. Rosen*, 510 A.2d 1343, 1346 (Md. 1986). Likewise, punitive damages are not available under a claim for retaliatory eviction. Md. Code Ann. Real Prop. § 8-208.1(c)(1). With respect to tort claims, punitive damages are permitted only upon proof of actual malice—that is, conduct motivated "by evil intent, a desire to injure, ill will, or fraud." *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1126 (Md. 1995) (citing *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992).

19

In other words, conclusory assertions of purported "harassment" fall far short of this heightened standard.

Here, Plaintiffs cannot maintain a demand for punitive damages in connection with their breach of contract claim or retaliatory eviction claim. As to the remaining tort claims, the Complaint is devoid of factual allegations plausibly showing that Defendants acted with actual malice. Plaintiffs' generalized assertions concerning alleged cameras, fencing, and vehicle use, even if true, do not rise to the egregious level of misconduct necessary to support punitive damages under Maryland law.

Accordingly, Plaintiffs' request for punitive damages should be dismissed or stricken from the Complaint.

## V.    CONCLUSION

For each of the foregoing reasons, and those set forth in the Motion to Dismiss, which is incorporated by reference as though set forth at further length herein, Defendants Smith Farm Holdings, LLC and Steven G. Smith, respectfully request the entry of an Order dismissing Plaintiffs' Complaint in its entirety, with prejudice.

Dated: August 21, 2025

Respectfully submitted,

STEPTOE & JOHNSON PLLC

*/s/ Nicholas L. Fiske*
Tracey B. Eberling (MD Fed. Bar ID 11393)
Steptoe & Johnson PLLC
1250 Edwin Miller Blvd, Suite 300
Martinsburg, WV 25404
(O):  304.263.6991
tracey.eberling@steptoe-johnson.com

Nicholas L. Fiske*
Pennsylvania Bar No. 309696

nick.fiske@steptoe-johnson.com

Joseph R. Lewis III*
Pennsylvania Bar No. 328830
joseph.lewis@steptoe-johnson.com

**STEPTOE & JOHNSON PLLC**
One PPG Place, Suite 3300
Pittsburgh, Pennsylvania 15222
Telephone: 412-504-8010
Fax: 412-504-8011
*Admitted Pro Hac Vice*

*Counsel for Defendants, Smith Farm
Holdings, LLC and Steven G. Smith*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 21st day of August, 2025, I electronically filed the foregoing

with the Clerk of the Court using the ECF system which will send notification of such filing to all

counsel of record.

Adam Greivell, Esquire
5 Cornell Ave
Hagerstown, MD 21742
(240)528-8150
adam@gfirm.us


*AND BY ELECTRONIC MAIL TO:*

Arnold Phillips, Esquire
25254B Garrett Highway
McHenry, MD 21541
(301) 387-2800
afplaw@gmail.com



*/s/ Nicholas L. Fiske*
Nicholas L. Fiske
Pennsylvania Bar No. 309696