**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| GK PARANDHAMAIA and JAN PARANDHAMAIA, | ) | CIVIL ACTION |
| | ) | |
| | ) | No. 1:25-cv-02691-SAG |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **FILED ELECTRONICALLY** |
| | ) | |
| SMITH FARM HOLDINGS, LLC and STEVEN G. SMITH, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM IN LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT**</u>

27728615.2

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.  INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 1

III.  LEGAL STANDARD ............................................................................................ 10

IV.  ARGUMENT ......................................................................................................... 11

    A.  Leave to Amend Should be Denied because Plaintiffs' Proposed Amendments are Futile. ....................................................................................................................... 11

    B.  Plaintiffs' Newly Asserted Counts VI-XI are Furtile and Should Not be Permitted.... 23

    C.  Plaintiffs Fail to State a Claim for Punitive Damages. ................................................. 29

V.  CONCLUSION ..................................................................................................... 30

27728615.2

## TABLE OF AUTHORITIES

**Cases**

*Adcock v. Freightliner LLC*, 550 F.3d 369 (4th Cir. 2008)…………………………………………11

*Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998)……………………..28

*Albright v. Fishkind*, 71 A.3d 90 (Md. 2013)………………………………………………........17

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038 (Md. 1995)……………24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………………….11, 15, 25

*Aziz v. Alcolac*, 658 F.3d 388 (4th Cir. 2011)…………………………………………………11

*Balt.-Wash. Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736 (D. Md. 2008)……………………..24

*CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46 (4th Cir. 2011)…………………………28

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802 (4th Cir. 1991)………………26, 27

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)………………………………………26

*Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117 (Md. 1995)………………………..……………..30

*Exxon Mobil Corp. v. Albright*, 71 A.3d 30 (Md. App.  2013)………………………………….17

*Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001)……….26

*Fed. Home Loan Mortg. Corp. v. Murriel*, 2023 WL 4764578 (D. Md. July 26, 2023)………..29

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009)…………………………………………11

*Hale Trucks of Md., LLC v. Volvo Trucks N. Am., Inc.*, 224 F. Supp. 2d 1010 (D. Md. 2002)….24

*Hoffman v. Chapman*, 182 Md. 208, 210 (1943)………………………………………………29

*Johnson v. Oroweat Foods Co.,* 785 F.2d 503 (4th Cir.1986)…………………………………..10

*Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011)………………………………..10

*Kaur v. Pollack*, 2023 WL 3093405(D. Md. 2023)………………………………………24, 25

*Kaur v. Baltimore Cnty. Police Dep't*, No. 23-1463,
2025 WL 1682294 (4th Cir. June 16, 2025) …………………………………………….……….24

27728615.2

*Lee v. Meyers*, No. 20-cv-3129, 2022 WL 252960 (D. Md. Jan. 27, 2022)……………………..26

*Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253 (Md. App. 2009)…………13

*Nourison Rug Corp. v. Parvizian,* 535 F.3d 295 (4th Cir. 2008)………………………………..10

*Mathis v. Hargrove,* 888 A.2d 377 (Md. App. 2005)………………………………...………12

*Miller Bldg. Supply, Inc. v. Rosen*, 510 A.2d 1343 (Md. 1986)………….………………….…..30

*Mitchell v. Baltimore Sun Co.,* 883 A.2d 1008 (Md. App. 2005)……………………………….18

*Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992)………………………………..30

*Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013)…………………………..11

*Parandhamaias v. Fitzwater* at C-11-CV-19-000026 (Garrett Cty. 2019)………………………2

*Parandhamaias v. SFH*, C-11-CV-22-000109………………………………………………...3

*Parandhamaias v. SFH*, C-11-CV-23-000070………………………………………………...3

*Parandhamaias v. SFH,* 2023-No. 1790 (Md. App.)……………………………………………4

*Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101 (Md. App. 1986)………………………14

*Phillips v. LCI Int'l Inc.,* 190 F.3d 609 (4th Cir.1999)…………………………………………11

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009)………………………………11

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006)……………………………….10

*Royal Inv. Grp., LLC v. Wang*, 183 A.3d 752 (Md. App. 2018)……………….……17, 18, 19

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008)……………10

*Van Royen v. Lacey*, 277 A.2d 13 (Md. 1971)…………………………………………………24

*White v. Franz,* No. 1:22-CV-02543-JRR, 2024 WL 1969763 (D. Md. May 2, 2024)………..20

*Williams v. Hous. Auth.,* 760 A.2d 697 (Md. App. 2000)………………………………………13

*Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931 (Md. 2011)………………………………...17

iii

27728615.2

**Statutes**

Md. Code Ann. Criminal Law § 3-902………………………………………………..16

Md. Code Ann. Criminal Law § 3-903………………………………………………..16

Md. Code Ann. Real Prop. § 2-115…………………………………………………12

Md. Code Ann. Real Prop. § 8-208.1…………………….…………..………20, 22, 23, 30

Md. Code Ann., Real Prop. § 8-212……………………………………………….13

**Rules**

Fed. R. Civ. P. 8…………………………………………………………………..10

Fed. R. Civ. P. 12…………………………………………………………………10

**Treatises**

Restatement of Torts 2d, § 652B……………………………………………………14

27728615.2

## I.    INTRODUCTION

The above captioned action is simply the latest in a long series of efforts by Plaintiffs, GK and Jan Parandhamaia (collectively, "Plaintiffs"), to intimidate and harass Defendants, Smith Farm Holdings, LLC ("SFH") and Steven G. Smith (individually, "Smith" and collectively with SFH, "Defendants"), with the goal to extort SFH into returning the property at issue in this matter and which SFH purchased from Plaintiffs in July 2022 in an arms-length transaction in which both sides were represented by counsel.  The present Motion for Leave to Amend continues that pattern. Plaintiffs' proposed Amended Complaint does not cure the deficiencies identified in Defendants' prior Motion to Dismiss. Instead, it repackages the same factual allegations, adds self-serving, conclusory allegations made "on information and belief" with no factual support, adds legally deficient new claims, and seeks equitable relief that is unavailable as a matter of law. Because the proposed amendments are futile, Plaintiffs' Motion for Leave to Amend should be denied and their Original Complaint remains subject to dismissal, with prejudice, for the reasons previously briefed.

## II.    FACTUAL BACKGROUND

### A.  History of the Parties and Prior Litigation

This case has its genesis in a real estate transaction that took place in July 2022 between Plaintiffs and SFH (the "Transaction").  Plaintiffs, who are husband and wife, sold two contiguous parcels of land and their attendant improvements to SFH for the total amount of $1.3 million. [Compl., ¶¶ 3, 6 [Dkt. No. 21-1] and Ex. 1 thereto, [Dkt. No. 4.1]; *see also* 10.4.23 Opinion and Order of the Honorable Judge Timothy Finan (the "Order"), p. 1, attached as Exhibit A to Exhibit 5 of the Complaint [Dkt. No. 4.1]).[1]    Specifically, the sale included: (i) a larger parcel

---

[1] Plaintiffs do not attach copies of the listed exhibits to their Proposed Amended Complaint, however, they do state that "All references to exhibits refer to and incorporate by reference as if attached hereto such exhibits as were attached to the original Complaint unless otherwise specific."  (Am. Compl., p. 2, [Dkt. 21-1]).

27728615.2

encompassing some 160-acres of farmland and an historic farmhouse and barn located at 2715 Bittinger Road, Swanton, Garrett County Maryland 21561 ("2714 Bittinger")[2] and (ii) a smaller parcel of approximately 9.75 acres which contained a small cabin and garage, located at 2440 Bittinger Road, Swanton, Garrett County Maryland 21561 ("2440 Bittinger" and collectively with 2714 Bittinger, the "Properties"). (*Id.*). The Properties had been in Jan Parandhamaia's family for generations[3] and she had grown up in the cabin located at 2440 Bittinger.

