**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND NORTHERN DIVISION**

GK PARANDHAMAIA and JAN
PARANDHAMAIA,

      Plaintiffs,

      v.

SMITH FARM HOLDINGS, LLC and
STEVEN G. SMITH,

      Defendants.

CIVIL ACTION No.
1:25-cv-02691-SAG

## OPPOSITION TO MOTION TO DISMISS

COME NOW Plaintiffs, GK and Jan Parandhamaia, by and through their attorney, Adam D. Greivell, Esq., and file this OPPOSITION TO MOTION TO DISMISS, and for reasons state:

## I. INTRODUCTION

Defendants Smith Farm Holdings, LLC ("SFH") and Steven G. Smith ("Smith") (collectively, "Defendants") seek dismissal of Plaintiffs' Amended Complaint ("AC1", [ECF 25]) in its entirety. Plaintiffs allege, in considerable factual detail, a sustained and accelerating campaign of unlawful conduct by the landlord, SFH and its principal, Smith, to include constant unlawful intrusions on the premises, peering into windows, attempted forcible entry, surveillance cameras out of, and in, the middle of nowhere ("in the yard near the house," and aimed directly at Plaintiffs' bedroom and living areas), restricting the leased premises with the deliberate disablement of a large gate that had long secured the isolated rural property and the erection of dangerous barbed wire fencing, and repeated retaliatory actions to dispossess and otherwise limit the Plaintiffs' use of the property. The allegations are detailed, grounded in fact, and, taken as true at this stage, plainly state claims for relief under applicable law. The motion should be denied in its entirety.

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." B*ell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Well-pleaded factual allegations must be accepted as true, *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), and all reasonable inferences must be drawn in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (cleaned up). Factual disputes, credibility determinations, and the weighing of competing inferences are beyond the scope of a motion to dismiss and must await summary judgment or trial.

The court assumes the truth of "nonconclusory factual allegations" to evaluate whether, as a whole, they give rise to "plausible suggestion" of the asserted unlawful conduct.

*Iqbal*, 129 S.Ct., at 1950. Legal conclusions in a complaint "must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*, at 1950.

## III. FACTS

### Extrinsic Matters

Generally, extrinsic matters not found in the complaint and exhibits are not to be considered in evaluating a motion to dismiss, though the court "may properly take judicial notice of matters of public record," *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

Cir. 2009).  Documents attached to the motion to dismiss that were both "integral to and explicitly relied on in the complaint" may be considered to the extent their authenticity is conceded.[1] *American Chiropractic v. Trigon Healthcare*, 367 F. 3d 212 (4th Cir., 2004) (cleaned up).

Defendants labor at some length, introducing several pages-worth of extrinsic assertions with the design to contradict or discredit the facts alleged in AC1.  Though nominally ceding that credibility is not an appropriate consideration at this stage, Defendants heap extrinsic assertions, sometimes for the sole purpose to manufacture the appearance of an inconsistency so that the thus-contrived inconsistency might be bootstrapped into undermining Plaintiffs' credibility, which, in turn, Defendants hope, can be further bootstrapped to assert implausibility.

Plaintiffs are tempted, and, indeed, prepared, to "defend their credibility" and otherwise rebut the voluminous extrinsic, frequently irrelevant, facts Defendants have layered into the mix, but will restrain themselves to address the actual merits of Defendants' motion head-on.[2]

---

[1] One such document is the December 23, 2024 letter from Adam Greivell attached as Exhibit D to Defendants' Motion to Dismiss [ECF 27-4]. Undersigned concedes that letter is both authentic and is the letter that was mistakenly referenced in the Amended Complaint as being dated June 10, 2024.

[2] Given the numerosity of Defendants' extrinsic assertions, Plaintiffs feel compelled to note that, unless otherwise expressly conceded, Plaintiffs broadly dispute and do not concede the veracity and authenticity of all extrinsic assertions/documents made by Defendants that are not contained in the Amended Complaint, its attachments or otherwise entitled to preclusive effect from prior litigations or properly subject to judicial notice. *See*, *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (extrinsic documents attached to motion to dismiss may be considered in a 12(b)(6) motion to the extent they are "integral to and explicitly relied on in the complaint" and their authenticity is not in dispute).

This is especially true for the many instances where Defendants have masqueraded as "facts" characterizations Plaintiffs' conduct during prior litigation, Defendants' self-declared innocent motives for each challenged act, assertions about whether Plaintiffs "actually" "reside" at the Premises, and other recycled arguments/positions/assertions Defendants failed to establish in prior litigations.

