E-FILED; Garrett Circuit Court
Docket: 8/2/2023 8:55 AM; Submission: 8/2/2023 8:55 AM
Envelope: 13505851

## IN THE CIRCUIT COURT FOR GARRETT COUNTY, MARYLAND

GK PARANDHAMAIA and JAN
PARANDHAMAIA,

*Plaintiff and Counterclaim Defendant,*

v.

SMITH FARM HOLDINGS, LLC,

*Defendant and Counterclaim Plaintiff.*

CIVIL NUMBER: C-11-CV-23-000070

## COUNTERCLAIM

AND NOW comes Plaintiff, Smith Farm Holdings, LLC, by and through its undersigned counsel, hereby files the within Counterclaim, averring as follows:

## FACTUAL BACKGROUND

### A. HISTORY OF THE PROPERTIES AT ISSUE

1.    This action arises out of certain property related disputes between Plaintiffs and Counterclaim Defendants, GJ Parandhamaia ("GK") and Jan Parandhamaia ("Jan," and together with GK, the "Parandhamaias") and Defendant/Counterclaim Plaintiff, Smith Farm Holdings, LLC ("SFH").

2.    The Parandhamaias are the prior owners of the approximately 9.75-acre property and attendant house, garage and other improvements located at 2440 Bittinger Road, Swanton, Garrett County, Maryland 21561 ("2440 Bittinger") and the approximately 160-acre property and attendant house, barn and other improvements located at 2714 Bittinger Road, Swanton, Garrett County, Maryland 21561 ("2714 Bittinger," and collectively with 2440 Bittinger, the "Properties").[1]

1

D .

**E34**

**E35**

3.    The Properties are located adjacent to one another along Bittinger Road.

4.    On or about June 10, 2022, the Parandhamaias entered into that certain Residential Contract of Sale (the "Contract of Sale") and associated General Addendum (the "General Addendum," and together with the Contract of Sale, the "Sales Agreement") with Naples Properties, LLC ("Naples Properties"). A true and correct copy of the Sales Agreement is attached hereto as Exhibit A and incorporated herein.

5.    Naples Properties subsequently assigned its rights and obligations pursuant to the Sales Agreement to Defendant/Counterclaim Plaintiff, SFH, which was the ultimate purchaser of the Properties.

6.    SFH closed on the purchase of the Properties on or about September 16, 2022.

7.    There exists a small house and garage located on the approximately 9.75-acre 2440 Bittinger property.

8.    There exists an historic farmhouse and barn on the approximately 160-acre 2714 Bittinger property.

9.    Upon closing on the property, Steven Smith ("Smith"), the owner of SFH, and his family conducted extensive renovations to the farmhouse located on the 2714 Bittinger property and, upon completion of the renovations, began to occupy same.

10.    The General Addendum explains in relevant part that, following the sale of the Properties, the Parandhamaias "may lease the house on the 9.75 Acres + - for a period of 5 years for $1.00 per year." See Exhibit A.

---

[1] 2714 Bittinger actually consists of two contiguous parcels of land but for clarity's sake is referred to herein as a single piece of property.

2

11.    The General Addendum further sets forth specific rights and obligations that the Parandhamaias had with respect to accessing and/or utilizing the Properties as a whole (i.e. the full, combined approximately 166-acres comprising 2440 Bittinger and 2447 Bittinger).

12.    Specifically, the General Addendum states, in relevant part:

2.  Agreed Seller uses after settlement:

> a.    Seller may use the farmhouse with prior written notice and approval by the buyer.
>
> b.    Seller may access the pond for walking, riding 4 wheelers and side by sides on an annual basis beginning on the day of settlement and extending in one-year periods.
>
> c.    Seller may continue farming Buyer defined areas of the acreage on an annual basis that coincides with the growing and harvesting seasons. Seller shall have the right to harvest all 2022 plantings.
>
> d.    Seller will retain the right of way to use access farm roads on property for their tractors.
>
> e.    Seller may access to use land for hunting (with prior approval, no specific time frames needed)
>
> If Buyer wishes to end permission of the Sellers to continue use of any or all of the bulleted items listed above, Buyer will notify the seller in writing prior to September 1 of the year that they intend to discontinue extending permission by the Seller to use any or all of the bulleted items listed above.

