Page 34

A.  It was weeks before the closing, yes, sir.

Q.  And in your inspection, what, if anything did you notice respecting whether or not the property was occupied?

A.  Uh, the same evidence of somebody living there, the, you know, deodorant on a shelf and towels and that sort of thing.

Q.  Anything --

A.  Dishes in the sink and are still there, by the way, different ones, but --

MR. WINIK:  Okay.  Thank you.  Your Honor I would move for the admission of this document.

MR. GREIVELL:  No objection.

THE COURT:  Admitted.

MR. WINIK:  Madam Clerk, if you could publish that to His Honor after you've marked it.  Thank you.

            (Home Inspection Report
             marked as Defendant's
             Exhibit No. 8 into evidence.)

THE COURT:  The home that is being inspected is -- is that 2440 or 2714?

Page 35

THE WITNESS:  Two four four zero, Your Honor.

THE COURT:  The house that you intended to live in?

THE WITNESS:  No, sir.

MR. WINIK:  The house that the Parandhamaias are currently living in.

THE COURT:  Got it.

THE WITNESS:  It's a bit confusing.

THE COURT:  And that's pictured on here.

MR. WINIK:  Yes, sir.

THE WITNESS:  Yes.

THE COURT:  It's 2440.

THE WITNESS:  The house in question through this entire case is always that same house in all cases.

THE COURT:  Got it.

BY MR. WINIK:

Q.  Mr. Smith --

A.  Yes, sir.

Q.  -- during the course of the negotiations for the sale of this real estate, was there ever a

Page 36

discussion about a reduction in the purchase price related to your decision to let the Parandhamaias rent the house they're living in for a buck a year for five years?

A.  No, sir.

MR. GREIVELL:  Objection to relevance.

THE COURT:  Overruled.

BY MR. WINIK:

Q.  Have you reviewed the documents respecting the ones in Exhibit 3, Plaintiffs' Exhibit 3 and the other documents respecting this transaction, and have you seen any document at all that have any language respecting a reduction in the price as a result of the decision to rent the Parandhamaias the house they're living in?

A.  No, sir.

Q.  Now, the original -- we heard testimony from them that they originally, uh, the asking price was, I think, $1.45 million and, ultimately, that was reduced to $1.3 million.  Is that correct?

A.  Sounds correct.

Q.  And why did you ask for a reduction in the

Page 37

purchase price?

A.  The reduction in the purchase price, so we had made an offer.  They accepted the offer.  The price was reduced because I actually discovered that the acreage that they had publicized according to the property deed to the state and the county were wrong and there was 10 acres short.

Q.  And that was based on a review of the survey that was recorded among the land records of Garrett County?

A.  Yeah, I just figured it out myself.  It was easy to figure out online.

Q.  All right.  And is it your belief that --

A.  They said there were 10 acres less, and I just said, well, obviously, I'm not buying 180 acres, it's 170 acres and so there should be a reduction, and they agreed.

Q.  And that was the discussion about the reduction in price?

A.  I even provided the math and the basis of it, yes.

Q.  Okay.  Thank you.  Now, the lease for the

E163