Page 122

as far as I would think, equitably.

MR. PHILLIPS: Okay. Fair enough, Your Honor. We're fine with that. You know, so the next part is on either TRO or preliminary or final, whether the moving party will suffer irreparable injury unless the order is granted and a determination that the order's not contrary to the public interest. So what irreparable harm has the, you know, the Defendants put on there? You know, we don't have anything --

THE COURT: What can that have to do with the TRO?

MR. PHILLIPS: Yeah, and that goes with the injunction, too. What is the final harm that is going to be, you know, put in there? What is the damages that Mr. Smith is going to have with this? And what -- and if you do grant that, then how do we determine the boundaries of the lease? Because --

THE COURT: Well, traditionally, you -- the Common Law, my recollection is, and I'm sure I'll be educated by Counsel -- you're looking at the curtilage, which could include fences if it's a fenced yard, does not include open fields if there is no

Page 123

fence. I mean there are factors that are involved to enlighten you as to what the curtilage may be, but it occurs to me here that -- I understand you're saying you're entitled 9.75 acres.

But the answer, I guess, to your question, is if there wasn't a reference to that, what would be meant by 2440 Bittinger Road would be the house, associated buildings, and the curtilage.

MR. PHILLIPS: Uh-huh.

THE COURT: Correct?

MR. PHILLIPS: Yes. Yes, I would --

THE COURT: Okay. So, when you're asking what it is, that's really not for the Court to determine necessarily, but there is a way because there -- as I understood Mr. Smith, he offered to make that curtilage a 50-foot diameter, as I understood.

MR. FISKE: A hundred-foot diameter, 50-foot radius. Radius is the shorter one.

THE COURT: You can walk out 50 feet in any direction. Would that be --

MR. FISKE: Correct.

THE COURT: Okay. So that's kind of --

Page 124

that's one thing. I understand that's not what you want the Court to do, but that would be an approach to this property.

MR. PHILLIPS: Yeah.

THE COURT: So continue.

MR. PHILLIPS: It would require the Court to rewrite the lease using the Common Law and redefine --

THE COURT: Well, it would require the Court to interpret, uh, the parties' rights --

MR. PHILLIPS: Yes.

THE COURT: -- under the lease.

MR. PHILLIPS: And, uh, well, as I'm saying, there's nothing in the lease that limits the curtilage or makes any mention about this.

So, you know, the responsibility as far as the maintenance speaks a lot to this issue because from day one, Mr. Parandhamaia was maintaining this entire piece of property, 9.75 acres. Just to put -- to clarify some of the addendum there, some of the trails and the things that are being mentioned in there, apply to the use of Parandhamaias of the 160-acre farm which they also sold. They were

Page 125

hunting. They were able to use their trails on that, so we're not limiting this within the 2440, we're actually expanding it outside 2440 to the larger piece of property that they had rights.

And, uh, if you paid close attention to the addendum that's in there and the addendum states that -- and I'm paraphrasing here from my memory. The addendum states that to, uh, to end that, to cease permission, you need to give notice by September 1st of the year, and if you read through that, it appears that that September 1st of the year goes through to next year, you know. So, when they give a notice in July 1 of 2023, that notice does not become effective, does not trespass to remove anything until after September 1st.

So, and as we look through that, that document, it also goes in and talks about how this is to coincide with the planting seasons, and that would actually extend it a little bit long, the planting and harvesting seasons, because the planting and harvesting season comes in.

Um, my argument is that document should not

E185