# EXHIBIT B

Page 27

farming easement? It was already farmland; is that correct?

A.   It was, yes.

Q.   So there was no fraud. You didn't need to sue them if you were going to leave it as farmland?

A.   It was still -- it was still fraud because they didn't let us know.

Q.   What was the resolution of that lawsuit?

A.   Um --

Q.   You can answer.

A.   Well, um, I'm not quite sure. I don't understand the question. I don't know what you're asking me.

Q.   I think the lawsuit was filed in 2019 and was ultimately settled in 2020. Is that right?

A.   I think so, yes, sir.

Q.   What happened? How did that case get resolved?

A.   Um, through mediation.

Q.   Okay. What was the end result? Did your brother and sister-in-law pay you money in connection with your claims?

Page 28

A.   No.

Q.   So then how did you resolve it? You just let the case go?

A.   I --

MR. PHILLIPS:  Objection; I believe this is a confidential settlement and, also, I don't believe it's relevant to the issue of the temporary restraining order.

THE COURT:  Well, I've given you some leeway to help me with some background here, but I'm not sure how I see the relevance to this particular issue.

MR. FISKE:  It's absolutely, it's relevant, Your Honor, to how the property ended up on the market and my clients purchased it and then, ultimately, the Parandhamaias' unwillingness to want to go through with the sale at the time. They were upset about the circumstances on which they purchased the property.

THE COURT:  Well, I'll overrule the objection. Certainly, the witness can indicate that it was resolved by way of mediation without

Page 29

disclosing the terms of the settlement.

MR. FISKE:  That's fair if they're representing that it's a confidential settlement, you know, I think we would be entitled to that at some point, but that's probably an issue for another day, Your Honor.

THE COURT:  So, revisiting the question, do you know what happened to this lawsuit? Did you dismiss it? If you know?

THE WITNESS:  I really don't know. It's mediation, so I'm not sure how that's classified.

THE COURT:  All right.

MR. FISKE:  But the lawsuit no longer exists. Is that fair?

THE WITNESS:  That's -- yes.

BY MR. FISKE:

Q.   And then approximately a year after the lawsuit was resolved, you put both parcels, 2440 Bittinger and 2714 Bittinger on the market. Correct?

A.   I believe, um, we put -- how did we do that? We put --

Q.   As I understand -- oh, I'm sorry.

Page 30

A.   We put the 2438 on the market, um, first. Um, I'm not real sure how to answer it. I don't remember exactly what we did.

Q.   Okay. Let me rephrase it. Within a year --

A.   We started with 2438.

Q.   -- or so of when the lawsuit against your brother and sister-in-law were -- was resolved in mediation, you put 2378, the bottom parcel --

A.   Twenty-four thirty-eight.

Q.   -- 2438, excuse me, for sale, and then within a year of that you put the other two parcels up for sale. Is that fair?

A.   We put the farm up for sale.

Q.   The farm?

A.   The 2714 Bittinger Road.

Q.   The 160-acre parcel?

A.   Yes.

Q.   You did not put 2440 up for sale?

A.   We did all three at once, and then we decided once we sold that, we did not put 2440 back on the market.

Q.   Then how is it that it ultimately became

E81

Page 31

sold to Smith Farm Holdings?

A. They wanted it, and the agents, I guess, talked about it and we -- we agreed.

Q. So 2440 was not on the market on its own?

A. No, sir.

Q. That became sold as part of the deal with 2714, the 160-acre parcel.

A. We sold that parcel of property at the same time, excuse me, at the same time we sold the 2714 Bittinger Road.

Q. And that would have been in July of '22; correct?

A. That's correct.

Q. And about a year before that in October of '21, you would have sold, um, the house and the parcel below at 2438; correct?

A. That's correct.

Q. Fair to say you did not want to sell 2440?

A. That's correct.

Q. Okay. And the way you characterize it as the agents sorted that out, and you just went along with it?

Page 32

A. They presented us that they wanted to buy the property. They wanted to buy that house as well.

Q. They being Smith Farm Holdings?

A. That's correct.

Q. Okay. And you agreed to that?

A. We did.

Q. And you received 1.3 million dollars for 2440 and 2714 Bittinger; correct?

A. That's correct.

Q. Okay. And as of July 21st, '22 you and your husband no longer owned either of those parcels; correct?

A. That's correct.

Q. And the year before 2438 had sold, that house at the bottom, which is a smaller parcel, I think it's only about an acre? Is that fair?

A. I think it's about four.

Q. Four?

A. Something like that.

Q. You'd know better than me. That's fine. You sold that to a couple known as the Mancusis; correct?

Page 33

A. That's correct.

Q. Okay. Um, I think in your testimony you stated that you and your husband had not lived at 2440 Bittinger, the house in the middle since 2016. Is that your testimony?