Smith is the principal and a member of SFH and, in light of the Parandhamaia's history with the Properties, he agreed to allow Plaintiffs to rent the cabin and garage (the "Premises") located at 2440 Bittinger for a period of five years at a total cost of $5 ($1 per year) following the Transaction. (Order, p. 1, Ex. A to Ex. 5 of Complaint [Dkt. No. 4.1]). Accordingly, on July 21, 2022, Plaintiffs and SFH entered into a residential lease agreement reflecting these, and other terms (the "Lease"). (Complaint, ¶ 8 [Dkt. No. 4]).[4] Almost immediately upon occupying 2440 Bittinger Plaintiffs began causing issues for its landlord, SFH, and Smith and his family who ultimately renovated and occupied the farmhouse on the adjacent 2714 Bittinger Property.

---

[2] 2714 Bittinger actually consists of two contiguous parcels of land but for clarity's sake is referred to herein as a single piece of property.

[3] Notably, Plaintiffs previously purchased 2714 Bittinger from Jan Parandhamaia's brother and sued him and his wife in connection with that sale as well. *See Parandhamaias v. Fitzwater* at C-11-CV-19-000026 (Garrett Cty. 2019).

[4] Inexplicably, Plaintiffs attach a copy of the post-settlement occupancy agreement for the farmhouse located on 2714 Bittinger (the "PSOA") and a partially signed prior draft of the lease agreement for the cabin and garage at 2440 Bittinger and describe them collectively as the lease at issue in this case. (*Id.*). However, the PSOA governed the period from closing on the sale of the Properties until September 1, 2022, during which Plaintiffs were allowed to stay in the farmhouse at 2714 Bittinger before moving to the cabin and garage (i.e. the Premises) at 2440 Bittinger and has no bearing on Plaintiffs' claims in this action. Further, the partially executed lease relating to 2440 Bittinger contains terms that were later modified in the fully executed Lease, which itself is attached as Exhibit D to the Motion for Sanctions attached as Exhibit 5 to the Complaint. (*Id.*). While the minor differences in the partially executed lease and the fully executed Lease have no bearing on Plaintiffs' Claims or the instant Motion for Leave to Amend, Plaintiffs' failure to attach the appropriate documents in support of their claims despite previously being notified of this deficiency in Defendant's Motion to Dismiss and being in possession of same are indicative of the lack of rigor, substance and truth in their pleadings as a whole.

27728615.2

Plaintiffs claimed that a well that serviced the Premises on 2440 Bittinger did not work, despite previously having owned and controlled the property for years prior to the sale to SFH, and that SFH was required to install a new well pursuant to the terms of the Lease. Further, Plaintiffs began farming portions of 2440 Bittinger despite the Lease only allowing them access to the cabin and garage (i.e. the Premises) and they trespassed upon other portions of 2440 Bittinger and 2714 Bittinger – essentially acting as if the sale to SFH had never occurred and the Properties still belonged to them. When SFH indicated that it was Plaintiffs' obligation to fix the well under the Lease, Plaintiffs instituted two lawsuits against SFH.[5] The first suit, a landlord-tenant action, was filed on October 21, 2022 and requested that Plaintiffs be excused from paying the $1 a year rent because the Premises at 2440 Bittinger purportedly lacked water as a result of the alleged issues with the well. (*See Parandhamaias v. SFH*, C-11-CV-22-000109).[6] On April 13, 2023, Plaintiffs subsequently filed a second action demanding that SFH install a new well on the property and for damages as a result of the purported lack of water at the Premises. (*See Parandhamaias v. SFH*, C-11-CV-23-000070).[7]

Moreover, Plaintiffs refused to cease farming 2440 Bittinger and trespassing on the Properties and Jan Parandhamaia also filed at least two criminal complaints against Smith; claiming that he was trespassing on Plaintiffs' property despite the fact that SFH owned the entirety of 2440 Bittinger and 2714 Bittinger. Accordingly, SFH filed a Counterclaim asserting, *inter alia*, that it had no obligation to install a new well at 2440 Bittinger, that Plaintiffs had failed to disclose any issues with the well during the sale of the Properties, that the Lease allowed Plaintiffs access

---

[5] Smith was not a party to these prior suits in the Trial Court.

[6] A true and correct copy of the complaint initiating the landlord-tenant action, which is a matter of public record, is attached hereto as Exhibit A. *See also*, *infra*, § III.

[7] A true and correct copy of the complaint initiating this second action, which is a matter of public record, is attached hereto as Exhibit B. *See also*, *infra*, § III.

only to the cabin and garage on 2440 Bittinger (i.e., the Premises) and that Jan Parandhamaia stole a camera from SFH's property.  In turn, SGH also sought an injunction barring Plaintiffs from utilizing any portion of the Properties beyond the cabin and garage at 2440 Bittinger.

The parties' various actions were consolidated for trial in the Circuit Court for Garrett County (the "Trial Court"), which was held on September 5 and October 4, 2023.  Plaintiffs' principal complaint during trial was that they simply regretted selling the 2440 Bittinger parcel to SFH and wished they had retained it as it was the home that Jan Parandhamaia grew up in and she was emotionally attached to same.

On October 13, 2023, the Trial Court issued its Declaratory Judgment and Order and Memorandum Opinion (i.e. the Order), finding that SFH was required to take steps to ensure that Plaintiffs had access to water at 2440 Bittinger and that the property rented to Plaintiffs pursuant to the Lease is "limited to the house and garage and the curtilage area immediately surrounding the house" and that Plaintiffs "are not entitled to any other access, beyond the house and garage, other than for use of the driveway." (Am. Compl., ¶ 13 [Dkt. No. 21-1] and Order, p. 1, Ex. A to Ex. 5 of Compl. [Dkt. No. 4.1]).

In compliance with its obligations under the Order, and at significant cost, SFH ensured that a new well was drilled at 2440 Bittinger.  Despite SFH's compliance with the Trial Court's Order, Plaintiffs appealed the Order to the Appellate Court of Maryland on November 13, 2023 (the "Appeal"), ultimately asserting through convoluted and often contradictory briefing that the Trial Court erred in resolving all of the pending claims between the parties at the trial. (*See Parandhamaias v. SFH,* 2023-No. 1790 (Md. App.)).

Following the trial and during the pendency of the appeal, Plaintiffs continuously violated the Trial Court's Order by trespassing on the Properties beyond the Premises and harassing Smith

4

27728615.2

and his family, despite repeated requests by Defendants that Plaintiffs cease this conduct. (Motion for Sanctions, ¶¶ 8-14, Ex. 5 to Complaint [Dkt. No. 4.1]). Further, SFH learned that Plaintiffs had actually purchased a new home approximately 3.5 miles away from the Properties in September 2023 and failed to disclose this to the Trial Court even though this purchase occurred *during the trial.* (*Id.* at ¶¶ 8-14 and Ex. C to Ex. 5 to the Complaint [Dkt. No. 4.1]). Despite purchasing a new home and no longer residing at the Premises on 2440 Bittinger, Plaintiffs continued to claim that they needed a new well at 2440 Bittinger, could not find an alternative place to live, were entitled to damages as a result of the alleged lack of water at the property, and continued to use their access to the property to harass and intimidate SFH and Smith and his family. (*Id.*). Accordingly, SFH filed a Motion for Sanctions on June 12, 2024, requesting that the Trial Court find Plaintiffs in contempt of the Order and deem Plaintiffs to be in violation of the Lease for failing to use the Premises "solely for residential purposes." (*Id.* at ¶¶ 21-22). The Trial Court denied the Motion for Sanctions without opinion on July 17, 2024. (A true and correct copy of the Order denying the Motion for Sanctions is attached hereto as Exhibit C).