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

**The Material Facts Alleged and Presumed to be True**

Plaintiffs signed a written Lease with SFH for the house, garage, curtilage and use of the driveway, which, at the time of execution, included a substantial functioning security gate (the "Premises").[3] See AC1, para. 8, 14, 15, 24, 70.

<u>Defendants' Direct Interference</u>

Defendants directly and physically interfered with and restricted the Plaintiffs' use of the Premises in a pervasive manner by:

- "Erecting barbed wire fencing around the house to restrict Plaintiffs' access to and use of the curtilage." See AC1, at paras. 11e, 24, 32c.

- "Disabling the security gate" with "chains locking [it] open." AC1, paras. 14, 25, 24, 70, 73.

- "Smith's frequent unauthorized entries onto the curtilage" (AC1, para. 32a)

- "[F]requently:"

  - "entering the curtilage"

  - "peering into windows"

  - "attempting to open doors" (AC1, para. 11a)

- On October 5, 2024: "Attempt[ing] to forcibly enter the leased premises without notice or permission" (AC1, para. 12)

- "causing damage to locks and doors during forcible attempts," (AC1, para. 37)

- "physically encroaching upon the curtilage of the leased premises." (AC1, para. 27)

- "preventing Plaintiffs from exclusive use of the premises" (AC1, para. 37)

<u>Defendants' Constructive Interference</u>

Defendants constructively, intentionally, and vexatiously interfered with and restricted Plaintiffs' use of the Premises in a pervasive manner by:

- Installing video cameras:

  - on or about June 21, 2024 (AC1,    11b)

---

[3] Plaintiffs acknowledge, as Defendants pointed out in footnote 4 of their motion, that the correct version of the Lease is that attached in Exhibit B in Defendants' motion [ECF 27-2, at p. 8-11].

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

- "in the yard near near the house" (*id*)

- "pointed toward Plaintiffs' bedroom and living areas" (*id*)

- "appear[ing] capable of recording private activities inside the home" (*id*)

- which "are placing them under constant surveillance" and "has resulted in actual recording and viewing of Plaintiff's private activities inside the home, including intimate moments in the bedroom and living areas" (AC1, para. 19)

    - on "information and belief" supported by

        - "Defendants' knowledge of specific private events occurring inside the premises that could only be known through surveillance footage"

        - "prior statements of Defendants indicating that Plaintiffs were not living at the house" which "indicate that the cameras are surveilling the Plaintiffs" (*id*)

- "Relocating said cameras closer to the home after Plaintiffs' counsel … demanded their removal by letter," instead of removing them (AC1, para. 11c)

- "Driving trucks, recreational vehicles, and other vehicles through the driveway and yard, sometimes employing others to do so, to intimidate and harass Plaintiffs" (AC1, paras. 11f, 32d)

<u>Timeline Re: Litigation and Further Related Retaliation</u>

Defendants threatened, initiated and escalated legal proceedings for possession against Plaintiffs and otherwise diminished and restricted their use of the Premises because of Plaintiffs' notifications of lease and legal violations and their filing and participation in lawsuits against the landlord, SFH, *to wit:*[4]

- **October 21, 2022**, Plaintiffs brought a rent escrow suit in state district court[5] because of running water (AC1, para. 42, *see also* Declaratory Judgment and Order ("DJ") [ECF 2-1, p. 32], and Memorandum Opinion ("MO") [ECF 2-1, p. 33-35], and Docket Entries for the Rent Escrow Case, attached hereto as Exhibit A.

- **November 17, 2022**, Plaintiffs prevailed on the Rent Escrow Case. *Id.*

- **December 13, 2022**, SFH Appealed. *Id*.

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

---

[4] Much of the following dryly recites state circuit and district court docket and case history, for which this Court can take judicial notice, and of which Defendants are intimately aware.

[5] Case No. D-122-CV-22-007273 (the "Rent Escrow Case"), appealed to state circuit court, *via* Case No. C-11-CV-22-000109 (the "109 Case" or "Rent Escrow Appeal").

- SFH never posted an appeal bond or received a stay of execution of judgment. *Id*.