*See* Exhibit A.

13.    Consistent with the General Addendum, SFH and the Parandhamaias entered into that certain Residential Lease Agreement dated June 21, 2022 (the "Lease"). A true and correct copy of the Lease is attached hereto as Exhibit B and incorporated herein.

14.    The Lease makes pellucidly clear that the Parandhamaias lease only the house and garage (defined as the "Premises" in the Lease) located at 2440 Bittinger. *Lease,* Section 1(a),

3

E36

Exhibit B. The Parandhamaias do not lease, and have no inherent right to access or utilize, any other portion of 2440 Bittinger, including the full 9.75 acreage of 2440 Bittinger.

15.     Further, the Lease makes clear that the Parandhamaias shall use the Premises "solely for residential purposes." *Lease,* Section 6, Exhibit B.

16.     Any ability of the Parandhamaias to access or utilize any portion of 2440 Bittinger aside from the house and the garage (i.e. the Premises) or to access or utilize any portion of 2714 Bittinger is governed by the terms of the General Addendum, which as set forth above, requires the explicit consent and approval of SFH. *See* Exhibit A.

**B. THE PARANDHAMAIAS IMPROPER USES OF THE PROPERTIES**

17.     Despite these clear provisions in the General Addendum and the Lease, the Parandhamaias have used, and are continuing to use, portions of 2440 Bittinger, aside from the house and the garage, to store farming equipment, a shipping container, building materials and other miscellaneous items (collectively, the "Equipment") beyond the Premises and, in fact, have altered, leveled and permanently damaged portions of the property without the consent of SFH to store same.

18.     Such storage of the Equipment and use of portions of 2440 Bittinger beyond the Premises (i.e. the house and the garage) are in violation of the Lease and General Addendum and constitute a trespass and nuisance on SFH's property.

19.     Further, and sometime after the sale of the Properties, the Parandhamaias plowed several acres of 2440 Bittinger and planted, what is believed to be, potatoes on the property (the "Potato Field").

4

E37

20.    These acts are beyond the scope of the Lease and General Addendum, were done without any notice to or authorization from SFH, constitute a trespass and nuisance on the Properties, and have caused permanent damage to same.

21.    On or about June 27, 2023, SFH notified the Parandhamaias that they were in violation of the terms of the Lease and the General Addendum, that they were trespassing on SFH's property, and demanded the immediate removal of the Equipment from SFH's Properties and that the Parandhamaias cease all farming activities on the Properties, including with respect to the Potato Field (the "June 27 Letter"). A true and correct copy of the June 27 Letter is attached hereto as Exhibit "C" and incorporated by reference.

22.    SFH further indicated in the June 27 Letter that it intended to hold the Parandhamaias liable for any and all injuries and damages that it sustained as a result of the Parandhamaias' unauthorized activities and trespasses, including for any and all damages to the Properties arising from same, and that if the Equipment was not removed, SFH would deem it abandoned. *Id.*

23.    Finally, SFH reiterated in the June 27 Letter that it had provided no prior approval or consent for any of the Parandhamaias' limited permissive uses of the Properties pursuant to the General Addendum and that, in accordance with its terms, no such uses would be approved or permitted going forward. *Id.*

24.    The Parandhamaias did not respond to the June 27 Letter and, instead, continued to violate the terms of the Lease and the General Addendum by, *inter alia*, continuing to access the Properties, continuing to store the Equipment on 2440 Bittinger, and continuing to farm the Potato Field.

5

E38

E I

25. Indeed, the Parandhamaias ratcheted up their aggressive conduct and on or about July 5, 2023, instituted criminal charges against Smith claiming that *he* was trespassing when he accessed the land owned by SFH and harassing the Parandhamaias by, *inter alia*, posting "No Trespassing" signs on the Properties, including on 2440 Bittinger. The criminal charges were filed at State of Maryland v. Steve Smith, Case No. D-122-CR-23-000274.