A. That's correct.

Q. Were you present at a inspection in connection with Smith Farm Holdings' purchase of these two parcels in June of '21 -- or '22, excuse me?

A. Um, I don't know if I was there.

MR. FISKE: I'm going to mark this as Exhibit D-19.

(Inspection Report marked as Defendant's Exhibit No. 2/ D-19 for identification.)

MR. FISKE: Your Honor, may I provide Counsel -- pardon me. Your Honor, may I approach?

THE COURT: Yes.

MR. FISKE: Here's a copy for Your Honor.

THE COURT: Thank you.

BY MR. FISKE:

Q. Mrs. Parandhamaia, have you seen this

Page 34

Inspection Report before?

A. Uh, during all of this, yes.

Q. All of this meaning the sale of the two properties?

A. The -- the clos -- all of this paperwork that we're looking over, I have seen this.

Q. Okay. And if you look at the cover page, it says 2440 Bittinger Road. This is the home that you and your husband currently reside in; correct?

A. That's correct.

Q. And this is the home that we're talking about that allegedly has the issues with the water.

A. Correct.

Q. Just so we're all clear.

A. Yes.

Q. If you open it up on the, I believe, it's actually, the third page of the document up in the right corner it says page 2 of 25. Do you see that?

A. Yes.

Q. And if you look down at the bottom, it says Conditions. It says Others Present: Seller, and it says Property Occupied, and then the inspection says

E82

Page 123

THE COURT:  Sustained.

MR. FISKE:  That's fine.

BY MR. FISKE:

Q.  You regret selling the property to Smith Farm Holdings; correct?

A.  The way things are going presently, it's not a very nice neighbor.

Q.  But prior to that, you were not excited about the sale; correct?

A.  Um, it's got a lot of emotional ties, but --

Q.  Sure.  It's been your family home for generations.  You didn't want to sell the forever home that you sold to the Mancusis; right?

A.  I'm not sure, you know, where you're going with this.  Um --

Q.  You can -- it's a yes or no question.  You did not want to sell that home.

MR. GREIVELL:  Objection.  None of it's relevant.

THE COURT:  Uh --

MR. FISKE:  It's absolutely relevant to the situation.

Page 124

THE COURT:  All right.  I'll give you some leeway.  I'm not sure how I see this other home sale as relevant to the dispute here, but go ahead, you can answer that, ma'am.

BY MR. FISKE:

Q.  You regret selling that home to Mancusis, or at least it was difficult for you?

A.  Um, you know, we, like I said, we could not maintain all three properties, so we had to -- we had to sell some of them.

Q.  But then you sold all of them?

A.  In the end, yes, we ended up selling all of them.

Q.  And you did not want to sell 2440 Bittinger, which was your childhood home; correct?

A.  We planned to keep one of them.

Q.  But in the end you did not?

A.  In the end we did not.

MR. FISKE:  Nothing further.

THE COURT:  Re-direct?

MR. FISKE:  I'm sorry, I would move for the admission of, I think it was D, what we marked as

Page 125

D-5, my letter, to the Parandhamaias.

MR. WINIK:  Court 5.

MR. FISKE:  Court 5.

THE COURT:  All right, let's -- Madam Clerk, do you have these exhibits, so I know what he's talking about and there's photographs, I believe?

(Letter 6-16-2023 marked as Defendant's Exhibit No. 5 into evidence.)

THE COURT:  Okay, re-direct.

MR. PHILLIPS:  Let's see, I'll try to go in order here a little bit and be fairly brief on it.

THE COURT:  Keep your voice up, Mr. Phillips.

MR. PHILLIPS:  Okay.

**RE-DIRECT EXAMINATION**

BY MR. PHILLIPS:

Q.  Um, now, let's see, you did not provide any -- provide Mr. Smith or Smith Farm Holdings or -- what was the other company's name that was involved in this?

Page 126

A.  Naples Properties.

Q.  Naples Properties, okay.  You didn't provide Naples Properties with any notification or anything regarding the Mancusi well on the property.  Is that correct?

A.  That's correct.

Q.  Okay.  And, um, you know, did you, um, did you feel a need to disclose that?

A.  No, sir.

Q.  Do you believe that the Mancusi well was, you know, directly affecting the well at 2440 Bittinger Road?

A.  I wouldn't know, but I wouldn't know.

Q.  Yeah.  Is there a difference in the elevations between 2440 and the Mancusi property?

A.  Maybe a little bit.

Q.  Is the Mancusi property up a little higher?

MR. FISKE:  Objection, Your Honor; leading.

THE COURT:  Sustained.

BY MR. PHILLIPS:

Q.  Um, is -- what's the relative elevations that you know of between the house, the farmhouse at

E105