In turn, and after briefing and argument on the appeal, Plaintiffs summarily dropped the appeal of the Order on March 13, 2025, without any notice or communication to SFH. Following the withdrawal of the Appeal, Defendants counsel inquired as to what happened with Plaintiffs' counsel, who indicated that despite their previous vigorous pursuit of the Appeal, Plaintiffs believed that a decision in their favor would provide them with little actual relief and that they instead intended to file *yet another lawsuit* against SFH[8] relating to the existence of cameras on SFH's own property and the construction of a fence on 2440 Bittinger beyond the curtilage of the

---

[8] In addition to the two prior suits filed against SFH and the two criminal complaints against Smith in the three years since the Transaction, Plaintiffs also previously threatened to file another suit related to the sale of the Properties but apparently backed down when Defendants' counsel made clear that the case lacked any merit or justification.

5

27728615.2

home located on the property and that they did not want the Appeal interfering with those claims as they felt it was "cleaner" to simply file a new action entirely.  Despite the foregoing, and the fact that Plaintiffs do not live at 2440 Bittinger, Counsel for Plaintiffs reasserted that Plaintiffs regretted selling 2440 Bittinger, that he was being paid hourly (not on a contingency) and claimed that he and Plaintiffs apparently believed that they could recover hundreds of thousands of dollars for these purported "claims" in light of a recent large invasion of privacy verdict in Garrett County.[9]

### B. Facts Relevant to the Instant Motion for Leave

It is against this backdrop that the original Complaint was filed. (*See*, *generally*, Complaint [Dkt. No. 4]).   The original Complaint, summarily claimed that Defendants have breached the Lease (Count I), invaded their privacy (Count II), intentionally caused them emotional distress (Count III), engaged in nuisance (Count IV) and trespass (Count V), and engaged in retaliatory action against Plaintiffs for raising issues under the Lease (Count VI). (*Id.*).

After removal to this Court, Defendants filed a Motion to Dismiss Plaintiffs' Complaint on August 21, 2025. [Dkt. No. 9]. In response, on November 17, 2025, Plaintiffs untimely filed an Amended Complaint without leave of court. [Dkt. No. 17]. The Amended Complaint was stricken by this Court on November 18, 2025 for failure to comply with Fed. R. Civ. P. 15. [Dkt. No. 20]. The Court thus granted Defendants' Motion to Dismiss, without prejudice, and afforded Plaintiffs fourteen days to seek leave of court to file their proposed Amended Complaint. [*Id.*].

On December 1, 2025, Plaintiffs filed their Motion for Leave to Amend Complaint, attaching as an exhibit thereto their proposed Amended Complaint. [Dkt. No. 21; *see also* Dkt. No. 21-1]. The proposed Amended Complaint withdraws the Intentional Infliction of Emotional

---

[9] To date, Defendants have been unable to identify this purported case.

27728615.2

Distress (Count III) claim and asserts six (6) new counts: two counts for civil conspiracy (Counts VI and VII), three counts for permanent injunction (Counts VIII, IX, and X), and one count for declaratory judgment and equitable relief (Count XI). [Dkt. No. 21, ¶ 10; *see also* Dkt. No. 21-1].[10]

In short, Plaintiffs' proposed Amended Complaint expands and embellishes the allegations contained in the Original Complaint with conclusory, self-serving statements that were known to Plaintiffs at the time it filed its Original Complaint, despite relying on the same underlying events. Plaintiffs allege that Defendants (i) installed cameras outside of the Premises leased by Plaintiffs and on property owned by SFH, (ii) installed a "barbed wire"[11] fence beyond the curtilage of the cabin they lease and on property owned by SFH, (iii) drove vehicles on the driveway and yard owned by SFH, (iv) disabled a security gate owned by SFH and located on property owned by SFH, (v) filed a Motion for Sanctions against Plaintiffs stemming from their violation of the Lease, which was denied, and (vi) attempted to enter the Premises on one occasion over a year ago "without notice or permission."[12] (Am. Compl. ¶¶ 11-15 [Dkt. No. 21-1]).

Notably, the Original Complaint alleged only that the exterior cameras "appear capable of recording private activities inside the home," without identifying any specific private activity, without alleging that any recording actually occurred, without alleging that the cameras captured audio, and without alleging that any footage was viewed by anyone or disseminated in any manner. (Am. Compl. ¶ 11 [Dkt. No. 21-1]). Those allegations were entirely speculative and unsupported

---

[10] Notably, Plaintiffs' Motion for Leave purports to include only two permanent injunction counts; however, the Amended Complaint attached thereto sets forth a third court for permanent injunction. [Dkt. No. 21, ¶ 10; *see also* Dkt. No. 21-1, ¶¶ 68-73].

[11] It is denied that the fence is "barbed wire."

[12] Smith's attempt to enter the premises was part of an inspection authorized under the Lease and which Plaintiffs were notified of in advance and consented to. Moreover, Plaintiffs were not even at the Premises during this event.

27728615.2

by any factual detail.

The proposed Amended Complaint now attempts to cure that deficiency—not by pleading new facts, but by layering conjecture upon conjecture. Plaintiffs now allege, for the first time, that the cameras "resulted in actual recording and viewing of Plaintiffs' private activities inside the home," purportedly "as evidenced by Defendants' knowledge of specific private events occurring inside the premises that could only be known through surveillance footage." (Am. Compl. ¶ 19 [Dkt. No. 21-1]). Plaintiffs concede, however, that they have never seen any such footage and plead these allegations solely "upon information and belief." (*Id.*).

Critically, the proposed Amended Complaint identifies no specific "private events," no statements by Defendants revealing such events, no facts demonstrating that any camera was positioned to capture the interior of the home, and no factual basis supporting the assertion that Defendants' purported knowledge "could only" have been obtained through surveillance. Instead, Plaintiffs rely on the circular inference that because Defendants allegedly questioned whether Plaintiffs were residing at the Premises, Defendants must therefore have been engaging in interior surveillance. (*Id.*). The proposed Amended Complaint thus substitutes speculation for factual allegations and conclusions for facts.[13]

Moreover, these new allegations introduce internal inconsistencies that underscore their implausibility. If Plaintiffs' theory were true, it would suggest that Plaintiffs were not, in fact, residing at 2440 Bittinger—an inference that directly contradicts Plaintiffs' repeated allegations elsewhere in the proposed Amended Complaint that they reside at the Premises and actively use it

---

[13] Moreover, Defendants explicitly deny that their knowledge that Plaintiffs no longer reside at 2440 Bittinger arose from viewing any recording of any "private events," rather it is based on the existence of the deed evidencing their purchase of the new residence, having viewed Plaintiffs' vehicles at the new residence as it is only a short drive from the Properties, and Plaintiffs' repeated refusal to deny that they purchased this new residential property in both the underlying state court actions and the instant Complaint, Motion for Leave to Amend or Proposed Amended Complaint. (Deed, Ex. C to Ex. 5 to Compl. [Dkt. No. 4.1]).

27728615.2

as their home. *See id*. ¶ 3 (alleging Plaintiffs reside at 2440 Bittinger); ¶ 11 (alleging Defendants' conduct interferes with Plaintiffs' ongoing residential use of the home); ¶ 14 (alleging fear of intruders due to a disabled security gate); ¶ 16 (alleging loss of privacy); ¶ 18 (alleging discomfort hosting guests and family at the Premises); ¶ 18 (camera surveillance captured and allowed Defendants to view footage of Plaintiffs undressing). This contradiction fatally undermines Plaintiffs' credibility, the amendments to the proposed Amended Complaint, and each of Plaintiffs' claims against Defendants.