- On **April 13, 2023**, after nearly five months of SFH failing to comply with the Order to provide water in the Rent Escrow Case, Plaintiffs sued SFH in a new action in the circuit court for declaratory judgment concerning SFH's obligations *vis a vis* the responsibility to provide running water under the Lease, and for damages and associated relief for the breach thereof separate and apart from what was available to them in the Rent Escrow Case or the appeal thereof.[6] *See, id,* AC1, para. 42, DJ, MO, and Exhibit B, the 109 Case Docket Entries, and Exhibit C, the 070 Case Docket Entries.

- The Rent Escrow Appeal and the 070 Case were ultimately set to be tried together. *Id*.

- On **August 2, 2023**, while Plaintiffs were actively participating in two lawsuits against SFH, and less than four months after Plaintiffs filed the 070 Case, SFH responded "with a baseless retaliatory request to cancel the Lease" (AC1, para. 42) by bringing a counterclaim in the 070 Case, seeking to completely eject Plaintiffs from the Premises, and, alternatively to severely restrict their use and possession to exclusively the house and garage thereon. *See* Exhibit D, SFH Counterclaim filed in the 070 Case.

- On **October 13, 2023**, The circuit court entered a final judgment in both the 109 Case and the 070 Case, and declined to completely dispossess the Plaintiffs or to restrict the Plaintiffs to the extreme degree requested by SFH, confirming that the

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

---

[6] Case No. C-11-CV-23-000070 (the "070 Case").

lease included the "curtilage" around the house and garage[7] and the use of the driveway. *See*, AC1, para. 9, DJ, MO.

- Plaintiffs noted an appeal to the Appellate Court of Maryland from the 070 Case on **November 12, 2023**[8]. Ex. A.

- On **March 25, 2024**, Plaintiffs filed their Appellants' Brief. *See* Exhibit G - the docket entries from the ACM Case.

- SFH filed its Appellee's Brief on **April 24, 2024**. *Id.*

- Plaintiffs filed a Reply Brief on **May 14, 2024**. *Id.*

- About six weeks later, on **June 21, 2024**, Defendants installed the video cameras (AC1, para. 11b, 28, 32b) and SFH filed its Motion for Sanctions (the "MFS")[9] expressly seeking to terminate the lease and Plaintiffs' possessory interest.

---

[7] Although the Court did not define the outer bounds of "curtilage" in the DJ or MO, Smith testified in the trial, and the trial judge appeared to accept, that he believed the curtilage to be a 50 or 100 foot radius from the structures.

"Q: … do you believe that they're reasonably entitled to some area in addition to that what we call the curtilage around the house?

A [Smith]: Yeah, of course. You have to get in and out of the house.
* * *
… I mean it seems reasonable to be able to get in and out of the house and, you know, have a, you know, small amount of yard to interact with, you know, a hundred-foot radius or something of that nature seems reasonable to me.
* * *
… Fifty feet all around the house seems reasonable to me."

*See* Exhibit E - excerpts from **September 5, 2023** trial transcript from the 070 / 109 Case.

"THE COURT: … as I understood Mr. Smith, he offered to make that curtilage a 50-foot diameter, as I understood.

MR. FISKE: A hundred-foot diameter, 50-foot radius. Radius is the shorter one.

THE COURT: You can walk out 50 feet in any direction. Would that be –

MR. FISKE: Correct."

*See* Exhibit F - excerpts from **October 4, 2023** trial transcript from the 070 / 109 Case.

[8] Case No. ACM-REG-1790-2023 (the "ACM Case")

[9] Defendants in their motion refer to the sanctions motion as being filed on June 12, 2024 (at p. 5; likely inspired by Plaintiffs' identical typographical error in the Amended Complaint at para. 45), but point out the error at p. 21 and correctly identify June 21, 2024 as the day SFH filed that particular motion for sanctions.  The Motion for Sanctions itself is in this Court's docket at ECF 2-7, p. 26-30.

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

- SFH expressly complained in the MFS that:

  - Plaintiffs kept "a picnic table, swing set, and storage container" in an area SFH described as being "on portions of the property which they do not lease" (but are within the 50 foot curtilage radius represented to the circuit court by Smith and affirmed by his counsel - Ex. E, F). MFS, para. 9.

  - "Plaintiffs have refused to allow Smith Farm to access a spigot located on the exterior of the home so that Smith Farm can water a garden on its own property and which is the only accessible water source in the vicinity of the garden." MFS, para. 12.

  - "Steven Smith, Smith Farm's principal, has observed that Plaintiffs have not accessed the leased home for days (or perhaps weeks) at a time and instead appear to be using it solely to store their personal items." MFS, para. 17.