26. In connection with the criminal charges, and on or about July 5, 2023, Jan obtained a Temporary Peace Order against Smith directing that Smith could not access the Properties owned by his own company. The Temporary Peace Order was filed at Case No. D-122-CV-818665.

27. A hearing regarding the continuation of the Temporary Peace Order was subsequently held on July 12, 2023 and July 20, 2023.

28. The District Court correctly determined that the Parandhamaias leased only the house and the garage at 2440 Bittinger pursuant to the Lease, had no right to access or utilize the full, approximately 9.75-acres of the Property, and that Smith had not trespassed on any property of the Parandhamaias and that he had not harassed them.

29. Accordingly, and on or about July 21, 2023, the Temporary Peace Order was dissolved, no Permanent Peace Order was issued, and the criminal charges were dismissed.

30. However, rather than recognize the District Court's determination and cease their own unlawful conduct, the Parandhamaias continued to trespass on SFH's Properties, including by continuing to store the Equipment and farming the Potato Field.

31. Moreover, and on or about July 21, 2023, Jan stole a security camera belonging to SFH/Smith, just hours after she was told that she had no right to access the Properties beyond the house and garage at 2440 Bittinger.

6

E39

32.     Based upon information and belief, the Parandhamaias stole the camera in an effort to conceal the fact that they continue to farm the Properties, including the Potato Field, without permission as the camera faces the Potato Field.

33.     Notably, the camera was not the first theft that the Parandhamaias perpetrated upon SFH.

34.     Shortly after closing on the Properties, SFH discovered that the Parandhamaias had removed a significant amount of hardwood that had been stored in the barn located on the 2714 Bittinger Property (the "Wood").

35.     The Wood was a mix of old, reclaimed wood (including a significant amount of "wormy chestnut" wood) with a significant amount of value and was to remain on the premises pursuant to the parties' agreement.

36.     Indeed, when SFH entered the Properties following the closing, they discovered a group of men loading significant amounts of the Wood into a truck to remove it from the barn under the instruction and direction of GK.  SFH confronted the group and demanded that the Wood be put back.  GK acquiesced and, while the current loads of hardwood were returned to the barn, it was clear that a large amount of the Wood had already been removed from the barn and the property. This hardwood was never returned.

## C. THE PARANDHAMAIAS FAILED TO DISCLOSE PURPORTED ISSUES WITH THE WATER WELL AT 2440 BITTINGER

37.     In addition to the above issues, and in furtherance of their efforts to harass and antagonize SFH, the Parandhamaias instituted a complaint for rent escrow against SFH in the District Court of Garrett County at D-122-CV-22-007273 on or about October 24, 2022, asserting that the well that provides water to the Premises (i.e. the house and the garage) at 2440

7

E I

E40

Bittinger (the "Well") "is no longer able to provide reliable water" and needed to be drilled deeper.

38.     This rent escrow action was subsequently appealed to the Circuit Court and consolidated with the instant action filed by the Parandhamaias in which they assert a claim for damages arising out of the alleged issues with the Well.

39.     However, as is clear from above, the Parandhamaias were in sole possession of the Properties, including the Well, at all times prior to and up through the closing on the same on or about September 16, 2022, as discussed at further length herein, and were, based on information and belief, aware of issues with wells on and around the Properties in advance of the sale to SFH. These issues were not disclosed to SFH.

40.     Because of the fact that the Parandhamaias were the prior owners of the Properties and in a superior position of knowledge with respect to the condition of same, the Lease made clear that the Parandhamaias were leasing the Premises "as is" and that SFH would not be responsible for making any repairs to same. Specifically, it states, in relevant part:

> **5. Acceptance of Property.**
>
> a.  Delivered in compliance with law. The Landlord covenants that the Premises and all common areas are delivered in a clean, safe, and sanitary condition, free of rodents and vermin, in a habitable condition, and in complete compliance with all applicable law. **The Tenant acknowledges that he/she has been given an opportunity to examine the Premises, that he/she has examined the Premises and found them to be in satisfactory condition. information only, and the Landlord is not be obligated to make any repairs.**
>
> **7. Maintenance/Utilities**
>
> a.  The Tenant shall maintain the Premises in a clean, sanitary, and safe condition. **The Tenant is responsible for all replacement of or repairs to any items damaged or destroyed by Tenant during Tenant's occupancy with regard to structural elements of the**

8

**E41**

**E42**

**house and garage, and electrical, plumbing and heating systems.**
The Tenant shall pay utility charges and make all required deposits.