Likewise, Plaintiffs offer no factual support regarding the purported lack of safety at the Premises and indeed claim that they continue to reside at same.  (Am. Compl., ¶ 3 [Dkt. No. 21-1]).   And, finally, Plaintiffs provide no legitimate particularized allegations of the injuries they allegedly suffered as a result of this alleged conduct, whether financial or otherwise, and indeed the only references to any emotional injury pertains to solely Jan Parandhamaia and not GK Parandhamaia.  (*See e.g.* Am. Compl., ¶¶ 16, 18 [Dkt. No. 21-1]). The only particularized harm purportedly suffered by Plaintiffs is an "unsafe environment vulnerable to intruders," which is averred in reference to SFH allegedly disabling the security gate. (*Id*. at ¶ 24 [Dkt. No. 21-1]). However, there is no allegation that any intruder has ever accessed the property.

Accordingly, while the proposed Amended Complaint relies on the same discrete events described in the Original Complaint, it layers those events with new speculation, heightened rhetoric, and conclusory assertions that materially alter the tone and scope of Plaintiffs' claims without adding corresponding factual support. Further, virtually every fact set forth in the proposed Amended Complaint is untrue or misrepresented, and accordingly vehemently denied; however, Defendants recognize the Court's standard of review in ruling on Plaintiffs' Motion for Leave.

However, despite having had the opportunity to amend and to address the deficiencies

identified in Defendants' prior Motion to Dismiss, Plaintiffs have not, and indeed cannot, plead facts sufficient to state a viable claim for relief. For the reasons set forth below, Plaintiffs' Motion for Leave to Amend should be denied, and the Original Complaint remains subject for dismissal, with prejudice, for the reasons previously briefed.

## III.    LEGAL STANDARD

"A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian,* 535 F.3d 295, 298 (4th Cir. 2008). "Leave to amend ... should only be denied on the ground of futility when the proposed amendment is *clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986) (emphasis added). Further, "a district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir.2008) (internal quotations omitted); *see also Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (applying the 12(b)(6) standard to assess futility of amendment).  In effect, where a proposed amended pleading cannot survive a Motion to Dismiss, leave to amend must be denied.  *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." The rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable

10

27728615.2

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Well-pleaded facts must be accepted as true, *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), and construed in the light most favorable to the plaintiff, *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008). However, conclusory allegations or speculation cannot withstand dismissal. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (stating that it "is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss"). "This approach recognizes that naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal citations and quotations omitted).

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss including publicly available information. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Further, the Fourth Circuit has made clear that extrinsic evidence may be considered at the 12(b)(6) stage where the extrinsic evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir.1999).

## IV.    ARGUMENT

### A.  Leave to Amend Should be Denied because Plaintiffs' Proposed Amendments are Futile

#### 1.  Count I – Breach of Lease

In Count I of the proposed Amended Complaint,  Plaintiffs claim that "Defendants"

11

breached the "implied covenant of quiet enjoyment and explicit terms [of the Lease] requiring **Defendants** to maintain the premises in a safe and habitable condition; **Defendants** breached these obligations by installing cameras, disabling the security gate, restricting the curtilage of the house with barbed wire fence, and attempting to forcibly enter the house." (Am. Compl., ¶ 24 [Dkt. No. 21-1]) (emphasis added). Even accepting these allegations as true for purposes of Rules 15 and 12(b)(6), they fail to state a viable claim for breach of contract and therefore render amendment futile.

"In an action for breach of contract, the plaintiff must prove that the defendant had a contractual obligation and that the obligation was breached." *Mathis v. Hargrove,* 888 A.2d 377, 396 (Md. App. 2005). Further, Section 2-115 of Maryland's Real Property Code recognizes an implied covenant "by the lessor that the lessee shall quietly enjoy the land." Md. Code Ann. Real Prop. § 2-115. Because Defendant Steven G. Smith owed no contractual duties to Plaintiffs under the Lease, Count I necessarily fails as to him and is not cured by any of the proposed amendments.

Further, Plaintiffs have failed to point to a single term or provision of the Lease that SFH breached aside from the implied covenant of quiet enjoyment. Indeed, Plaintiffs identify no express lease provision requiring SFH to provide or maintain a security gate, prohibiting SFH from installing cameras or fencing on its own property outside the leased curtilage, or otherwise restricting SFH's use of property not leased to Plaintiffs. (*See generally* Lease, Ex. D to Ex. 5 to Complaint [Dkt. No. 4.1]). Likewise, there is no bar to Landlord attempting to gain access to the Premises in an emergency or upon proper notice. (*See Id.* at § 12).

Moreover, these purported actions do not amount to a violation of the implied covenant of quiet enjoyment or the implied warranty of habitability. Maryland Courts have explained that "[t]he scope or magnitude of the interference necessary to constitute a breach of the covenant of

27728615.2

quiet enjoyment must be such as goes to the essence of what the landlord is to provide." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253, 266 (Md. App. 2009) (citations omitted). Further, the warranty of habitability is an obligation of the landlord to repair and eliminate conditions and defects that constitute, or, if uncorrected, would constitute, a serious and substantial threat to the life, health, or safety of the occupants." *Williams v. Hous. Auth.,* 760 A.2d 697, 698 (Md. App. 2000); *see also* Md. Code Ann., Real Prop. § 8-212 (setting forth a similar definition).

Pursuant to the Lease, SFH was required to provide a cabin and garage for rent at $1 per year for 5 years. (*See generally* Lease, Ex. D to Ex. 5 to Complaint [Dkt. No. 4.1]). There is no dispute that SFH provided this and, indeed, Plaintiffs continue to claim that they live on the Premises without any purported issue. (Am. Compl. ¶ 3 [Dkt. No. 21-1]). Plaintiffs do not explain how cameras and a fence located outside the leased curtilage and on property owned by SFH preclude them from living in the cabin or accessing the garage. Likewise, there is no obligation under the Lease to provide a security gate for the driveway which Plaintiffs may only use to access the leased Premises and they provide no example or allegation of an interference with their use of the cabin or garage as a result of same. Moreover, and despite their now claim that the lack of a security gate on the driveway somehow renders 2440 Bittinger "an unsafe environment vulnerable to intruders," Plaintiffs fail to assert that any such intrusion has incurred or that it disposed them of the property or rendered it uninhabitable.

Further, Plaintiffs provide no explanation as to how a single purported attempt by SFH to access the cabin, which was allegedly unsuccessful, likewise deprived them of the very essence of the Lease. A lone, unsuccessful attempt at entry (even if true), without any allegation of loss of possession or exclusion, cannot as a matter of law constitute a substantial interference with Plaintiffs' possessory rights sufficient to breach the implied covenant of quiet enjoyment.

13

27728615.2

Accordingly, Plaintiffs' proposed amendments fail to allege facts demonstrating a breach of any express lease provision or the implied covenant of quiet enjoyment or habitability. Because Count I would not survive a motion to dismiss under Rule 12(b)(6), amendment would be futile and leave to amend should be denied.

### 2. Count II – Invasion of Privacy (Intrusion Upon Seclusion)

Count II of Plaintiffs' proposed Amended Complaint purports to set forth a claim for Invasion of Privacy (Intrusion Upon Seclusion). Maryland recognizes intrusion upon seclusion where a defendant intentionally intrudes into the private affairs of another in a manner "that would be highly offensive to a reasonable person." *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116 (Md. App. 1986) (citing Restatement of Torts 2d, § 652B). Because Plaintiffs' proposed amendments still fail to allege an actual intrusion into Plaintiffs' private affairs, amendment of Count II would be futile.