- **July 17, 2024**, the MFS was denied. (Exhibit C, ECF 27-3, Order of Judge Timothy Finan denying SFH's Motion for Sanctions, with prejudice.)

- **October 1, 2024**, the parties conducted oral arguments in the ACM Appeal.

- **December 23, 2024**, Plaintiffs' counsel sends Defendants' counsel a letter to cease and desist re: cameras, other harassment. *See*, AC1, para. 11, ECF 27-4.

- **March 12, 2025**, Plaintiffs withdrew the appeal in the ACM Case. Ex. G.

- **March 13, 2025**, Plaintiffs' counsel advised Defendants' counsel of a new lawsuit (the instant suit) to be filed. ECF 2-12, p. 3.

- **April 11, 2025**, SFH files for sanctions second time in the 070 Case. Ex. C.

- **May 29, 2025**, Plaintiffs filed the instant suit. ECF 1.

- **June 4, 2025**, SFH lost its second motion for sanctions in the 070 Case. Ex. C.

### ARGUMENT

### Plausibility and Particularity

As clearly illustrated by the above facts, the relationship between these parties has been defined, since 2022, by a pattern in which each exercise of Plaintiffs' legal rights is met with escalating adverse action from Defendants. That pattern (properly enriched by judicially noticed docket activity) is pleaded in specific, chronological terms, with identifiable events, dates, and actors at each step. It is the essential context for the entire suit.

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

Cameras

On the cameras: the Amended Complaint does not allege, in the abstract, that cameras were placed "somewhere" on the property and might possibly have done something. It alleges, with specificity, that the cameras were installed on or about June 21, 2024, in the yard near the house, pointed toward Plaintiffs' bedroom and living areas and at bedroom windows. The cameras appear to Plaintiffs, as they would to any competent person living since the year 2000, capable of recording private activities inside the home, including intimate moments. This inference is reasonable because they are cameras, and cameras record the things that are in front of them. The Amended Complaint further sets forth facts (such as Defendants' knowledge of things that, to Plaintiffs' perception, should not have been knowable but for the video camera intrusion) that have given rise to reasonable information and belief that the cameras are, in fact, recording the things at which they are pointed, including Plaintiffs' private activities inside the home, including intimate moments in the bedroom and living areas. This is the definition of circumstantial pleading.

The technical details Defendants demand border on the absurd, and most are exclusively within Defendants' own possession. The plausibility standard does not compel that result. *Iqbal*, 556 U.S. at 678.

Defendants also argue that the camera allegations are internally inconsistent because Defendants simultaneously doubted whether Plaintiffs were residing at the Premises at all, and one cannot both doubt that tenants are present and surveil them. (MTD Mem., p. 16.) This argument requires the Court to accept Defendants' non-residency assertion as true — which is precisely what 12(b)(6) forbids — and to reject Plaintiffs' allegation that the non-residency claim was false. The Amended Complaint alleges that Defendants were *falsely claiming Plaintiffs were absent* (AC1, para. 13). It further alleges that the cameras themselves may have been the instrument used to generate that false claim

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

(AC1, para. 19). The Plaintiffs' internally coherent understanding and allegations of Defendants' surveillance, false pretext, and retaliation are well and specifically pleaded, and are to be taken as true.

The relocation of the cameras closer after demand for their removal strongly infers that the Defendants did, in fact, harbor malicious intent, and acted with purpose to harass, annoy and retaliate.

Unauthorized Entry

Smith personally, individually, not in some abstract corporate capacity has *frequently*[10] entered the curtilage of the leased Premises without permission, peering into windows and attempting to open doors. These are not conclusory allegations that something bad happened at some unspecified time in some unspecified way. They identify the actor (Smith), the location (the curtilage of the Premises, which the circuit court confirmed as Plaintiffs' leasehold), and the conduct (entering, peering into windows, attempting to open doors, causing damage). The allegation is of a pattern of such conduct. Pattern-of-conduct allegations do not require date-by-date itemization to satisfy Rule 8. *Twombly*, 550 U.S. at 555.