**11. Hold Harmless.**

    a.  The Tenant shall indemnify and save the Landlord harmless from any and all loss, claim or damage by reason of any accident, injury, or damage to any person or property occurring anywhere on or about the leased premises.

**16. Surrender of Premises.**

    a.  The Tenant shall, upon termination of this Lease turn the property over to Landlord in the same condition as it was at the time of the commencement of the lease, normal wear and tear expected, and is responsible for all damages to the premises which occur during said lease term. **The Landlord has no obligation to make any repairs to the Premises whatsoever, for any reason.**

*See* Lease, Exhibit B (emphasis added).

41.    Accordingly, SFH has no obligation to repair the Well to the extent there is any issue with it in the first instance, which is specifically denied.

42.    Moreover, and prior to selling the Properties to SFH, the Parandhamaias sold another piece of property located at 2438 Bittinger Road, Swanton, Garrett County, Maryland 21561 ("2438 Bittinger") to another purchaser on or about November 1, 2021.

43.    2438 Bittinger is directly adjacent to 2440 Bittinger and, like 2440 Bittinger, includes a dwelling with water supplied by a well located on the property.

44.    Given the proximity of the properties to one another, it is believed and therefor averred, that the same water source feeds the well located on 2438 Bittinger and the Well located on 2440 Bittinger.

45.    Based upon information and belief, the purchasers of 2438 Bittinger began to experience issues with the water supply from the well located on their property in or about May

**E42**

2022 and, at or about that same time, the well needed to be drilled deeper to provide an adequate water supply to the home located on the property.

46.    Based upon information and belief, the purchasers of 2438 Bittinger made the Parandhamaias aware of this issue at or about the time it occurred and the Parandhamaias either paid for all or a portion of the work required to service the well.

47.    As such, the Parandhamaias were aware of issues with the wells servicing the Properties and adjacent properties prior to the sale of the Properties to SFH and failed to disclose same.

48.    Accordingly, the Parandhamaias are solely responsible for any costs and/or damages arising out of the purported issues with the Well.

49.    The Parandhamaias conduct as set forth herein was designed to, and indeed did, intentionally disturb SFH's quiet and peaceful occupation and enjoyment of the Properties. This conduct was done intentionally, with an intent to injure and evil motive and ill will.

## COUNT I – BREACH OF CONTRACT

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

50.    SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

51.    The Sales Agreement and Lease are valid and enforceable agreements which detailed the Parandhamaias' rights and obligations with respect to the Properties.

52.    At all times relevant hereto, SFH complied with its obligations under the Sales Agreement and the Lease.

53.    The Parandhamaias' breaches of the Sales Agreement and the Lease include, but are not limited to, the following:

10

E43

a. Accessing and utilizing portions of 2440 Bittinger which they did not lease or did not have access to pursuant to the Lease and/or the Sales Agreement;

b. Accessing and utilizing portions of 2714 Bittinger and/or the Sales Agreement which they were not authorized to access and/or use pursuant to the Sales Agreement;

c. Storing the Equipment on and farming the Properties, including planting and farming the Potato Field;

d. Stealing a camera from the Properties;

e. Stealing the Wood from the Properties;

f. Failing to disclose the purported issue with the Well; and

g. Breaching the duty of good faith and fair dealing inherent in the Lease and the Sales Agreement.