Here, the original Complaint alleged only that cameras were installed outside Plaintiffs' leased Premises, on an adjacent property, and "appear capable" of recording private activities and that Defendants physically encroached upon the curtilage of the leased premises. (Compl. ¶¶ 11 [Dkt. No. 4]). However, the proposed Amended Complaint alleges for the first time that Defendants "installed cameras directed at Plaintiffs' bedroom," "recorded private activities," and "viewed footage of Plaintiffs' intimate and private activities inside the home, including undressing and personal conversations." (Am. Compl. ¶¶ 27–28 [Dkt. No. 21-1]). These allegations represent a dramatic escalation from the original Complaint, which alleged only that cameras "appear capable" of recording private activities. Despite the heightened rhetoric, Plaintiffs still fail to plead facts demonstrating an actual intrusion. Critically, Plaintiffs do not allege how the cameras were positioned to capture the interior of the home, which camera allegedly recorded interior footage,

14

when any such recording occurred, who viewed the footage, or what specific conduct was observed beyond vague references to "undressing" and "personal conversations." (*Id*.). No factual allegations are pleaded describing camera angles, window placement, lighting conditions, zoom capability, audio capability, or any technological facts that would make such recording plausible. Instead, Plaintiffs offer only conclusory assertions "based on information and belief" that the cameras were "directed at" the bedroom and "captured" private activities, which are precisely the type of "naked assertions devoid of further factual enhancement" that cannot support a claim. *Iqbal*, 556 U.S. at 678.

Plaintiffs' allegations are further undermined by their own admissions elsewhere in the proposed Amended Complaint. Plaintiffs allege that Defendants questioned whether Plaintiffs were residing at the Premises during the relevant period, yet Plaintiffs simultaneously allege that Defendants viewed footage of Plaintiffs inside the home engaging in intimate activities. (Am. Compl. ¶¶ 11, 13, 19, 28 [Dkt. No. 21-1]). These allegations are internally inconsistent and underscore the speculative nature of Plaintiffs' theory of surveillance. Plaintiffs cannot plausibly allege that Defendants simultaneously believed Plaintiffs were not residing at the Premises while also allegedly observing Plaintiffs inside the home.

Even more, Plaintiffs have no expectation of privacy in the outside of their home.  Here, Plaintiffs lease only the cabin and the garage at 2440 Bittinger, which are surrounded by approximately 170 acres of land owned by SFH.  Plaintiffs concede that the alleged cameras are located on SFH's property and not on or in the Premises.  (Am. Compl., ¶ 11 [Dkt. No. 21-1]). Further, Plaintiffs at all times were and are aware of the cameras' existence and there is no allegation that they were surreptitiously placed to avoid detection (*Id.* at ¶¶ 19, 28).  Accordingly, they knew and have known of the cameras' presence and operation and, as such, cannot have an

15

27728615.2

expectation of privacy in actions taken around or even in the Premises if they believe the cameras can capture same, which is explicitly denied.  Indeed, there is no allegation that Plaintiffs attempted to cover their windows but SFH sought to circumvent this expectation of privacy or otherwise did anything besides conspicuously placing cameras on its own property to protect same.

Indeed, this distinction is emphasized by Maryland statutes which explicitly provide for criminal and civil penalties for those who surreptitiously place cameras on private property with the intent to observe individuals within a private residence located on the property or those who use cameras to observe the "private areas" of an individual without consent and for a prurient interest.  Md. Code Ann. Criminal Law §§ 3-902 and 3-903.  Section 3-902, relating to video surveillance with prurient intent, explains that no criminal or civil cause of action will lie where the camera is not placed with a prurient interest and/or its placement is intended to protect private property.  *Id.*  Likewise, Section 3-903, relating to camera surveillance, states that no claim for criminal or civil liability can lie where the camera is not hidden and/or is not located on the property there the private property is located.  *Id.*

Instantly, not only is there no allegations that Defendants surreptitiously placed the cameras, possessed a prurient interest in placing same or intended, and did so intending to observe Plaintiffs' "private areas," the facts alleged by Plaintiffs establish that the cameras were not hidden, were placed on SFH's property and it is clear from the history of the parties that they were placed because of the ongoing disputes between Plaintiffs and Defendants.

In sum, Plaintiffs' amended invasion-of-privacy claim replaces the speculative language of the Original Complaint with inflammatory, conclusory, and contradictory allegations, but not with facts. Because Plaintiffs still fail to allege a plausible, intentional, and highly offensive intrusion into their private affairs, Count II would not survive a motion to dismiss under Rule

16

27728615.2

12(b)(6). Amendment of this claim is therefore futile, and leave to amend should be denied.

### 3. Count III – Nuisance

Count III of the proposed Amended Complaint asserts a claim for "Nuisance." A private nuisance under Maryland law requires a nontrespassory invasion of another's interest in the use and enjoyment of land. *Albright v. Fishkind*, 71 A.3d 90, 94 (Md. 2013) (quoting *Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931, 943 (Md. 2011)). By contrast, physical intrusions onto land constitute trespass, not nuisance. *See Royal Inv. Grp., LLC v. Wang*, 183 A.3d 752, 757 (Md. App. 2018). (trespass is an "unauthorized entry onto another's property"). "To succeed on a nuisance claim, a plaintiff must establish an unreasonable and substantial interference with his or her use and enjoyment of his or her property, such that the injury is of such a character as to diminish materially the value of the property as a dwelling ... and seriously interfere with the ordinary comfort and enjoyment of it." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 94, *on reconsideration in part*, 71 A.3d 150 (Md. App. 2013) (citations and quotations omitted).

Here, almost every allegation Plaintiffs rely on in support of Count III involves Defendants' exclusive use of SFH's own property, including allegedly erecting a fence and cameras on its SFH's property, using the driveway and property to travel across SFH's property, and disabling the gate at the end of the driveway. (Am. Compl. ¶ 32, [Dkt. No. 21-1]). None of these alleged activities involved a non-physical intrusion onto the Premises leased by Plaintiffs nor is there any allegation that same interfered with Plaintiffs' actual use of the cabin as a residence and the garage for storage. (Am. Compl. ¶ 32, [Dkt. No. 21-1]). *See Albright*, 71 A.3d at 94 (nuisance requires interference "of such a character as to diminish materially the value of the property as a dwelling and seriously interfere with ordinary comfort and enjoyment"). Significantly, Plaintiffs continue to allege that they reside at the Premises without interruption.

(Am. Compl. ¶ 3, [Dkt. No. 21-1]).

The allegation that Smith entered the curtilage, peered into windows, and attempted to open doors of the Premises, which is denied, is nevertheless a physical intrusion upon the Premises that cannot sustain a claim for nuisance. (Am. Compl. ¶ 32, [Dkt. No. 21-1]).  Maryland law is clear that conduct constituting an alleged physical intrusion cannot simultaneously serve as the basis for a nuisance claim. *See Wang*, 183 A.3d at 757.

Finally, even if "noise from vehicles" and "constant surveillance" could be characterized as nontrespassory invasions, Plaintiffs fail to allege facts demonstrating that such conduct resulted in an unreasonable and substantial interference with their use and enjoyment of the Premises. (Am. Compl. ¶ 33, [Dkt. No. 21-1]). Plaintiffs do not plead any facts showing that the alleged conduct materially diminished the value of the property as a dwelling or seriously interfered with ordinary comfort and enjoyment. Instead, Plaintiffs rely on conclusory assertions untethered to any factual allegations concerning frequency, duration, severity, or actual impact.

Accordingly, because Plaintiffs' proposed nuisance claim is based on alleged physical intrusions, Defendants' lawful use of their own property, and conclusory assertions of noise and surveillance that are unsupported by any facts demonstrating an unreasonable and substantial interference with Plaintiffs' use and enjoyment of the Premises, Count III would not survive a motion to dismiss under Rule 12(b)(6). Amendment of this claim is therefore futile, and leave to amend should be denied.

### 4.  Count IV – Trespass

In Count IV of the proposed Amended Complaint, Plaintiffs assert a claim for trespass. "[T]respass is a tort involving 'an intentional or negligent intrusion upon or to the possessory interest in property of another.' " *Mitchell v. Baltimore Sun Co.,* 883 A.2d 1008 (Md. App. 2005)

27728615.2

(internal quotations omitted). "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent." *Id.* Trespass requires unauthorized physical entry onto another's property. *Wang*, 183 A.3d at 757. Because Plaintiffs fail to allege such an entry into property they possess, amendment of this claim would be futile.