Barbed Wire

Defendants erected barbed wire fencing around the house on the leased Premises, Plaintiffs allege, within the area the circuit court confirmed belongs to Plaintiffs' leasehold. The fencing was installed, as the Complaint explicitly alleges, "to restrict Plaintiffs' access to and use of the curtilage." The fencing creates a dangerous condition around a residential

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

---

[10] Although this motion is not a forum for supplying additional facts, Plaintiffs represent that, in just one 15-month span from late 2023 thru early 2025, Plaintiffs captured and/or logged in excess of 175 individual trips/entries/intrusions by Defendants and their agents, in person, on foot, in camouflage, in pickup trucks, cars, side-by-sides, snowmobiles, etc. This is proffered to provide the Court with *some* further context regarding the extreme measures Defendants have been engaged in, and Plaintiffs are more than capable, if necessary, of a further amendment going into *exhaustive* and tedious detail about all the minutiae of Defendants' harassing conduct.  Plaintiff submits the same is unnecessary, based on the state of the law described herein.

dwelling, preventing Plaintiffs from freely using their own outdoor space, from having guests, from allowing grandchildren onto the property.

Defendants baldly deny the fence is "barbed wire" and assert several times that it is "beyond the curtilage," which are, of course, things Defendants cannot do on a motion to dismiss. At 12(b)(6), the Complaint's characterization governs, not Defendants'.

### The Gate

The Premises include a large security gate that was operable when Plaintiffs took possession under the Lease. Lease § 5(a) covenants that the Premises were delivered in a habitable condition. Defendants did not merely fail to maintain the gate. They intentionally disabled it, locking it permanently open with chains. This is an intentional diminishment of the leasehold estate.

The distinction between failing to repair and affirmatively disabling matters. A "no repairs" clause in a lease cannot insulate a landlord's own deliberate act of dismantling security infrastructure it delivered to the tenant. The gate is not claimed as an independent standalone habitability defect. But deliberately locking open the only gate securing an isolated rural property, in combination with the other conduct alleged, is relevant to the full pattern of interference with Plaintiffs' safe use and enjoyment of the Premises, as well as evidence of malicious, retaliatory intent.

### Vehicles

Defendants and their agents have repeatedly driven trucks, recreational vehicles, and other large vehicles through the driveway and yard of the Premises, sometimes specifically engaging others to do so, for no other evident purpose but to intimidate and harass Plaintiffs. The allegations identify the actors, describe the conduct, identify the method (including employing third parties), and state the asserted, reasonably inferrable purpose. Defendants protest that driving on a driveway is facially lawful, but the Amended Complaint identifies a course of conduct, the purpose of which was intimidation,

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

retaliation and harassment. While the characterization of Defendants' motivation may be regarded as conclusory, especially when not stated within a rich factual framework such as Plaintiffs have established, the question is whether the actual facts, taken together, plausibly infer that the conduct is motivated as Plaintiffs assert.  That bar is cleared.

<u>Observations on Timing</u>

The first sanctions motion, filed on June 21, 2024, was motivated — SFH's own motion said so explicitly — by Smith's assertion that Plaintiffs had been storing items (picnic table, swingset, etc.) outside of the curtilage, and had "not accessed the leased home for days (or perhaps weeks) at a time" and appeared to be "using it solely to store their personal items." These characterizations originated with SFH, were the premise of SFH's own motion, and were rejected with prejudice (ECF 27-3). Defendants now recycle that same characterization in their motion to dismiss, presenting the unsuccessful assertion as established background fact. Re-presenting a position that was rejected with prejudice in a prior proceeding does not rehabilitate it or somehow convert it into a fact that this Court must accept against the Plaintiffs on Defendants' motion to dismiss.

Taken together, the facts alleged show a years-long pattern of escalating adverse action following each exercise of tenant rights; the simultaneous installation of surveillance cameras, barbed wire fencing restricting the leased area, and filing of a lease-termination proceeding. Coupled with the gate disablement, vehicle intimidation, and *pervasive* intrusions into Plaintiffs' leased Premises, these allegations are detailed, specified, and far from conclusory. They must be accepted as true, and, as such, the motion to dismiss cannot be sustained.

**Count I — Breach of Contract.**

Count I rests on three theories that overlap and reinforce one another: Plaintiffs' right of exclusive possession, the implied covenant of quiet enjoyment, and the implied

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

warranty of habitability. Any one is sufficient at the pleading stage. All three are adequately pled.