54. As a direct and proximate result of these breaches of the Sales Agreement and the Lease by the Parandhamaias, SFH suffered injuries and losses and is entitled to damages, including but not limited to the following:

a. Compensation for the physical damage to the Properties arising out of the altering and leveling of the Properties in connection with the storage of the Equipment, and any cost to remediate same;

b. Storage fees associated with the Equipment;

c. Compensation for the physical damage to the Properties arising out of the farming of the Properties, including those in connection with the planting and farming of the Potato Field, and any cost to remediate same;

d. Damages arising out of the loss of use and value of the Properties;

e. Lost revenues associated with the farming of the Properties;

f. The value of the crops planted in the Potato Field;

g. Loss of the value of the stolen camera;

h. Loss of the value of the Wood;

11

**E44**

E

i.      Loss of value of the Property;

j.      The cost to repair the well;

k.      Attorneys' fees, expenses and costs

l.      Interest; and

m.      Such other damages and losses that are recoverable in contract, equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit and such other relief as this Court may deem just and proper.

## COUNT II – TRESPASS

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

55. SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

56. The Parandhamaias intentionally entered and continue to enter portions of the Properties beyond the Premises (i.e. the house and the garage at 2440 Bittinger).

57. As described above, SFH is the sole and rightful owner of the Properties in their entirety.

58. The Parandhamaias' intentional entries on the Properties have been done without any right, privilege, license, consent, or other justification for doing so.

59. The Parandhamaias are therefore trespassing on SFH's Properties.

60. As a result of the Parandhamaias trespassing, SFH has suffered actual and compensable injuries and losses and is entitled to damages, including but not limited to:

12

**E45**

F /

a.   Compensation for the physical damage to the Properties arising out of the altering and leveling of the Properties in connection with the storage of the Equipment, and any cost to remediate same;

b.   Storage fees associated with the Equipment;

c.   Compensation for the physical damage to the Properties arising out of the farming of the Properties, including those in connection with the planting and farming of the Potato Field, and any cost to remediate same;

d.   Damages arising out of the loss of use and value of the Properties;

e.   Lost revenues associated with the farming of the Properties;

f.   The value of the crops planted in the Potato Field;

g.   Loss of the value of the stolen camera;

h.   Loss of the value of the Wood;

i.   Punitive damages;

j.   Attorneys' fees, expenses and costs

k.   Interest; and

l.   Such other damages and losses that are recoverable in equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit punitive damages, and such other relief as this Court may deem just and proper.

## COUNT III – NUISANCE

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

61.   SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

E46

F I

62.     The Parandhamaias have committed a non-trespassory invasion on SFH's interest in the private use and enjoyment of its land, namely the Properties, by placing the Equipment on the Properties and farming the land, including the Potato Field.

63.     The Parandhamaias' non-trespassory invasion has injured SFH in that the Equipment and the farming interfere with SFH's use and enjoyment of the Properties and/or has violated applicable municipal requirements or ordinances.

64.     Accordingly, the Parandhamaias' non-trespassory placement of the Equipment on and the farming of the Properties constitutes a private nuisance.

65.     As a result of the Parandhamaias' nuisance, SFH has suffered actual and compensable injuries and losses and is entitled to damages, including but not limited to:

   a.     Compensation for the physical damage to the Properties arising out of the altering and leveling of the Properties in connection with the storage of the Equipment, and any cost to remediate same;

   b.     Storage fees associated with the Equipment;

   c.     Compensation for the physical damage to the Properties arising out of the farming of the Properties, including those in connection with the planting and farming of the Potato Field, and any cost to remediate same;

   d.     Damages arising out of the loss of use and value of the Properties;

   e.     Lost revenues associated with the farming of the Properties;

   f.     The value of the crops planted in the Potato Field;

   g.     Punitive damages;

   h.     Attorneys' fees, expenses and costs

   i.     Interest; and

   j.     Such other damages and losses that are recoverable in equity or at law.

14

E47

F (

E48

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit punitive damages, and such other relief as this Court may deem just and proper.

## COUNT IV – UNJUST ENRICHMENT

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

66.     SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

67.     Despite entering into a Lease for the use of only the garage and house on 2440 Bittinger, the Parandhamaias have received the benefit of improperly occupying the entire nearly 10-acres of the property and the entirety of 2714 Bittinger by, *inter alia,* storing the Equipment, farming the properties, including the Potato Field, and acquiring the Wood and the camera.

68.     The Parandhamaias have received a benefit and have been enriched by utilizing the Properties and taking the Wood and camera without providing just compensation to SFH.