Instantly, Plaintiffs claim that by placing cameras and a fence on SFH's own property beyond the Premises of 2440 Bittinger and driving on the driveway and land owned by SFH, that Defendants have somehow committed a trespass on property held by Plaintiffs. (Am. Compl. ¶ 38 [Dkt No. 21-1]). However, Plaintiffs lease only the cabin and garage of 2440 Bittinger and have no claim in or right to any other portion of the property. (Order, Ex. A to Ex. 5 to Complaint [Dkt. No. 2.7]. The driveway and the surrounding 170 acres are owned exclusively by SFH. Plaintiffs cannot recharacterize the landlord's entry onto its own property as "trespass."

Further, Plaintiffs' conclusion allegation that Smith "attempted to enter" the Premises without permission on what appears to be a single occasion and without success lacks factual detail of actual, unauthorized entry and interference with Plaintiffs' right to use and possess the Premises. (Am. Compl. ¶¶ 11, 12, 37 [Dkt No. 21-1]). Plaintiffs do not allege that Smith entered the interior of the cabin, that Plaintiffs were dispossessed of the Premises, or that their use or possession was interrupted in any way. To the contrary, Plaintiffs affirmatively allege that they continue to reside at and use the Premises without interruption. (Am. Compl. ¶ 3).

Absent factual allegations of an unauthorized physical entry into the leased Premises that interfered with Plaintiffs' exclusive possession, Plaintiffs fail to state a claim for trespass. Accordingly, Count IV would not survive a motion to dismiss under Rule 12(b)(6). Amendment

19

of this claim is therefore futile, and leave to amend should be denied.

### 5. Count V – Retaliatory Eviction

In Count V of the proposed Amended Complaint, Plaintiffs claim that Defendants "initiated a baseless eviction proceeding" in purported retaliation for Plaintiffs filing the actions in the Trial Court to obtain water for the Premises at 2440 Bittinger and for damages arising from same and for obtaining a judgment in connection with these actions. (Am. Compl., ¶¶ 13, 42-43 [Dkt. No. 21-1]). Further, Defendants claim that this "eviction proceeding" was initiated because Plaintiffs requested that the cameras on SFH's property be removed. (*Id.* at ¶¶ 44-45). Specifically, Plaintiffs claim that Defendants violated Maryland Real Property Code Section 8-208.1 by filing the Motion for Sanctions in retaliation for these purportedly protected actions. Even accepting Plaintiffs' allegations as true, amendment of this claim would be futile.

In relevant part, Section 8-208.1 explains that a landlord may not "bring or threaten to bring an action for possession against a tenant…because the tenant or the tenant's agent has provided written or actual notice of a good faith complaint about an alleged violation of the lease, violation of law, or condition on the leased premises that is a substantial threat to the health or safety of occupants to…the landlord…or because the tenant or the tenant's agent has…filed a lawsuit against the landlord." *Id.*; *see also White v. Franz,* No. 1:22-CV-02543-JRR, 2024 WL 1969763, at *5 (D. Md. May 2, 2024). Conversely, where an action for possession is filed for reasons *unrelated* to Plaintiffs' actions against the landlord, it is not retaliatory. *See Id.* Moreover, "an action by a landlord may not be deemed to be retaliatory for purposes of this section if the alleged retaliatory action occurs more than 6 months after a tenant's action that is protected under [the statute]." § 8-208.1(e).

Initially it must be noted that SFH, not Smith, is Plaintiffs' landlord. (*See* Lease, attached

27728615.2

as Ex. D to Ex. 5 to Complaint [Dkt. No. 4.1]).  Accordingly, he is not a proper defendant in any claim alleging retaliatory eviction.  Further, SFH, as the landlord, did not initiate an action for possession against Plaintiffs.  Rather, SFH[14] filed a Motion for Sanctions *in the existing action* between Plaintiffs and SFH and arising out of Plaintiffs' failure to comply with the Trial Court's Order confirming the terms of the Lease and holding specifically that Plaintiffs were "not entitled to any other access, beyond the house and garage, other than for use of the driveway, to any other part of the parcel they sold to Smith Farm holdings, LLC, at 2440 Bittinger Road or 2714 Bittinger Road."  (*See* Motion for Sanctions, Ex. 5 to Complaint [Dkt. No. 4.1]; Order at Ex. A to Ex. 5 of Complaint [Dkt. No. 4.1]).  While SFH sought to terminate the Lease as a sanction for Plaintiffs' continued violations of the Order, the relief was denied, and did not constitute an action for possession, nor did it result in Plaintiffs' dispossession of the Premises.  (Order Denying Motion for Sanctions, Ex. D).

Further, and as set forth at further length in the Motion for Sanctions, SFH filed the Motion for Sanctions as a result of Plaintiffs' continued failure to comply with the terms of the Trial Court's Order and the Lease by, *inter alia¸* refusing to move items that Plaintiffs had stored on SFH's property off of the property, continuing to access the full 9.75 acres of 2440 Bittinger, and failing to use the cabin for residential purposes as they no longer lived there.  (*See* Motion for Sanctions, Ex. 5 to Complaint [Dkt. No. 4.1]).  Indeed, Plaintiffs concede that at least one of the stated reasons for the filing of the Motion for Sanctions was SFH's belief that Plaintiffs no longer resided at the Premises.  (Am. Compl., ¶ 45 [Dkt. No. 21-1]).  Accordingly, the Motion for Sanctions was *not* filed because Plaintiffs had filed the underlying lawsuits related to the well[15] or

---

[14] Smith was not a party to this suit or the Motion for Sanctions.

[15] Again, SFH in fact complied with the Trial Court's Order and installed a new well to service the Premises at 2440 Bittinger.

raised issues about the cameras on SFH's property and, as such, the motion was not, and could not be, retaliatory.

Section 8-208.1(e) also makes clear that "an action by a landlord may not be deemed to be retaliatory for purposes of this section if the alleged retaliatory action occurs more than 6 months after a tenant's action that is protected under [the statute]." *Id.* Plaintiffs first claim that SFH filed the Motion for Sanctions on June 21, 2024 because "Plaintiffs had previously filed a claim against Defendants to secure water for the premises [sic] said suit was successful and Plaintiffs obtained a judgment requirement Defendants to provide water to the premises." (Am. Compl., ¶ 42 [Dkt. No. 21-1]). However, Plaintiffs' rent escrow action and suit for a new well and damages arising from the alleged lack of water were filed on October 21, 2022 and April 13, 2023, respectively, and the Trial Court issued its Order on October 13, 2023. (Landlord Tenant Complaint, Ex. A; Damages Complaint, Ex. B). Accordingly, the Motion for Sanctions cannot be deemed retaliatory as it was filed more than six months beyond any of these dates.

Plaintiffs further claim that "Plaintiffs, through their counsel Adam Greivell, Esq. exercised their legal right to demand removal of the invasive cameras violating their privacy and quiet enjoyment of the leased premises on June 10, 2024," and that "**[i]n direct response** to Plaintiffs' demand, Defendants initiated a baseless eviction proceeding…as an act of retaliation for asserting their rights" on June 12, 2024.[16] (Am. Compl., ¶¶ 44-45 [Dkt. No. 21-1]) (emphasis added).

Notably, in the Original Complaint, Plaintiffs alleged that this demand through their attorney was made by letter and did not state the date such letter was sent. (Compl., ¶ 11 [Dkt. No. 4]). Now, conveniently, Plaintiffs' proposed Amended Complaint states that this demand was

---

[16] SFH filed its Motion for Sanctions on June 21, 2024. (Motion for Sanctions, Ex. 5 to Compl. [Dkt. No. 4.1]).