Under Maryland law, a leasehold carries with it the right of exclusive possession — including, critically, the right to exclude the landlord. *Kessler v. Equity Mgmt., Inc.*, 82 Md. App. 577, 586–87, 572 A.2d 1144 (1990) ("[A] landlord has no more right to enter premises possessed by the tenant than a stranger would have") (cleaned up); *Miller v. State*, 174 Md. 362, 368, 198 A. 710, 714 (1938) (same); *Uthus v. Valley Mill Camp* (quoting *Delauter v. Shafer*, 374 Md. 317 (2003)) ("[A] tenancy involves an interest in the land passed to the tenant and a possession exclusive even of the landlord except as the lease permits his entry") (cleaned up); *see also Curtis v. U.S. Bank Nat. Ass'n*, 427 Md. 526, 536, 50 A.3d 558, 564 (2012). The Lease at Section 12 permits Defendants to enter the Premises only "in an emergency situation." No emergency is alleged or claimed. Every one of the entries described by Plaintiffs are therefore breaches of the Lease on their face. The Lease's emergency-entry provision is not a limitation on Plaintiffs' rights; it is the only concession Plaintiffs made to Defendants' right to enter, and it has not been invoked for any of entries for which Plaintiffs complain.

The implied covenant of quiet enjoyment adds a second and independent theory. That covenant "insulates the tenant against acts or omissions on the part of the landlord, or anyone claiming under him, which interfere with the tenant's right to the use and enjoyment of the premises for the contemplated purposes." *Q.C. Corp. v. Maryland Port Admin.*, 68 Md. App. 181, 510 A.2d 1101, 1107 (1986) (quoting 49 Am. Jur. 2d Landlord & Tenant § 339). Critically, that obligation extends to the landlord's use of adjacent property — the landlord may not "derogate from his grant by so using his adjoining property as substantially to interfere with the enjoyment of the premises he has leased." *Id*. For the covenant to be breached, the landlord must have "substantially interfered with the use of

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

the premises, to the tenant's injury." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253, 267 (Md. App. 2009).

This Court's decision in *Wright v. Willow Lake Apartments (MD) Owner, LLC*, 648 F. Supp. 3d 647 (D. Md. Jan. 3, 2023), is instructive. The Court found adequate pleading of a quiet enjoyment claim where the plaintiff alleged a neighboring tenant "came up to her glass windows and looked inside repeatedly." This was conduct that, she alleged, interfered with her ability to use her apartment. *Id.* at 655–56. No technical specifications were required. The subsequent bench trial in *Wright* is equally instructive, as the evidence ultimately fell short there because it consisted of twenty-one videos, none of which depicted the harassment Wright alleged, with the most serious incident being a brief moment where an adolescent tapped on the window and immediately walked away. The distinction between that case and this one is stark. Plaintiffs here allege not an ambiguous moment but a sustained campaign. Wright's pleading bar was cleared by allegations far less serious.

The warranty of habitability rounds out Count I. Lease Section 5(a) covenants delivery in "a habitable condition." Defendants did not merely fail to make repairs. They affirmatively installed dangerous infrastructure — barbed wire around a residential dwelling — and affirmatively disabled an existing security feature. As alleged, the barbed wire creates a dangerous condition documented in the Amended Complaint, and the gate disabling removed a security appurtenance Plaintiffs received under the Lease. A "no repairs" clause does not immunize these acts. It speaks to maintenance; it cannot reach affirmative acts of installation and sabotage.

**Count II — Invasion of Privacy (Intrusion Upon Seclusion).**

Maryland recognizes intrusion upon seclusion where a defendant (1) intentionally intrudes, (2) upon the solitude or seclusion of another or their private affairs, (3) in a manner that would be highly offensive to a reasonable person. *Pemberton v. Bethlehem Steel*

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

*Corp.*, 66 Md. App. 133, 161, 502 A.2d 1101, 1116 (1986) (adopting Restatement (Second) of Torts § 652B). Each element is met by the camera facts described in AC1.

The entries onto the property were intentional. The camera installation was intentional. There is no other reason to install cameras in the middle of nowhere, surrounding a house, aimed at bedroom windows. The seclusion invaded is the interior of Plaintiffs' bedroom and living areas, which is among the most paradigmatic private spaces recognized by law. And the question of offensiveness answers itself: surveillance of a tenant's curtilage, living areas, and bedroom by the tenant's own landlord is, as a matter of law and common sense, highly offensive to a reasonable person, and, after October 1, 2025 may independently constitute criminal conduct under Maryland law.

Defendants' two main arguments against Count II — the technical-specifications demand and the manufactured inconsistency — are addressed above. As explained there, specifications of the landlord's own equipment are largely irrelevant, and cannot be required of a plaintiff who does not own or have access to that equipment.

### Count III — Nuisance.

A private nuisance requires (1) an unreasonable and substantial interference with the use and enjoyment of land; (2) causation; and (3) damages. E*xxon Mobil Corp. v. Albright*, 433 Md. 303 (2013). Maryland recognizes both trespassory and nontrespassory nuisance.