69.     Therefore, it would be inequitable for the Parandhamaias to retain such benefits without commensurate payment to SFH.

70.     As a direct and proximate result of this conduct by the Parandhamaias, SFH suffered injuries and losses and is entitled to damages, including but not limited to the following:

   a.     Compensation for the physical damage to the Properties arising out of the altering and leveling of the Properties in connection with the storage of the Equipment, and any cost to remediate same;

   b.     Storage fees associated with the Equipment;

   c.     Rent for the use of the entire Properties;

15

F I

d.   Compensation for the physical damage to the Properties arising out of the farming of the Properties, including those in connection with the planting and farming of the Potato Field, and any cost to remediate same;

e.   Damages arising out of the loss of use and value of the Properties;

f.   Lost revenues associated with the farming of the Properties;

g.   The value of the crops planted in the Potato Field;

h.   Loss of the value of the stolen camera;

i.   Loss of the value of the Wood;

j.   Punitive damages;

k.   Attorneys' fees, expenses and costs

l.   Interest; and

m.   Such other damages and losses that are recoverable in equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT V – CONVERSION

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

71.   SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

72.   Despite entering into a Lease for the use of only the garage and house on 2440 Bittinger, the Parandhamaias have exceeded the scope of same and the uses permitted by the Sales Agreement and used the entire nearly 10-acres of the property and the entirety of 2714

16

**E49**

F I

E50

Bittinger by, *inter alia*, storing the Equipment, farming the properties, including the Potato Field, and acquiring the Wood and the camera.

73. The Parandhamaias undertook such actions without the approval or consent of SFH.

74. The Parandhamaias have deprived SFH of the right to use its own Properties through such uses and such uses constitute a conversion of their Properties, the Wood and the camera.

75. As a direct and proximate result of this conduct by the Parandhamaias, SFH suffered injuries and losses and is entitled to damages, including but not limited to the following:

    a.    Compensation for the physical damage to the Properties arising out of the altering and leveling of the Properties in connection with the storage of the Equipment, and any cost to remediate same;

    b.    Storage fees associated with the Equipment;

    c.    Rent for the use of the entire Properties;

    d.    Compensation for the physical damage to the Properties arising out of the farming of the Properties, including those in connection with the planting and farming of the Potato Field, and any cost to remediate same;

    e.    Damages arising out of the loss of the use and value of the Properties;

    f.    Lost revenues associated with the farming of the Properties;

    g.    The value of the crops planted in the Potato Field;

    h.    Loss of the value of the stolen camera;

    i.    Loss of the value of the Wood;

    j.    Punitive damages;

    k.    Attorneys' fees, expenses and costs

    l.    Interest; and

F |

m.    Such other damages and losses that are recoverable in equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT VI – FAILURE TO DISCLOSE

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

76.    SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

77.    Maryland law, including Section 10-702 of the Maryland Real Property Code, requires that sellers of real property disclose any issues with the property to potential purchasers, including any latent defects.

78.    As set forth above, and to the extent there are any issues with the Well, which is denied, the Parandhamaias knew or should have known about same prior to the sale of the Properties and failed to disclose same to SFH.

79.    Further, and to the extent there are any issues with the Well, which is denied, the Parandhamaias knew or should have known that SFH had no knowledge of such issues and that they should have disclosed same.

80.    As a direct and proximate result of this conduct by the Parandhamaias, SFH suffered injuries and losses and is entitled to damages, including but not limited to the following:

a.    The cost required to make the Well usable for its intended purposes;

b.    Loss of use and value of the Properties;

c.    Punitive damages;

18

**E51**

F (

     d.     Attorneys' fees, expenses and costs

     e.     Interest; and

     f.     Such other damages and losses that are recoverable in equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT VII – FRAUD

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

81.     SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

82.     As set forth above, and to the extent there are any issues with the Well, which is denied, the Parandhamaias knew about same prior to the sale of the Properties and intentionally failed to disclose same to SFH.

83.     Further, and to the extent there are any issues with the Well, which is denied, the Parandhamaias knew that SFH had no knowledge of such issues and that they should have disclosed same.