22

27728615.2

made by letter on June 10, 2024, but did not attach that letter as an exhibit to the proposed Amended Complaint, and does not allege to whom or the means by which the letter was sent. (Am. Compl., ¶¶ 11, 44 [Dkt. No. 21-1]). In fact, Plaintiffs' counsel sent the letter requesting the removal of the cameras on SFH's property **on December 23, 2024**, a full *six months after* SFH filed its Motion for Sanctions on June 21, 2024 and, as such, the motion could not possibly have been filed in retaliation for Plaintiffs' request that SFH remove the cameras.  (A true and correct copy of the 12.23.24 Letter is attached hereto as Exhibit D).[17]  As a matter of logic, SFH could not have acted in retaliation for conduct that had not yet occurred, thus, Plaintiffs' proposed amendments cannot state a claim arising out of this purported protective activity because it has not satisfied the requirements of Section 8-208.1(e) that the landlord's alleged retaliatory action occur within six months following the tenants' protected act.  (Am. Compl., ¶ 11 [Dkt. No. 21-1]).

Finally, it should be noted that Plaintiffs seek damages "not to exceed three months' rent" as well as reasonable attorneys' fees under Section 8-208.1(c)(1).[18] (Am. Compl., ¶ 48 [Dkt. No. 21-1]). Because the lease amount is one dollar ($1.00) a year, three months' rent under the Lease equals approximately eight cents ($0.08).

For the reasons set forth above, Count V would not survive a motion to dismiss under Rule 12(b)(6), and amendment of this claim would therefore be futile. Accordingly, leave to amend should be denied.

### B.  Plaintiffs' Newly Asserted Counts VI-XI are Futile and Should Not be Permitted
#### 1.  Counts VI and VII – Civil Conspiracy

Counts VI and VII of the proposed Amended Complaint contain claims for civil

---

[17] While this letter is not publicly available, it can be considered by the Court since it is integral to and explicitly relied on in Plaintiffs' Amended Complaint. *See*, *supra*, § III.

[18] Plaintiffs incorrectly cite to Section 8-208.1(d). (Am. Compl., ¶ 48 [Dkt. No. 21-1]).

27728615.2

conspiracy. Under Maryland law, a claim for civil conspiracy requires (a) a confederation of at least two persons; (b) an overt, unlawful act done in furtherance of the conspiracy; and (c) actual, legal damages resulting to the plaintiff. *Kaur v. Pollack*, 2023 WL 3093405, at \*12 (D. Md. 2023), *aff'd sub nom. Kaur v. Baltimore Cnty. Police Dep't*, No. 23-1463, 2025 WL 1682294 (4th Cir. June 16, 2025) (citing *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971)). Critically, conspiracy is not an independent tort claim and cannot sustain an award of damage in the absence of other tortious injury to the Plaintiff. *Kaur*, 2023 WL 3093405, at \*12 (citing *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995)).

Here, Plaintiffs' conspiracy claims fail at the threshold because Plaintiffs have not plausibly alleged any underlying tort. Plaintiffs' proposed claim for breach of lease fails because breach of contract is not a tort claim. Accordingly, in Maryland, "[a] civil conspiracy to breach a contract is not a viable claim." *Hale Trucks of Md., LLC v. Volvo Trucks N. Am., Inc.*, 224 F. Supp. 2d 1010, 1021 (D. Md. 2002). As set forth above, Plaintiffs' proposed claim for retaliatory eviction (to the extent this qualifies as a "tort") fails as a matter of law. In the absence of a viable underlying tort, Plaintiffs' conspiracy claims necessarily fail.

Even if Plaintiffs had pleaded a viable underlying tort—which they have not—the conspiracy claims independently fail because Plaintiffs do not plausibly allege the existence of a confederation of two or more legally distinct actors. Plaintiffs allege that Smith conspired with SFH, an entity of which Smith is a member and principal. Such allegations are barred by the intracorporate conspiracy doctrine, under which the acts of a corporation's agents, when acting within the scope of their agency, are legally attributed to the corporation itself. *Balt.-Wash. Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 744 (D. Md. 2008) (stating that a "corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment,

24

[and] cannot conspire among themselves"). Accordingly, where a plaintiff alleges a conspiracy between a business entity and its officer, employee, or agent, the plaintiff "has not alleged an agreement between at least two persons." *Id.* (internal quotation marks omitted).

Plaintiffs attempt to avoid this doctrine by conclusory asserting that Smith acted "outside the scope" of his role with SFH. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiffs plead no facts explaining how or why Smith's alleged conduct fell outside the scope of his role as principal of SFH, nor do they allege any conduct that is inherently personal, unauthorized, or adverse to the company's interests. Such conclusory labeling is insufficient to defeat application of the intracorporate conspiracy doctrine.

Plaintiffs further allege that Smith conspired with unidentified "unknown individuals." These allegations are wholly conclusory and fail to satisfy basic pleading standards. Plaintiffs do not identify who these individuals are, what role they allegedly played, when or how any agreement was formed, or what overt acts were taken in furtherance of the alleged conspiracy. Allegations of conspiracy with unidentified actors, unsupported by factual content, are insufficient as a matter of law. *See Iqbal*, 556 U.S. at 678.

Finally, Plaintiffs fail to allege any "overt, unlawful act" taken in furtherance of a conspiracy. *Kaur*, 2023 WL 3093405, at *12*. As discussed extensively above, the conduct Plaintiffs challenge—installation of cameras, fencing, and gate modifications on SFH's own property, and the filing of litigation motions—constitutes lawful conduct. Lawful acts cannot supply the unlawful overt act required to sustain a civil conspiracy claim. Nor do Plaintiffs plausibly allege actual legal damages flowing from any unlawful conduct.

Because Plaintiffs fail to plead (i) a viable underlying tort, (ii) a confederation of legally

27728615.2

distinct actors, or (iii) an overt unlawful act causing damages, Counts VI and VII would not survive a motion to dismiss under Rule 12(b)(6). Amendment to add these claims is therefore futile, and Plaintiffs' Motion for Leave to Amend should be denied.

### 2.  Counts VIII, IX and X – Permanent Injunction

Counts VIII, IX, and X seek permanent injunctive relief compelling Defendants to remove cameras, fencing, and chains on a gate. These counts are futile and should not be permitted because they fail as a matter of law.  As an initial matter, a request for a permanent injunction is not an independent cause of action, but rather a form of relief that depends entirely on the viability of an underlying substantive claim. As this Court has explained, "a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged" in the other asserted counts. *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 692 n.1 (D. Md. 2001). Accordingly, where the underlying claims fail, a request for injunctive relief necessarily fails as well.

Even assuming arguendo that injunctive relief could be considered independently, Plaintiffs still fail to plead facts sufficient to support the extraordinary remedy they seek. To obtain a permanent injunction, a plaintiff must plausibly allege: "(1) irreparable injury; (2) the inadequacy of remedies at law; (3) that the balance of hardships favors equitable relief; and (4) that the public interest would not be disserved by an injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Lee v. Meyers*, No. 20-cv-3129, 2022 WL 252960, at *15 (D. Md. Jan. 27, 2022).

Plaintiffs' proposed allegations do not plausibly satisfy any of these elements. As set forth above, Plaintiffs have failed to state any viable underlying claim for breach of lease, invasion of privacy, nuisance, trespass, or retaliatory eviction. Where no legal violation is plausibly alleged, there can be no irreparable injury warranting equitable relief. *See Direx Israel, Ltd. v.*

26

*Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (stating that the absence of a showing of irreparable harm is sufficient grounds for denying injunctive relief). "Moreover, the required irreparable harm must be neither remote nor speculative, but actual and imminent." *Id*.