Defendants argue the alleged conduct is either trespassory and thus improperly pleaded as nuisance, or insufficient to constitute substantial interference. Both arguments fail. The standard for substantial interference is assessed based on the totality of the landlord's conduct. *Nationwide*, 963 A.2d at 267. No single act need independently satisfy the threshold. The aggregate of the conduct described in AC1 more than adequately alleges substantial unreasonable interference with a residential tenancy.

On the nontrespassory theory specifically, Plaintiffs note that surveillance cameras placed outside the leasehold (which is not conceded, as they are alleged to be "in the yard

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

near the house", which in the light most favorable to Plaintiffs, may mean it/they are within the curtilage) but aimed inward constitute nontrespassory intrusion. The physical instrument may be outside the tenant's space, but the invasion occurs through the camera's recording function. Persistent vehicle convoys driven through the driveway and yard for intimidation purposes impair use and enjoyment through noise, presence, and psychological distress without requiring physical entry into the home's interior. These are paradigmatic nontrespassory nuisance categories.

As for Defendants' argument that trespassory conduct cannot support nuisance: Maryland does not categorically bar nuisance claims where some of the underlying conduct is also trespassory. *See Exxon Mobil*, 433 Md. at 340–41. Concurrent trespass and nuisance claims are routinely maintained.

### Count IV — Trespass.

Plaintiffs concede Defendants' identification of the legal standard for trespass as stated in *Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008 (Md. App. 2005) ("In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent.").

Each element is satisfied by the numerous facts regarding Defendants' unauthorized entries, and the clear legal right to exclusively possess a leasehold estate even (especially) against the landlord.  Permission was not alleged, and cannot be supplied by Defendants' denial.

Defendants' argument that Smith was entering "SFH's own property" is foreclosed.

### Count V — Retaliatory Eviction.

Maryland Code, Real Property § 8-208.1 prohibits a landlord from taking certain "retaliatory actions" ("[b]ring or threaten to bring an action for possession … [a]rbitrarily …

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

decrease the services to which a tenant has been entitled") against a tenant who, in good faith, sues, participates in a lawsuit, or gives notice of a violation of the lease or the law.

Count V incorporates all facts and conduct asserted in the Amended Complaint, specifies that Plaintiffs sued to secure water to the Premises, and Defendants responded with baseless retaliatory action to terminate the lease. The facts, including the unambiguous docket history bear this out in spades, *supra*. Plaintiffs complained, initiated litigation, and participated in litigation against the landlord, effectively persistently since October, 2022. It is implausible to suggest that SFH's actions against Plaintiffs were *not* factually caused and motivated by Plaintiffs' actions, because SFH said so itself in its Counterclaim in the 070 Case and the MFS. There is no escape for SFH through the six-month gap, because there has never been a six-month gap.

Plaintiffs' protected activities include the 2022 rent escrow action, the 2023 declaratory judgment action, and the December 2024 demand letter — a multi-year series of exercises of tenant rights, each followed by escalating adverse action from Defendants. The retaliatory eviction claim is grounded in that entire documented pattern, not in any single triggering event.

### Counts VI and VII — Civil Conspiracy.

Civil conspiracy requires (1) a confederation of two or more persons; (2) by concerted action; (3) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (4) resulting in damage. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189–90, 665 A.2d 1038 (1995). The underlying torts having been established, the conspiracy counts present two subsidiary issues: whether the intracorporate conspiracy doctrine bars the claims, and whether unknown co-conspirators are adequately pled.

The Fourth Circuit recognizes that "the intracorporate immunity doctrine does not apply where a corporate officer has an independent personal stake in achieving the corporation's illegal objectives." *ePlus Tech., Inc. v. Aboud,* 313 F.3d 166, 179 (4th Cir. 2002)

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

(cleaned up). Smith possesses precisely such a stake. He resides on the adjacent property. The conduct attributed to him personally (entering the curtilage, peering into windows, attempting forcible entry, causing physical damage, vehicle harassment) is not the conduct of a corporate officer acting in a routine business capacity. No plausible legitimate business purpose is served by a principal of an LLC personally engaging in this bizarre conduct. Smith acted in his individual capacity, as AC1 expressly alleges. That allegation is supported by the specific personal conduct described throughout AC1 and is not conclusory.