84.     Nevertheless, the Parandhamaias intentionally failed to disclose any purported issues with the Well to SFH prior to the sale of the Properties knowing that SFH would rely on this intentional failure in purchasing the Properties.

85.     SFH justifiably relied on the fact that there were no issues with the Well in entering into both the Sales Agreement and the Lease.

E52

F I

86.  As a direct and proximate result of this conduct by the Parandhamaias, SFH suffered injuries and losses and is entitled to damages, including but not limited to the following:

    a.  The cost required to make the Well usable for its intended purposes;

    b.  Loss of use and value of the Properties;

    c.  Punitive damages;

    d.  Attorneys' fees, expenses and costs

    e.  Interest; and

    f.  Such other damages and losses that are recoverable in equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

### COUNT VIII – NEGLIGENT MISREPRESNTATION
### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

87.  SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

88.  As set forth above, and to the extent there are any issues with the Well, which is denied, the Parandhamaias knew or should have known about same prior to the sale of the Properties and negligently failed to disclose same to SFH.

89.  Further, and to the extent there are any issues with the Well, which is denied, the Parandhamaias knew or should have known that SFH had no knowledge of such issues and that they should have disclosed same.

20

**E53**

F I

90. Nevertheless, the Parandhamaias failed to disclose any purported issues with the Well to SFH prior to the sale of the Properties knowing that SFH would rely on this failure in purchasing the Properties.

91. SFH justifiably relied on the fact that there were no issues with the Well in entering into both the Sales Agreement and the Lease.

92. As a direct and proximate result of this conduct by the Parandhamaias, SFH suffered injuries and losses and is entitled to damages, including but not limited to the following:

    a.    The cost required to make the Well usable for its intended purposes;

    b.    Loss of use and value of the Properties;

    c.    Punitive damages;

    d.    Attorneys' fees, expenses and costs

    e.    Interest; and

    f.    Such other damages and losses that are recoverable in equity or at law.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias in an amount in excess of the jurisdictional limits, together with attorney's fees, costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT IX – DECLARATORY JUDGMENT

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

93. SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

94. SFH is the owner of the Properties, including the portion of 2440 Bittinger leased to the Parandhamaias in accordance with the terms of the Lease.

21

**E54**

F

95.    The Lease clearly sets forth that the Parandhamaias are leasing only the house and the garage (i.e. the Premises) located on the 9.75-acre 2440 Bittinger property and "solely for residential purposes."

96.    Further, the General Addendum provides the Parandhamaias with limited rights to utilize and/or access the Properties, subject to the consent of SFH.

97.    SFH has never provided consent to the Parandhamaias for such uses and indeed has revoked any such contingent rights to use the Properties in accordance with the General Addendum.

98.    Nevertheless, the Parandhamaias continue to assert that they are entitled to access and utilize the entirety of the approximately 156-acre Properties and that the Lease extends to the entire 9.75-acre 2440 Bittinger property, and not just to the house and garage, as set forth herein.

99.    As such, an actual and justiciable controversy exists between the parties with respect to the Parandhamaias' rights and obligations under the Lease and the General Addendum.

100.    The entry of a declaratory judgment by this Honorable Court will terminate such controversy and clearly delineate the rights of the parties.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias and enter an order declaring:

a.    The Lease pertains only to the house and garage at 2440 Bittinger and the Parandhamaias may not access any other portion of the Properties pursuant to the terms of the Lease;

b.    The Lease allows the Parandhamaias to utilize the house and garage at 2440 Bittinger for "solely residential purposes," which does not include the storage of the Equipment or farming of the property, including the Potato Field;

c.    The Parandhamaias have accessed and utilized the Properties for purposes beyond the scope of the Lease and without the consent or permission of SFH as required by the General Addendum;

22

**E55**

E56

> d.  The Parandhamaias have breached the terms of the Lease and the General Addendum through their unauthorized access and use of the Properties;
>
> e.  The Parandhamaias have abandoned the Equipment; and

Awarding such other relief as this Court deems just and proper, including attorney's fees and costs of suit.

**COUNT X – EJECTMENT**

**SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA**

101.  SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

102.  SFH is the owner of the Properties, including the portion of 2440 Bittinger leased to the Parandhamaias in accordance with the terms of the lease.