Here, Plaintiffs allege no facts establishing any actual or imminent irreparable injury. Their allegations concern the installation and placement of cameras, fencing, and chains located on Defendants' property—property to which Plaintiffs have no possessory interest beyond the limited rights granted by the Lease and confirmed by prior court orders. Plaintiffs' conclusory assertions that these conditions interfere with "quiet enjoyment," create a "dangerous condition," or violate the implied warranty of habitability are insufficient to establish irreparable harm, particularly where Plaintiffs fail to allege any concrete injury, actual and imminent harm, or deprivation of a legally protected right.

Nor do Plaintiffs plausibly allege that legal remedies are inadequate. To the extent Plaintiffs claim annoyance, inconvenience, or speculative privacy concerns, such allegations are quintessentially compensable, if at all, through monetary damages and therefore do not warrant extraordinary equitable relief. Indeed, Plaintiffs have withdrawn any purported claim for prior and/or continuing emotional injuries and, in fact, their sole claimed damages appear to be an allegedly damaged door lock and three months rent totaling eight cents ($0.08).

Finally, Plaintiffs fail to plead facts supporting the remaining equitable factors. The balance of hardships does not favor compelling Defendants to remove cameras, fencing, or gate mechanisms from Defendants' own property—particularly where Plaintiffs lack any cognizable right to dictate Defendants' use of that property. Likewise, Plaintiffs plead no facts demonstrating that the public interest would be served by judicially micromanaging a private landlord-tenant dispute absent a clear legal violation.

27728615.2

Because Counts VIII, IX, and X seek permanent injunctive relief untethered to any viable substantive claim and fail to plead irreparable harm or entitlement to equitable relief, they would not survive a motion to dismiss under Rule 12(b)(6). Amendment to add these claims is therefore futile, and Plaintiffs' Motion for Leave to Amend should be denied.

### 3. Count XI – Declaratory Judgment and Equitable Relief (Extension of Lease Term)

Count XI of the proposed Amended Complaint seeks declaratory and equitable relief in the form of a judicial extension of the Lease term for an additional five years. (Am. Compl. ¶¶ 74–77 [Dkt. No. 21-1]). Plaintiffs' request fails as a matter of law and renders amendment futile.

A court may entertain a declaratory judgment action only where the relief sought will "(1) serve a useful purpose in clarifying and settling the legal relations in issue and (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). A declaratory judgment is a procedural mechanism for clarifying existing legal rights, not for expanding them. Indeed, the Fourth Circuit has made clear that the Declaratory Judgment Act is "remedial only" and "creates no substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011).

Plaintiffs' request falls well outside these limits. Rather than seeking clarification of any existing right under the Lease, Plaintiffs ask this Court to impose a materially different lease term by extending the Lease for an additional five years—relief that would create a contractual obligation to which Defendants never agreed. Such relief would not clarify the parties' legal relationship; it would alter it. Declaratory judgment does not permit the creation of new contractual rights or obligations that do not otherwise exist.

Although styled as a claim for declaratory judgment, Count XI also seeks reformation of the Lease through equity. Under Maryland law as applied in federal court, reformation is an

28

27728615.2

extraordinary equitable remedy available only where the written instrument fails to reflect the parties' actual agreement due to fraud or mistake in its formation. This Court has explained: "It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement." *Fed. Home Loan Mortg. Corp. v. Murriel*, 2023 WL 4764578, at \*3 (D. Md. July 26, 2023) (quoting *Hoffman v. Chapman*, 182 Md. 208, 210 (1943)).

*Hoffman* clarifies that reformation is unavailable absent mutual mistake, and equity will not supply new terms where none were agreed upon. Specifically, the court held that "a mistake of law in the making of an agreement is not a ground for reformation," and that "where a mistake, either of law or of fact, is unilateral, equity will not afford relief except by rescinding the agreement on the ground of fraud, duress or other inequitable conduct." *Hoffman*, 182 Md. at 213.

Here, Plaintiffs plead no facts suggesting fraud in the formation of the Lease. They do not allege that Defendants made any misrepresentation to induce execution of the Lease, concealed material facts at formation, or engaged in any deceptive conduct affecting the Lease's original terms. Nor do Plaintiffs allege a mutual mistake—that the parties intended a lease term materially different from the five-year term expressly set forth in the written Lease. Instead, Plaintiffs seek to extend the Lease solely as a remedial consequence of their alleged breach claims.

Accordingly, because Count XI seeks relief that declaratory judgment does not authorize, pleads no basis for reformation under equity, and alleges no fraud or mutual mistake in the formation of the Lease, it would not survive a motion to dismiss under Rule 12(b)(6). Amendment would therefore be futile, and Plaintiffs' Motion for Leave to Amend should be denied.

### C. Plaintiffs Fail to State a Claim for Punitive Damages

27728615.2

In Plaintiffs' Prayer for Relief, they seek punitive damages for Defendants' purported "willful, wanton, and malicious conduct." (Am. Compl., Prayer for Relief [Dkt. No. 21-1]). However, Plaintiffs do not identify under which of their six counts they request such relief.

Punitive damages are not legally available under the claims asserted. Under Maryland law, punitive damages are not recoverable in ordinary contract actions. *Miller Bldg. Supply, Inc. v. Rosen*, 510 A.2d 1343, 1346 (Md. 1986). Likewise, punitive damages are not available under a claim for retaliatory eviction.  Md. Code Ann. Real Prop. § 8-208.1(c)(1).  With respect to tort claims, punitive damages are permitted only upon proof of actual malice—that is, conduct motivated "by evil intent, a desire to injure, ill will, or fraud." *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1126 (Md. 1995) (citing *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992). That is, conclusory assertions of purported "harassment" fall far short of this heightened standard.

Here, Plaintiffs cannot maintain a demand for punitive damages in connection with their breach of contract claim or retaliatory eviction claim. As to the remaining tort claims, the Complaint is devoid of factual allegations plausibly showing that Defendants acted with actual malice. Plaintiffs' generalized assertions concerning alleged cameras, fencing, and vehicle use, even if true, do not rise to the egregious level of misconduct necessary to support punitive damages under Maryland law.  Accordingly, Plaintiffs' request for punitive damages should be dismissed or stricken from the Complaint.

## V.    CONCLUSION

For each of the foregoing reasons, and those set forth in the Motion to Dismiss, which is incorporated by reference as though set forth at further length herein, Defendants Smith Farm Holdings, LLC and Steven G. Smith, respectfully request the entry of an Order dismissing Plaintiffs' Complaint in its entirety, with prejudice.

27728615.2

Dated: December 15, 2025

Respectfully submitted,

STEPTOE & JOHNSON PLLC

*/s/ Nicholas L. Fiske*
Tracey B. Eberling (MD Fed. Bar ID 11393)
Steptoe & Johnson PLLC
1250 Edwin Miller Blvd, Suite 300
Martinsburg, WV 25404
(O):  304.263.6991
tracey.eberling@steptoe-johnson.com

Nicholas L. Fiske*
Pennsylvania Bar No. 309696
nick.fiske@steptoe-johnson.com

Joseph R. Lewis III*
Pennsylvania Bar No. 328830
joseph.lewis@steptoe-johnson.com

**STEPTOE & JOHNSON PLLC**
One PPG Place, Suite 3300
Pittsburgh, Pennsylvania 15222
Telephone: 412-504-8010
Fax: 412-504-8011
*\*Admitted Pro Hac Vice*

*Counsel for Defendants, Smith Farm
Holdings, LLC and Steven G. Smith*

31

27728615.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 15th day of December, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Adam Greivell, Esquire
5 Cornell Ave
Hagerstown, MD 21742
(240)528-8150
adam@gfirm.us

*AND BY ELECTRONIC MAIL TO:*

Arnold Phillips, Esquire
25254B Garrett Highway
McHenry, MD 21541
(301) 387-2800
afplaw@gmail.com

*/s/ Nicholas L. Fiske*
Nicholas L. Fiske
Pennsylvania Bar No. 309696

27728615.2