Regarding unknown co-conspirators, Plaintiffs allege that Defendants employed others to install cameras, disable the gate, and erect the barbed wire. Those individuals' identities are within Defendants' exclusive knowledge and will be disclosed in discovery. No case requires naming every co-conspirator at the pleading stage.

**Counts VIII, IX, and X — Permanent Injunctive Relief.**

To the extent Defendants may be correct that injunctive relief does not stand alone, the Court should tie the requested relief to the underlying claims. Such is what Plaintiffs plainly intend. At the pleading stage, injunctive relief survives where an underlying cause of action survives, legal remedies are inadequate, and the balance of equities favors relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). All three conditions are met.

The underlying claims survive, as demonstrated above. Legal remedies are inadequate because the harm is ongoing and, in the case of surveillance, irreversible — once private images are captured and viewed, they cannot be uncaptured. The continuing maintenance of cameras directed at private residential areas constitutes an ongoing privacy violation that accrues harm each day and cannot be remedied retroactively by damages. Similarly, barbed wire within the curtilage and a disabled security gate on an isolated rural property are ongoing physical safety conditions that equity is particularly suited to address.

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

The balance of equities is not close. Defendants have no legitimate interest in continuing to engage in the alleged conduct which, historically, has escalated in response to Plaintiffs' efforts to vindicate their rights, rather than abating. Absent injunctive relief, the harm will continue.

### Count XI — Declaratory Judgment.

The Declaratory Judgment Act, 28 U.S.C. § 2201, requires an "actual controversy" that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). That controversy exists here.

Despite the Garrett County Circuit Court's judgment confirming the scope of Plaintiffs' leasehold, Defendants have continued to act as though that judgment does not bind them — erecting structures within the confirmed curtilage, asserting Plaintiffs are not residents, filing proceedings to terminate the lease. This is live, ongoing conduct, not a theoretical dispute. A declaration from this Court confirming that Defendants' conduct violates the Lease and that Plaintiffs retain the full leasehold rights established by the prior judgment would resolve a concrete controversy between parties with directly adverse legal interests. Count XI is not duplicative of Count I — it seeks prospective guidance to govern future conduct, not merely compensatory relief for past breach.

### Punitive Damages.

Punitive damages are available for intentional torts upon a showing of "actual malice" — conduct motivated by ill will, spite, or fraud. *Owens-Illinois, Inc. v. Zenobia,* 325 Md. 420, 460, 601 A.2d 633 (1992). Plaintiffs concede that punitive damages are not recoverable on Count I or Count V. They are available on the intentional tort counts — Counts II, III, IV, and VI–VII.

Actual malice is more than adequately implied by the lengthy above-noted recitations of Defendants' bizarre and troublesome conduct which, itself, defies plausible

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

explanation by anything other than express ill will and retaliation. None of the alleged misdeeds are the conduct of a principal acting in a good-faith business capacity. The sustained, knowing, escalating nature of this pattern permits the jury to find actual malice.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied in its entirety. The facts alleged in the Amended Complaint are specific, detailed, and grounded in identifiable conduct by named actors on known dates. They are not conclusory. The legal arguments Defendants advance against each count depend either on the Court accepting Defendants' extrinsic counter-narrative, forbidden by Rule 12(b)(6). Each count states a plausible claim and cannot be dismissed at this stage. Substantial records and communications that will determine the outcome of this case are in Defendants' exclusive possession. The appropriate vehicle for the credibility contest Defendants keep trying to have in their 12(b)(6) motion is in summary judgment, after the parties have exchanged evidence. This motion should be denied.

Respectfully submitted,

Dated: Apr. 1, 2026

*/s/ Adam D. Greivell*
Adam D. Greivell, Esquire
(MD Bar No. 28917)
**The Greivell Firm**
5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
adam@gfirm.us
Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that I reviewed the Court's CM/ECF system, and it reports that on April 1, 2026, an electronic copy of the foregoing Opposition to Motion to Dismiss will be served electronically by the Court's CM/ECF system on the following:

Tracey B. Eberling (tracey.eberling@steptoe-johnson.com)
Nicholas L. Fiske (nick.fiske@steptoe-johnson.com)

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

Joseph R. Lewis, III (joseph.lewis@steptoe-johnson.com)


/s/ *Adam D. Greivell*

Adam D. Greivell, Esquire

THE
GREIVELL
FIRM

5 Cornell Avenue
Hagerstown, MD 21742
(240) 528-8150
www.gfirm.us

Page 21 of 21