103.  The Lease clearly sets forth that the Parandhamaias are leasing only the house and the garage (i.e. the Premises) located on the 9.75-acre 2440 Bittinger property and "solely for residential purposes."

104.  Further, the General Addendum provides the Parandhamaias with limited rights to utilize and/or access the Properties, subject to the consent of SFH.

105.  SFH has never provided consent to the Parandhamaias for such uses and indeed has revoked any such contingent rights to use the Properties in accordance with the General Addendum.

106.  Nevertheless, the Parandhamaias continue to assert that they are entitled to access and utilize the entirety of the approximately 160-acre Properties and that the Lease extends to the entire 9.75-acre 2440 Bittinger property, and not just to the house and garage, as set forth herein.

G I

107. Accordingly, SFH is entitled to eject the Parandhamaias from those portions of the Properties to which it has no right of access or use, including any portion of the Properties beyond the house and garage at the 2440 Bittinger property.

108. Additionally and/or alternatively, and as set forth at further herein, the Parandhamaias have breached the terms of the Lease and SFH is entitled to terminate the Lease and recover possession of the Premises.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias, ejecting the Parandhamaias from all areas of the Properties besides the house and garage at the 2440 Bittinger property and/or alternatively from all areas of the Properties, including the house and garage at the 2440 Bittinger property, and award such furth relief as the Court deems just and proper, including attorney's fees and costs of suit.

## COUNT XI – PERMANENT INJUNCTION

### SFH v. GK PARANDHAMAIA and JAN PARANDHAMAIA

109. SFH incorporates by reference all preceding paragraphs of this Counterclaim as if set forth herein at length.

110. SFH has a clear right to relief because the Parandhamaias continue to trespass and nuisance its Properties without any right, privilege, license, consent, or other justification for doing so.

111. As set forth herein, the Parandhamaias have placed the Equipment on and planted the Potato Field and otherwise continue to interfere with SFH's private right to the peaceful use and enjoyment of its Properties and/or violated municipal requirements or ordinances.

E57

E58

112.    Greater injury would result from refusing an injunction in SFH's favor than from granting it, and concomitantly, issuance of an injunction in SFH's favor will not substantially harm other interested parties.

113.    Indeed, no injury would result from issuance of an injunction in SFH's favor because SFH is the only party who has any right to use the entirety of the Properties, and specifically those portions of the Properties aside from the Premises (i.e. the house and garage located on 2440 Bittinger), thus barring the Parandhamaias from trespassing on and/or interfering with SFH's Properties would cause no harm and ensure compliance with this Honorable Court's directives.

114.    The issuance of a permanent injunction would prevent SFH from suffering injuries that cannot be adequately compensated by damages, as the Parandhamaias are trespassing upon and interfering with SFH's use and enjoyment of the Properties.

WHEREFORE, SFH respectfully requests that this Honorable Court enter judgment in its favor and against the Parandhamaias and enter an order permanently enjoining the Parandhamaias from:

    a.    Accessing any portion of the Properties beyond the house and garage at 2440 Bittinger;

    b.    Utilizing the house and garage at 2440 Bittinger (i.e. the Premises) for anything other than "solely residential purposes;" and

    c.    Storing the Equipment on or farming of the Properties, including the Potato Field.

Awarding such other relief as this Court deems just and proper, including attorney's fees and costs of suit.

Dated July 31, 2023,                                    Respectfully submitted,

Alan L. Winik, Esquire
CPF # 751201349
The Law Office of Alan L. Winik, LLC
19 North Court Street
Frederick, Maryland 21701
alan@winiklaw.com

*Counsel for Defendant and Counterclaim
Plaintiff, Smith Farm Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of _____ 2023, a copy of the foregoing Counterclaim was electronically filed through MDEC and emailed to Arnold Philips, Esq.,afplaw@gmail.com, with a hard copy mailed first class, postage prepaid to Arnold Phillips, Esq., 25254B, Garrett Highway, McHenry, Maryland, AIS #941250051.

Alan :L. Winik

**E59**

G l