**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| **GK PARANDHAMAIA, *et al.*** | * | |
| ***Plaintiffs/Counter-Defendants*,** | * | |
| **v.** | * | **Case No.: 1:25-cv-02691-SAG** |
| **SMITH FARM HOLDINGS, LLC, *et al.*** | * | |
| ***Defendants/Counter-Plaintiffs*.** | * | |

* * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM**

Date: August 17, 2026 Respectfully submitted,

*/s/ Jonathan P. Kagan*
Jonathan P. Kagan (D. Md. Bar No. 23181)
kagan@kaganstern.com

*/s/ Michael J. Marinello*
Michael J. Marinello (D. Md. Bar No. 18490)
marinello@kaganstern.com

*/s/ Veronica J. Mina*
Veronica J. Mina (D. Md. Bar No. 30472)
mina@kaganstern.com
KAGAN STERN MARINELLO &
BEARD, LLC
238 West Street
Annapolis, Maryland 21401
Phone: (410) 216-7900
Facsimile: (410) 705-0836

*/s/ Adam D. Greivell*
Adam D. Greivell, Esquire (D. Md. Bar No. 28917)
adam@gfirm.us
THE GREIVELL FIRM
5 Cornell Avenue
Hagerstown, Maryland 21742
Phone: (240) 528-8150

*Counsel for Plaintiffs/Counter-Defendants*
*GK Parandhamaia and Jan Parandhamaia*

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. ALLEGED FACTUAL BACKGROUND ........ 2
A. Factual History ........ 2
B. Federal Procedural History ........ 5
III. STANDARD OF REVIEW ........ 6
IV. ARGUMENT ........ 8
A. Count I fails to state a claim for Abuse of Process. ........ 8
B. Count II fails to state a claim for Wrongful Institution of Civil Proceedings (Malicious Use of Process). ........ 14
C. Count III fails to state a claim for Wrongful Institution of Criminal Proceedings (Malicious Prosecution). ........ 18
D. Count IV fails to state a claim for Intentional Infliction of Emotional Distress ........ 21
E. Count V fails to state a claim for Civil Conspiracy ........ 25
F. Count VI fails to state a claim for Breach of Contract and is barred by Res Judicata ........ 27
G. Count VII fails to state a claim for Improper Claim for Retaliatory Eviction ........ 28
V. CONCLUSION ........ 30

## EXHIBIT INDEX – L.R. 105.5

| EXHIBIT # | DESCRIPTION | PAGES |
|---|---|---|
| A | General Addendum to Lease dated June 9, 2022 | 2 |
| B | C-11-CV-23-000070 State Counterclaim | 10 ,19, 27 |
| C | Temporary Peace Order issued August 21, 2023 | 14, 17, 18 |
| D | Memorandum Opinion and Order – Oct. 13, 2023 | 16, 17, 19, 28 |
| E | Excerpts of July 5, 2023 TPO Proceeding | 16, 19 |
| F | Excerpt of July 20, 2023 TPO Proceeding | 3, 16, 17 |
| G | Order of Dismissal of Peace Order – Sept. 21, 2023 | 17 |

Plaintiffs/Counter-Defendants GK Parandhamaia ("GK") and Jan Parandhamaia ("Jan") (collectively, "Plaintiffs"), by and through their undersigned counsel, Jonathan P. Kagan, Michael J. Marinello, and Veronica J. Mina, of Kagan Stern Marinello & Beard, LLC, and Adam D. Greivell, of The Greivell Firm, hereby file this Memorandum in Support of its Motion to Dismiss the Counterclaim filed by Defendants/Counter-Plaintiffs Smith Farm Holdings, LLC ("SFH") and Steven G. Smith ("Smith") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. As set forth more fully below, each of Defendants' claims fail to state a claim upon which relief can be granted and, in several instances, are barred by collateral estoppel, res judicata, and/or the statute of limitations. As such, this Court should grant the Motion to Dismiss.

## I. INTRODUCTION

Defendants SFH and Smith have filed seven counterclaims seeking to weaponize this Court's processes in precisely the manner they accuse Plaintiffs of doing. Each count in the Counterclaim fails as a matter of law and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Defendants' Counterclaims consist largely of inflammatory rhetoric and legal conclusions untethered from well-pleaded facts. The tort claims—abuse of process (Count I), malicious use of process (Count II), malicious prosecution (Count III), and intentional infliction of emotional distress (Count IV)—all fail because Defendants cannot plausibly allege the essential elements required under Maryland law. The civil conspiracy count (Count V) fails derivatively because it rests on the same defective torts. The breach of contract claim (Count VI) fails because it is unequivocally barred by res judicata and, further, otherwise fails to plausibly allege any breach of the Lease. Finally, the claim for damages under Maryland's retaliatory eviction statute (Count VII) fails because the statute does not authorize a freestanding counterclaim/cause of action for improper assertion of a retaliatory eviction defense or claim; it authorizes the court to award

sanctions in the proceeding in which the retaliatory eviction claim is adjudicated, upon motion and a finding of bad faith or lack of substantial justification – a finding which this Court never made. GK and Jan Parandhamaia therefore respectfully request that this Court dismiss all seven counts in the Counterclaim with prejudice.

## II. ALLEGED FACTUAL BACKGROUND[1]

### A. Factual History

The claims in the Counterclaim arise from the same transaction and property dispute underlying GK and Jan's First Amended Complaint. On July 21, 2022, GK and Jan sold real property located at 2440 Bittinger Road and 2714 Bittinger Road, Swanton, Maryland (the "Properties") to Defendant SFH for approximately $1.3 million. ECF 34 at ¶ 8. As part of that transaction, SFH agreed to lease the house, garage, and curtilage at 2440 Bittinger Road (the "Premises") back to GK and Jan for a five-year term at $1.00 per year pursuant to a Residential Lease Agreement dated July 21, 2022, as well as additional guarantees provided pursuant to a General Addendum dated June 9, 2022. *Id.* at ¶¶ 9, 11; **Exhibit A** (General Addendum dated June 9, 2022).[2] The property at 2440 Bittinger Road had been in Jan's family for generations, and she grew up in the home. ECF 34 at ¶ 10.

SFH and Smith allege that immediately after the sale, GK and Jan regretted it and embarked on what SFH and Smith characterize as a "years-long crusade" to make SFH's ownership "toxic and untenable." *Id.* at ¶¶ 1, 17-18. Following the sale, disputes arose between the parties regarding GK and Jan's rights under the lease, access to water at the Premises, and the permissible scope of

---

[1] While Plaintiffs generally deny any liability under the Counterclaim, Plaintiffs concede that for the purposes of the motion to dismiss, all well pleaded allegations are to be deemed true for the purposes of the motion. *See Johnson v. House of Labeija LLC*, 2026 U.S. Dist. LEXIS 66804, at *25 (D. Md. Mar. 27, 2026).

[2] The General Addendum may properly be considered by the Court for purposes of this Motion to Dismiss without the need to convert it to one for summary judgment, as the General Addendum is incorporated by reference into the Federal Counterclaim (*see* ECF 34 at ¶ 11).

GK and Jan's use of the property. *Id.* at ¶¶ 15-23. On October 21, 2022, GK and Jan filed a rent escrow action in the District Court of Maryland for Garrett County (Case No. D-122-CV-22-007273), which SFH thereafter appealed de novo to the Circuit Court for Garrett County at Case No. C-11-CV-22-000109 (the "Rent Escrow Action"). *Id.* at ¶ 23. The Rent Escrow Action concerned alleged water-supply issues at the Premises. *Id.* On April 13, 2023, GK and Jan filed a second civil action in the Circuit Court (Case No. C-11-CV-23-000070) seeking damages and demanding that SFH drill a new well at 2440 Bittinger Road (the "Damages Action"). *Id.* at ¶ 26.

During this period, Jan filed two criminal complaints and two petitions for peace orders against Smith. *Id.* at ¶¶ 29, 34. The first criminal complaint (Case No. DS-122-CR-23-000274) and petition for peace order (Case No. DS-122-CV-23-818665) were filed on or about July 5, 2023. *Id.* On or about July 5, 2023, Jan obtained an ex parte Temporary Peace Order ("TPO") against Smith for harassment and trespass. *Id.* at ¶ 29. Smith was served with the criminal charges and first TPO on or about July 8, 2023. *Id.* at ¶ 30. Following hearings on July 12 and July 20, 2023, the court expressly stated that it "finds there's a preponderance of the evidence that within 30 days before the filing of the petition, the Respondent committed the following acts against the Petitioner: Trespass." *See infra*, Exhibit F (Excerpt of July 20, 2023 Final Peace Order Proceeding) at 55:5-8. Addressing Mr. Smith, the court stated, I believe she [Jan] reasonably believes that I can be in the yard and not have you show up with a four-wheeler and trespass signs. That's what this Judge believes." *Id.* at 55:22-56:3. Notwithstanding that, the court declined to enter a Final Peace Order, solely based on Smith's and his counsel's representation that he understood he was prohibited from engaging in that conduct and would refrain from doing so. *Id.* at 60:16-61:5.

When Smith failed to adhere to his prior assurance to refrain from trespassing on the Premises, Jan filed a second petition for a peace order for trespass (Case No. D-122-CV-23-821744) and criminal charges (Case No. D-122-CR-23-000338) on or about August 22, 2023.

ECF 34 at ¶ 34. Jan obtained the second TPO against Smith the same day. Following a hearing on or about September 21, 2023, the second TPO was dissolved. *Id.* at ¶ 35. The second criminal charges were dismissed on or about October 18, 2023. *Id.* In the meantime, on August 2, 2023, SFH filed a counterclaim and an application for a temporary restraining order and preliminary injunction in the state court (Case No. C-11-CV-23-000070), alleging that GK and Jan had trespassed on and destroyed portions of the property beyond the area leased to them. *Id.* at ¶ 41.[3] The Rent Escrow Action, the Damages Action, and SFH's counterclaim were consolidated for trial in the Circuit Court on September 5 and October 4, 2023. *Id.* at ¶ 42.

On October 13, 2023, the Circuit Court issued a Declaratory Judgment and Order and Memorandum Opinion (collectively, the "Circuit Court Order") finding that SFH was required to ensure that GK and Jan had access to water at 2440 Bittinger Road and that the property rented to GK and Jan was "limited to the house and garage and the curtilage area immediately surrounding the house." *Id.* at ¶ 47. The Circuit Court did not award damages to any party. *Id.* at ¶ 48. SFH and Smith allege that on or about September 14, 2023—during the trial—GK and Jan purchased a new residence at 5405 Glendale Road, Swanton, Maryland, and did not disclose that fact to the Circuit Court. *Id.* at ¶ 44. SFH and Smith further allege that GK and Jan moved into the new residence shortly thereafter and have been living there since. *Id.* at ¶ 45. SFH subsequently drilled a new well at 2440 Bittinger Road. *Id.* at ¶ 49. On or about November 12, 2023, GK and Jan appealed the October 13, 2023 Order. *Id.* at ¶ 50. SFH and Smith allege that on or about November 6, 2023, GK and Jan threatened to file an amended complaint seeking to invalidate the property claim and asserting claims for perjury and malicious prosecution with a demand for $2,750,000 in punitive damages unless SFH agreed to return 2440 Bittinger Road to GK and Jan. *Id.* at ¶ 51. On

[3] The Federal Counterclaim incorrectly asserts that the counterclaim in Case No. C-11-CV-23-000070 was filed on August 23, 2023. Public records reflect it was filed on August 2, 2023.

March 13, 2025, GK and Jan voluntarily dismissed the appeal, and the Appellate Court of Maryland entered its mandate of dismissal on March 17, 2025. *Id.* at ¶ 55.

### B. Federal Procedural History

GK and Jan filed the present action in the Circuit Court on May 29, 2025, which SFH and Smith removed to this Court on August 14, 2025. *Id.* at ¶ 57; ECF 2. On December 1, 2025, GK and Jan filed a Motion for Leave to Amend the Complaint, which was granted on February 25, 2025. ECF Nos. 21, 24. The First Amended Complaint ("FAC"), filed on February 25, raised 11 causes of action against SFH and Smith: Breach of Contract of the Lease (Count I); Invasion of Privacy (Intrusion Upon Seclusion) (Count II); Nuisance (Count III); Trespass to Land (Count IV); Retaliatory Eviction (Count V); Civil Conspiracy (Breach of Lease) (Count VI); Civil Conspiracy (Retaliatory Eviction) (Count VII); Permanent Injunction (Removal of Cameras) (Count VIII); Permanent Injunction (Removal of Fencing) (Count IX); Permanent Injunction (Removal of Chains on Security Gate) (Count X); and Declaratory Judgment and Equitable Relief (Extension of Lease Term) (Count XI). ECF 25. SFH and Smith moved to dismiss the FAC on March 18, 2026. ECF 26. After briefing (ECF 27-29), this Court granted in part and denied in part the Motion to Dismiss on June 15, 2026. ECF 30. The Court dismissed, among other claims, Count I (Breach of Contract) as against Smith individually and the implied warranty of habitability theory as to SFH, Count V (Retaliatory Eviction), Counts VI and VII (Civil Conspiracy), and Counts VIII through XI (Permanent Injunction and Declaratory Relief claims). *Id.*

On July 6, 2026, SFH and Smith filed their First Amended Answer to the FAC and Counterclaims, which asserts seven Counterclaims: (I) Abuse of Process; (II) Wrongful Institution of Civil Proceedings (Malicious Use of Process); (III) Wrongful Institution of Criminal Proceedings (Malicious Prosecution); (IV) Intentional Infliction of Emotional Distress; (V) Civil Conspiracy; (VI) Breach of Contract; and (VII) Improper Claim for Retaliatory Eviction. ECF 34.

Defendants allege they suffered damages including attorneys' fees in excess of $150,000, well replacement costs exceeding $20,000, and severe emotional distress. ECF 34 at ¶ 63. SFH and Smith seek compensatory damages exceeding $75,000, punitive damages, attorneys' fees, three months' rent under the Lease, and a declaration that GK and Jan violated the Lease. *Id.* at p. 37.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). A motion to dismiss under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the complaint. *Fessler v. Int' l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020). To survive such a motion, "a plaintiff must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)). The factual allegations set forth in the complaint must be sufficient to "'to raise a right to relief above the speculative level,'" *see Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and "the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis in original) (quoting *Twombly*, 550 U.S. at 570). While the court is "constrained to 'take the facts in the light most favorable to the plaintiff,' [it] need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs*, 680 F.3d at 365. "At bottom, a plaintiff must 'nudge[ ] [its] claims across the line from conceivable to plausible' to resist dismissal." *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6). *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (2009).

It is well established that courts may consider "the complaint and any attached documents integral to the complaint" when deciding a motion to dismiss under Rule 12(b)(6). *Zeller v. Zhou*, 2019 U.S. Dist. LEXIS 105607, at *5 (D. Md. June 21, 2019). A court may also consider some evidence beyond a complaint on a motion to dismiss including publicly available information. *Philips v. Pitt Cntyy. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

A defendant may also raise affirmative defenses, such as res judicata, collateral estoppel, or the statute of limitations, under a Rule 12(b)(6) motion in "circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear *on the face of the complaint*." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis in original); *see also Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F. 3d 573, 577 (4th Cir. 2017) ("[W]hen the face of the complaint includes all necessary facts for the defense to prevail," statute of limitations "is an affirmative defense that can [be] raise[d] in a motion to dismiss.").

A defense based on the statute of limitations rests on the defendant to prove. *Id.* The defendant also bears the burden of establishing preclusion doctrines, such as res judicata and collateral estoppel. *Theune v. U.S. Bank, N.A.*, 2013 U.S. Dist. LEXIS 156915, at *9 (D. Md. Nov. 1, 2013). "[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Id.* at *11 (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)). When a defendant requests resolution of an affirmative defense on a Rule 12(b)(6) motion, factual allegations in the complaint related to the viability of the affirmative defense or an exception thereto become pertinent for consideration. *Id.* at *11-12.

## IV. ARGUMENT

### A. Count I fails to state a claim for Abuse of Process.

Count I of the Counterclaim alleges that Plaintiffs willfully used the process of the courts to coerce SFH into returning the Properties that the Parandhamaias had voluntarily sold. ECF 34 at ¶ 66. Count I rests upon several grounds: (1) the Rent Escrow Action (as that term is used in the Counterclaim); (2) the Damages Action (as that term is used in the Counterclaim); (3) the Peace Order proceedings (the first of which Jan filed on July 5, 2023 and dissolved on July 25, 2023, and the second of which Jan filed on August 22, 2023 and dissolved on September 21, 2023); (4) the criminal filings (the first of which Jan filed on July 5, 2023 and was dismissed on July 25, 2023, and the second of which Jan filed on August 22, 2023 and was dismissed on October 18, 2023); (5) the Parandhamaias' November 12, 2023 appeal of the October 13, 2023 circuit court Order to the Appellate Court of Maryland ("ACM"); (6) the Parandhamaias' alleged threats to seek return of the Property; (7) counsel for Parandhamaias' alleged litigation-extending statements; and (8) the Parandamaias' dismissal of the appeal in the ACM on March 13, 2025. *See id.*, ¶¶ 64-69. Even accepting these allegations as true for purposes of Rule 12(b)(6), Count I is barred – on the face of the Counterclaim – in part, by the doctrines of res judicata, collateral estoppel, and/or the statute of limitations, and otherwise fails to state a viable claim for abuse of process.

The tort of abuse of process occurs when a party has willfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law. *Krashes v. White*, 275 Md. 549, 555 (1975). To sustain a cause of action for abuse of process, the plaintiff must prove: "first, that the defendant willfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *One Thousand Fleet Ltd. Pshp. v. Guerriero*, 346 Md. 29, 38 (1997) (internal citations omitted). It is well understood that "[a]

bad motive alone is not sufficient to establish an abuse of process." *Id.* Indeed, "[n]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion *regardless of how evil his motive may be*."). *Id.* (citing *Wells v. Orthwein*, 670 S.W.2d 529, 533 (Mo. Ct. App. 1984)) (emphasis added). Critically, "[a] cause of action for civil abuse of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process." *Id.* at 45 (citing *Bartlett v. Christhilf*, 69 Md. 219, 231 (1888)).

The first critical question is whether the claims presented in Count I of the Counterclaim are identical to those determined in the prior state court adjudication, or whether they could have been litigated in that action. This Court must also consider whether the issues raised in Count I of the Counterclaim were already decided in an earlier case. Under Maryland's test, several are. While res judicata focuses on the preclusion of identical claims or causes of action, collateral estoppel is concerned with the preclusive effect of specific facts or issues that were previously litigated and decided. *Scott v. Prince George's Cty. Dep't of Soc. Servs.*, 76 Md. App. 357, 374, (1988). The Appellate Court of Maryland has explained:

> Res judicata, also known as claim preclusion, is direct estoppel; that is, if a suit between the same parties is upon the same cause of action, the judgment in the earlier suit is an absolute bar to a later suit, not only as to all matters which were actually litigated in the earlier suit, *but as to all matters which could have been litigated*. Collateral estoppel, sometimes referred to as issue preclusion, operates so that even if the causes of action are different, a factual issue actually litigated in the first case is conclusive in the second. . . . Collateral estoppel may sometimes be asserted even where res judicata will not apply. For example, a second cause of action may be different from the first, and, therefore, res judicata will not act as a bar. If, however, a factual determination has been made i.e., a particular issue was litigated in the first action, it will be conclusive in the second.

*Id.* at 374-75 (emphasis added).

In short, the three required elements of res judicata are: (1) the parties in the present litigation must be the same as, or in privity with, the parties to the earlier dispute; (2) the claim

presented in the current action must be identical to the one determined in the prior adjudication (or any matters, legal theories, defenses, or counterclaims that could have been litigated in that original action); and (3) there must be a final judgment on the merits in the prior adjudication. *Facey v. Facey*, 249 Md. App. 584, 608 (2021). In contrast, collateral estoppel requires that: (1) the issue of fact or law decided in the prior adjudication must be identical to the one presented in the subsequent litigation; (2) there must be a valid and final judgment on the merits in the prior adjudication; (3) the party against whom the plea of collateral estoppel is being asserted must have been a party, or in privity with a party, to the prior adjudication; (4) the issue must have been actually litigated and determined in the prior action, and its determination must have been essential to the final judgment rendered; and (5) the party against whom the doctrine is asserted must have been given a fair opportunity to be heard on the issue and a fair opportunity to appeal the judgment in the prior action. *Shapiro v. Hyperheal Hyperbarics, Inc.*, 263 Md. App. 424, 459 (2024).

The State Counterclaim (Case No. C-11-CV-23-000070) was filed on August 2, 2023.[4] *See* **Exhibit B** (State Counterclaim). The parties to the federal Counterclaims are identical to the parties to the State Counterclaim. The Rent Escrow Action was filed on October 21, 2022, the Damages Action was filed on April 13, 2023, and the first TPO and criminal charges were filed on July 5, 2023 and dissolved/dismissed on or about July 25, 2023, all before the State Counterclaim was filed. The State Counterclaim already alleged that Plaintiffs had instituted the Rent Escrow and Damages Actions to allegedly "harass and antagonize" SFH, had filed "baseless" criminal charges that were dismissed, and sought the first TPO which was dissolved. *See* Ex. B at

---

[4] The State Counterclaim may properly be considered by the Court for purposes of this Motion to Dismiss without the need to convert it to one for summary judgment. The State Counterclaim is incorporated by reference into the Federal Counterclaim (*see* ECF 34 at ¶¶ 41-42) and is a matter of public record, of which this Court may take judicial notice. *See Azizollah Abrishamian v. Wash. Med. Grp., P.C.*, 216 Md. App. 386, 413, 86 A.3d 681, 696-97 (2014) ("Trial courts can take judicial notice of 'matters of common knowledge or those capable of certain verification.' . . . Many different types of information can fall under the umbrella of judicial notice, most commonly public records such as court documents[.]") (citations omitted).

¶¶ 25-27, 29, 37. As to these foregoing events, they cannot form the basis of Defendants' claim for Abuse of Process.

The foregoing events are barred by res judicata, collateral estoppel, and/or the statute of limitations. To avoid the vagaries of res judicata's preclusive effect, a party must assert all the legal theories it wishes to in its initial action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata. *Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 392 (2000); *Patel v. Healthplus, Inc.*, 112 Md. App. 251, 276 (1996) ("[T]he law of res judicata now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so.") (internal quotations omitted). SFH's strategic choice to frame its August 2023 state court counterclaim as property-tort and contract claims rather than process-abuse does not permit relitigation of the same transaction in federal court under different legal labels. Indeed, SFH raised these issues, and could have raised a claim for abuse of process at that time, because such a claim accrues *on the date the alleged wrong is committed*, not when the underlying proceeding terminates. *See Heron v. Strader*, 361 Md. 258, 268 (2000) (citing *Michaels v. New Jersey*, 955 F. Supp. 315 (D.N.J. 1996)) (explaining that abuse of process accrued at the time of the arrest). A favorable termination of the prior legal proceedings is not an element of an abuse of process claim and is not a prerequisite for its accrual. Accordingly, SFH could have raised this claim in the State Counterclaim, but strategically chose not to. There was also a final judgment on the merits of the Rent Escrow Action, Damages Action, and the first TPO and criminal charges after such issues were fully litigated,[5] and SFH was given a fair opportunity to

---

[5] *See* ECF 34 at ¶ 42 (alleging that the trial on the Rent Escrow Action and Damages Action was held on September 5 and October 4, 2023); *id.* at ¶ 47 (alleging that following trial, the Circuit Court issued the Circuit Court Order on October 13, 2023); *id.* at ¶ 31 (alleging that the first TPO was dissolved on July 25, 2023 and the criminal charges against Smith were dismissed).

be heard on these issues and a fair opportunity to appeal the judgment in the prior action. Thus, Count I should be barred, in part, by res judicata and/or collateral estoppel.

Further, because an abuse of process claim accrues at the time the alleged abuse occurs, Count I – based on the foregoing events – is barred, in part, by the statute of limitations. "[W]hen the face of the complaint includes all necessary facts for the defense to prevail," statute of limitations "is an affirmative defense that can [be] raise[d] in a motion to dismiss." *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F. 3d 573, 577 (4th Cir. 2017). The statute of limitations for a civil claim in Maryland is three years. MD. CODE ANN., CTS. & JUD. PROC. § 5-101. Count I, based on the foregoing events, accrued on October 21, 2022, April 13, 2023, and July 5, 2023, respectively – the date on which each alleged wrong was committed. The Counterclaim was filed on July 6, 2026. Thus, the foregoing events are time-barred and cannot form the basis for Count I.

Finally, Count I as a whole fails to allege sufficient facts to state a plausible claim for abuse of process and is legally deficient. First, Defendants are unable to satisfy the first and second elements of an abuse of process claim. On its face, Count I rests upon conclusory and speculative allegations. Defendants allege that Plaintiffs willfully used the process of the courts after it had issued, and perverted that process to accomplish an ulterior purpose for which it was not designed: to coerce SFH into returning the properties Plaintiffs had voluntarily sold. ECF 34 at ¶ 66. Defendants allege that the ulterior purpose is confirmed by Plaintiffs' repeated demands that SFH return the properties, their threat to assert a $2,750,000.00 punitive damages claim unless the property was returned, and their counsel's statements that they could and would prolong the litigation for years. *Id.* at ¶¶ 67-69. These allegations are wholly conclusory; they do not identify any specific act showing how Plaintiffs used any court process "in a manner not contemplated by law." Filing a rent escrow action to obtain water service, filing a declaratory judgment action to enforce the Lease, seeking peace orders based on harassment, and noting an appeal from an adverse

judgment are all uses of process for the purposes those processes were designed to serve.[6] The Counterclaim does not allege that Plaintiffs obtained process by fraud, used process to seize property to which they were not entitled, or employed process in any irregular or improper manner.

Indeed, the allegation that Plaintiffs harbored an "ulterior purpose" of recovering the properties is belied by the relief Plaintiffs actually sought in the state court actions: water service, damages for breach of the Lease, and appellate review of the trial court's judgment. Plaintiffs did not seek rescission of the sale, reconveyance of the properties, or any other relief that would have returned the properties to them.[7] Defendants' speculation about Plaintiffs' subjective motivations, standing alone, does not transform the lawful use of judicial process into abuse of process.

Even assuming *arguendo* that Plaintiffs possessed evil motive in pursuing the Rent Escrow Action, Damages Action, appeal, and the peace order and criminal charges, that is insufficient to sustain their claim. *See One Thousand Fleet Ltd. Pshp.*, 346 Md. at 38 ("No liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion

---

[6] These are all matters of public record capable of verification and, therefore, do not operate to convert the motion to summary judgment. *See Azizollah Abrishamian*, 216 Md. App. at 413.

[7] Defendants attach as Exhibit B to the Counterclaim excerpts of the trial transcript in the Circuit Court to seemingly support their position that Plaintiffs requested the Properties be returned to them. *See* ECF 34 at ¶ 43. However, upon review of the transcript, it is devoid of any such request. The transcript simply reflects that the Parandhamaia's planned to initially keep the Property but ended up selling it:

Q. Fair to say you did not want to sell 2440?
A. That's correct.
* * *
Q. You regret selling the property to Smith Farm Holdings, correct?
A. The way things are going presently, it's not a very nice neighbor.
* * *
Q. And you did not want to sell 2440 Bittinger, which was your childhood home, correct?
A. We planned to keep one of them.
Q. But in the end you did not?
A. In the end we did not.

*See* ECF 34, Ex. B at 31:38-39, 123:4-7, and 124:14-18. The foregoing exchange does not reflect Plaintiffs' alleged request to return the Properties and, importantly, it was Defendants' counsel who raised the issue, not the Parandhamaias. Simply regretting the sale does not equate to an explicit request for relief to return the Properties, as Defendants would like this Court to believe.

regardless of how evil his motive may be."). The Defendants must have suffered actual damages, *i.e.*, that SFH and Smith establish an arrest of the person or a seizure of property of SFH/Smith resulted from the abuse of process. *See id.* at 45. Defendants cannot satisfy this third element either, nor have they even plead as much. SFH and Smith allege that they have been deprived of their right to access the Properties pursuant to the TPO, but the TPO merely restricted SFH and Smith (the latter who does not even own the Properties) from "enter[ing] the residence of the person for whom protection was sought at 2440 Bittinger Road [] or wherever they reside. (Residence includes yard, grounds, outbuildings, and common areas surrounding the dwelling)." *See* **Exhibit C** (Temporary Peace Order issued August 21, 2023).[8] Thus, SFH was only (and briefly) prohibited from entering the home, garage, and curtilage *of which the Plaintiffs leased* – property SFH does not live in and has already leased out (and, importantly, property that SFH and Smith repeatedly denied throughout this lawsuit ever trespassing on or going near). *See* ECF 34, p. 3, ¶ 11 (denying entries onto the curtilage and the leased portion of the Property); ECF 34 at ¶¶ 9, 33. Accordingly, there is no deprivation and Smith and SFH have not suffered any damages. Unable to satisfy any element for Abuse of Process, Count I legally fails and should be dismissed.

### B. Count II fails to state a claim for Wrongful Institution of Civil Proceedings (Malicious Use of Process).

Count II alleges that GK and Jan instituted and continued civil proceedings without probable cause and with malice, specifically identifying the demands for peace orders, the Damages Action (which was consolidated for trial with the Rent Escrow Action), and the appeal to the ACM as the wrongful proceedings. *See* ECF at ¶ 72. SFH and Smith further allege that the proceedings were not instituted for any proper purpose but, rather, to "harass and financially

[8] The TPO is referenced throughout the Counterclaim and, therefore is incorporated by reference into the Counterclaim. ECF 34 at ¶ 34. The TPO is also a matter of public record, of which this Court may take judicial notice. Accordingly, attachment of the TPO does not operate to convert the motion to one for summary judgment.

burden" SFH and Smith and "coerce them into returning the Properties." *Id.* at ¶ 74. SFH and Smith's allegations are conclusory and without merit. As set forth below, Count II falls woefully short of stating a claim for relief and is also barred, in part, by res judicata.

First, Count II rests upon claims that could have been raised in the State Counterclaim but were omitted by Smith. Specifically, one of the grounds for the claim is the "demands for Peace Orders," *i.e.*, the first and second peace orders. *See id.* at ¶ 72. Jan's first TPO against Smith was filed on July 5, 2023 and dissolved on or about July 25, 2023, before the State Counterclaim was filed. *Id.* at ¶¶ 29, 31. The first TPO and its dissolution were also identified and referenced in the State Counterclaim. *See* State Countercl., ¶¶ 26, 29. Despite their reference, Smith failed to raise any claim for Malicious Use of Process.

Even if not barred by res judicata, Count II nevertheless fails to state a claim for relief. The cause of action for malicious use of process has five elements and all must co-exist to maintain the action. *One Thousand Fleet Ltd. Pshp.*, 346 Md. at 37. First, a prior civil proceeding must have been instituted by the defendant. *Id.* Second, the proceeding must have been instituted without probable cause. *Id.* Probable cause for purposes of malicious use of process means "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." *Id.* (internal quotations omitted). Third, the prior civil proceeding must have been instituted by the defendant with malice. Malice in the context of malicious use of process means that the party instituting proceedings was actuated by an improper motive. *Id.* Fourth, the proceedings must have terminated in favor of the plaintiff. *Id.* Finally, the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action. *Id.* Maryland courts have "long recognized that 'suits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against'" as

"[p]ublic policy requires that citizens be free to resort to the courts to resolve grievances without fear that their opponent will retaliate with a malicious use of process lawsuit against them." *Id.*

Defendants are unable to satisfy the second, third, fourth, and fifth elements above. Apparent from the face of the Counterclaim is its contradiction by the state court record. The Circuit Court *found in Plaintiffs' favor* in that action by holding that SFH was required to ensure Plaintiffs had access to water at 2440 Bittinger Road, vindicating Plaintiffs' core claim in the rent escrow and damages actions. *See* **Exhibit D** (Memorandum Op. dated Oct. 13, 2023). The Court's ruling confirms that Plaintiffs had probable cause to institute those proceedings. While the Court also found SFHs' trespass counterclaim meritorious and limited Plaintiffs' leasehold to the house, garage, and curtilage, the fact that Plaintiffs did not prevail on all issues does not establish lack of probable cause. Similarly, the fact that Plaintiffs voluntarily dismissed their appeal does not establish lack of probable cause or malice. Parties routinely dismiss appeals for strategic, financial, or practical reasons. The Counterclaim does not allege any facts showing that the appeal was objectively baseless when filed or that Plaintiffs' decision to dismiss it was motivated by anything other than legitimate litigation strategy.

As to the two TPOs that Jan filed against Smith, those were also supported by probable cause, *i.e.*, a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of. In fact, the district court *granted* the first TPO, explaining that "the Court finds reasonable grounds to believe that within 30 days before the filing of the Petition, the Respondent-- the Respondent committed the following acts against the Petitioner[:] . . . I checked off harassment." *See* **Exhibit E** (Excerpt of July 5, 2023 TPO Proceeding) at 19:10-19. The July 5, 2023 TPO proceeding was continued to July 20, 2023. **Exhibit F** (Excerpt of July 20, 2023 Temporary Peace Order Proceeding) at 2:18-3:1. On July 20, 2023, the Court did not dismiss the TPO for lack of probable cause; rather, it found that Smith

committed the conduct that Jan complained of but agreed to dismiss the TPO on the caveat that Smith adhere to his guarantee to not repeat the conduct again:

> COURT: But I want to take you at your word, and I'm going to grant your Counsel's request to dismiss the peace order because you're agreeing not to commit a prohibited act against the Petitioner in the future. So I found that there was a trespass.

*See* Ex. F at 60:14-18. Likewise, Jan's second TPO against Smith was also supported by probable cause. Upon review, the second TPO was *granted and issued* upon the basis that "the court finds reasonable grounds to believe that within 30 days before the finding of the petition" the respondent, Smith, "[h]as committed the following act(s) against the petitioner: trespass" and that he "is likely to commit a prohibited act against the petitioner . . . in the future." *See* Ex. C. The second TPO was dismissed at the final hearing stage because of "Lack of Service," not a lack of probable cause. *See* **Exhibit G** (Order of Dismissal of Peace Oder dated Sept. 21, 2023). The lower court's findings at the TPO stage (and the resultant order at the Final) demonstrate that Smith cannot possibly satisfy the second element and therefore cannot plausibly allege it either.

The malice element is similarly deficient. Defendants allege malice based on Plaintiffs' settlement demands and their counsel's statements about prolonging the litigation. These allegations, even if true, do not establish malice. Demanding favorable settlement terms and using all available procedural mechanisms to pursue a claim are not evidence of malice; they are the ordinary conduct of civil litigation. Further indicative of the lack of malice is the lack of any improper motive; the Parandhamaias sought clean water service, repairs to the well, and an acknowledgement of their lease-hold rights to the Property, all of which the Circuit Court awarded. Beyond this, the Circuit Court also declined to award any damages to SFH, finding that it "*believes the parties have acted in good faith*." Ex. D (emphasis added). The Circuit Court's explicit finding of good faith belies any self-serving notion of malice. Trying to manufacture an iota of malice,

SFH and Smith further allege that the proceedings were initiated to "harass and financially burden SFH and Smith." However, Maryland courts have made abundantly clear that the "mere expense and annoyance of defending a civil action is not a sufficient special damage or injury to sustain an action for malicious prosecution." *One Thousand Fleet Ltd. Pshp.*, 346 Md. at 44.

Finally, SFH and Smith are unable to demonstrate any special damages or injury. Defendants have not suffered any arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action. Similar to Count I, they allege that they have been deprived of their right to access the Properties pursuant to the TPO (*see* ECF 34 at ¶ 76), but the TPO merely restricted SFH and Smith (the latter who does not even own the Properties) from "enter[ing] the residence of the person for whom protection was sought at 2440 Bittinger Road [] or wherever they reside. (Residence includes yard, grounds, outbuildings, and common areas surrounding the dwelling)." *See* Ex. C. Thus, SFH was only (and briefly) prohibited from entering the home, garage, and curtilage *of which the Plaintiffs leased* – property SFH does not live in and has already leased out (and, importantly, property that SFH and Smith repeatedly denied throughout this lawsuit ever trespassing on or going near). *See* ECF 34, p. 3, ¶ 11; ECF 34 at ¶¶ 9, 33. Accordingly, there is no deprivation and Smith and SFH have not suffered any damages, let alone any other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action. This Court should therefore dismiss Count II.

### C. Count III fails to state a claim for Wrongful Institution of Criminal Proceedings (Malicious Prosecution).

Count III alleges that GK and Jan instituted and continued criminal proceedings without probable cause and with malice, identifying the "criminal charges alleging trespass and

harassment" filed by Jan against Smith. ECF 34 at ¶ 79. Like Count II, the allegations in Count III are conclusory and without merit and fail to state a claim upon which relief can be granted.

Preliminarily, Count III is brought against GK and Jan, but it is undisputed that only Jan filed criminal charges against Smith. *See id.* ("*Jan Parandhamaia* instituted and continued carinal proceedings against Smith[.]"). Thus, at a minimum, Count III must be dismissed against GK.

Count III should also be dismissed as to Jan because it fails to state a claim for malicious prosecution as a matter of law. Maryland courts have explained that "[a]ctions for malicious prosecution and malicious use of process have the same essential elements and are often referred to as being essentially synonymous, with most of the cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding." *One Thousand Fleet Ltd. Pshp*, 346 Md. at 36-37.

The gravamen of Smith's claim for malicious prosecution rests upon the alleged basis that the criminal charges for trespass and harassment were instituted without probable cause and with malice. ECF 34 at ¶¶ 79, 81-82. As set forth above in Count II, Smith's position is belied by the district court proceedings and the orders issued against him. The related TPOs against Smith, filed simultaneously with the criminal charges, found that Smith engaged in harassment and trespassing and was likely to do so again. *See* Exs. B, D, E. Thus, it cannot be said that there was no probable cause for the proceedings. Further, it is well understood that the burden of proof in criminal proceedings is higher than civil proceedings. In a criminal proceeding, the State's burden must show that the defendant committed the crime "beyond a reasonable doubt", which is a constitutionally mandated standard of proof distinct from the lesser standard of probable cause. [9]

[9] *See Freeman v. State*, 249 Md. App. 269, 301-02 (2021) ("[T]the Court of Appeals made it indisputable that the establishment of probable cause does not require proof to the 'preponderance of the evidence' level: The quanta of proof appropriate in ordinary judicial proceedings are inapplicable to the probable cause determination; consequently, finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable cause determination. In short, probable cause is not a high bar.").

Further, criminal charges cannot proceed or issue without a valid basis of probable cause.[10] Accordingly, it cannot be said that the charges against Smith were not instituted with probable cause, especially when the district court simultaneously found that he committed the conduct complained of – trespassing and harassment – and was likely to do so again such that it entered two subsequent TPOs against him (the second which found that Smith *again* committed a trespass).

Beyond this, Smith has failed to sufficiently allege that Jan acted with malice when instituting the criminal proceedings against him. In a wholly conclusory fashion, Smith alleges that "[t]he Parandhamaias acted with malice and for a purpose other than bringing an offender to justice—namely, to harass Smith and to coerce Smith Farm Holdings into returning the Properties—as part of their broader campaign against the Counterclaim Plaintiffs." ECF 34 at ¶ 82. Such conclusory allegations are insufficient to survive a motion to dismiss. It is axiomatic that in order to properly plead a claim alleging malice, the plaintiff must "allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with 'actual malice.' Nothing less will suffice." *See Scott v. Jenkins*, 345 Md. 21, 37 (1997); *see also Fiorita v. McCorkle*, 222 Md. 524, 529-30 (1960) (holding that the pleading used terms such as "unreasonable" or "unjustifiably" or "maliciously" without pleading specific facts, which were mere conclusions of law insufficient to sustain the complaint). Smith attempts to support his claim of malice – albeit unsuccessfully and unpersuasively – by asserting that the criminal charges were instituted to essentially extort Smith and SFH and compel them to return the Properties to GK and Jan; however, as set forth above in Count I, Plaintiffs did not seek rescission of the sale, reconveyance of the properties, or any other relief that would have returned the Properties to

---

[10] *See* Md. Rule 4-202(c)(2) ("A Statement of Charges shall include or be accompanied by (A) a Statement of Probable Cause signed under oath, or (B) an Application for Statement of Charges signed under oath, which is sufficient to establish probable cause.").

them.[11] Rather, the charges were supported by probable cause and the district court found reasonable grounds that Smith engaged in trespassing and harassment and, therefore, issued the TPOs. The lower court's finding coupled with the facts from public record that the Parandhamaias never sought relief to have the Properties returned demonstrate that the claim of malice is conclusory. Finally, as set forth above in Count II, which GK and Jan incorporate by reference, SFH and Smith are unable to demonstrate any special damages or injury. Therefore, this Court should find that Smith has failed to state a claim for malicious prosecution upon which relief can granted and dismiss Count III. At a minimum, this Court should also dismiss Count III against GK because he did not institute the criminal charges against Smith.

**D. Count IV fails to state a claim for Intentional Infliction of Emotional Distress.**

Count IV alleges that Plaintiffs engaged in intentional and reckless conduct directed at Smith, including causing baseless criminal charges to be filed, obtaining an ex parte order barring him from his own company's properties, repeatedly filing further criminal charges, harassing Smith and his family, and threatening to prosecute him for perjury and to seek $2,750,000.00 in punitive damages unless the properties were returned. ECF 34 at ¶¶ 86-88. As with every other preceding count, Count IV is amongst a multitude of claims that reflect Smith's (and SFH's) "kitchen-sink" attempt to throw any claim at the Parandhamaias and see what sticks. On its face, Count IV does not. It is legally deficient and fails to state a claim upon which relief can be granted.

To successfully plead a claim for intentional infliction of emotional distress ("IIED"), one must show that (1) the conduct is intentional or reckless, (2) the conduct is extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress must be severe. *Mixter v. Farmer*, 215 Md. App. 536, 547-48 (2013)

---

[11] *See e.g., supra* note 7.

(quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). "The tort should be 'used sparingly and only for opprobrious behavior that includes truly outrageous conduct'" as it is "reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* (quoting *Hines v. French*, 157 Md. App. 536, 558 (2004)); *Batson v. Shiflett*, 325 Md. 684, 734 (1992). "Generally speaking, claims for intentional infliction of emotional distress are disfavored and difficult to establish and, as such, are 'rarely viable.'" *Tyndall v. Berlin Fire Co.*, 2015 U.S. Dist. LEXIS 92999, at *86 (D. Md. July 16, 2015).

As to the first element, the Maryland courts have explained that conduct that is intentional or reckless occurs when the actor "desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Mixter*, 215 Md. App. at 548, 81 A.3d at 637. Next, "[f]or conduct to meet the test of 'outrageousness,' it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batson*, 325 Md. at 734. "The 'extreme and outrageous' standard is quite high." *Tyndall*, 2015 U.S. Dist. LEXIS at *88. It is for the Court to determine whether the conduct is outrageous and, in doing so, it must consider "not only the conduct itself but also the 'personality of the individual to whom the misconduct is directed.'" *Batson*, 325 Md. at 734. Even where a defendant acts with a tortious or criminal intent, is motivated by "malice," or has knowledge that their actions will cause the plaintiff to be upset, such conduct does not automatically rise to the level of extreme and outrageous. *Id.* at 736. Indeed, "to be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Tyndall*, 2015 U.S. Dist. LEXIS at *88 (internal citations omitted). Courts have further explained that this "high standard of culpability exists to screen out claims amounting to 'mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities' that simply must be endured as part of life." *Batson*, 325 Md. at 736.[12] Finally, the emotional distress alleged must be so severe such that "no reasonable person could be expected to ensure it" and "[o]ne must be unable to function or to tend to necessary matters." *Haines v. Vogel*, 250 Md. App. 209 (2021).

The allegations in Count IV fall woefully short of demonstrating intentional or reckless conduct that is extreme and outrageous and that caused Smith to suffer severe emotional distress. The alleged conduct—filing civil and criminal proceedings,[13] making settlement demands, and threatening to seek punitive damages—constitutes the ordinary exercise of legal rights. While such conduct may be adversarial and may cause stress and anxiety to the opposing party, it does not exceed all possible bounds of decency tolerated by a civilized community. Maryland courts have agreed.

More specifically, under Maryland law, the mere act of filing a civil, administrative, or criminal complaint does not constitute "extreme and outrageous" conduct and is insufficient to establish a claim for IIED. For example, in *Mixter v. Farmer*, the Appellate Court of Maryland addressed an IIED claim arising from an administrative complaint filed with the Attorney Grievance Commission ("AGC"). The court held that "making a complaint alone does not give rise to a claim for severe emotional distress." *Mixter*, 215 Md. App. at 548. Furthermore, the

---

[12] "A claim for IIED has been sustained in Maryland four times. And, indeed, the tort has been found to exist in only the most extreme circumstances." *See Haines v. Vogel*, 250 Md. App. 209, 230-31, 249 A.3d 151, 163-64 (2021) (citing *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo-Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991) (reversing dismissal when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988) (sustaining cause of action for IIED when a physician with herpes had sex with nurse without informing her that he had the disease and infected her); *Young v. Hartford Accident & Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide)).

[13] Only Jan instituted the TPO proceedings and the two criminal proceedings against Smith; therefore, this alleged basis for Smith's IIED claim is inapplicable to GK.

court held that the defendant's knowledge that the plaintiff would be upset by the complaint was insufficient to establish the claim. *Id.* Similarly, severely inappropriate behavior – substantially more than that alleged by Smith in the instant case – has previously been found insufficient to sustain a claim for IIED. In *Hines v. French*, the appellant alleged that a police officer, after he had pulled her over, noticed and commented on the fact that she had fresh surgery scars, slammed her body and head into the side of a truck, and laughed at the pain he must have caused her still healing face. 157 Md. App. 536, 546 (2004). According to the appellant, after this, the police officer then "pulled her crippled left arm up behind her back and handcuffed her hands so tightly" that appellant suffered lacerations on her wrists and hands. It was not until after the handcuffs were secured that the officer told appellant that she was a suspect in a hit-and-run accident. *Id.* The court stated that the alleged conduct was, if true, "inappropriate." *Id.* at 559. Nonetheless, the behavior was "not tantamount to 'atrocious[] and utterly intolerable' behavior that goes 'beyond all possible bounds of decency,'" and thus was not extreme or outrageous enough to give rise to a viable IIED claim. *Id.*

The conduct alleged in Count IV pales in comparison to that alleged in *Hines v. French*. Further, Smith alleges that the complained-of conduct was "undertaken as part of a sustained, multi-year campaign to weaponize the civil and criminal justice systems" but that is patently contradicted on the face of the Counterclaim, which alleges that Jan filed two separate peace orders and two separate criminal charge applications in *2023* – nearly three years ago. ECF 34 at ¶¶ 29, 34. The Counterclaim is devoid of any allegation that Jan (or GK) has filed subsequent peace orders or criminal charges since 2023. Further, Count IV conveniently omits that both TPOs were entered by the court, evidencing a colorable basis for Jan seeking them in the first place. Thus, this Court should swiftly reject Smith's hyperbolic allegations devoid of any factual enhancement.

Finally, the Counterclaim's allegations of severe emotional distress are conclusory at best. Smith alleges that he suffered extreme emotional distress, stress, anxiety, lack of ability to focus, damage to reputation, and damage to relationships. *Id.* at ¶ 88. These allegations are formulaic recitations of elements of emotional distress and lack the factual specificity required to state a plausible claim.[14] Smith does not allege that he sought medical or psychological treatment, that his emotional distress manifested in physical symptoms, that he cannot function or carry on with "necessary matters," (*see Haines*, 250 Md. App. at 233 (rejecting the claim that the emotional distress was severe)), or any other facts that would support a finding that his distress was severe. There is no particularization or factual support at all. Thus, Smith has not adequately plead the final requirement of an IIED claim. Having failed to sufficiently plead any element to establish the extraordinary claim of IIED, Count IV necessarily fails and should be dismissed for failure to state a claim upon which relief can be granted.

**E. Count V fails to state a claim for Civil Conspiracy.**

Count V alleges that GK and Jan agreed and acted in concert to coerce SFH into returning the Properties by means of abuse of process, malicious institution of civil proceedings, malicious prosecution, and IIED. ECF 34 at ¶ 92. Because Counts I through IV fail to state claims for the underlying torts as set forth above, Count V necessarily fails. A civil conspiracy claim requires an agreement to accomplish an unlawful act or to use unlawful or tortious means, an overt tortious act in furtherance of the agreement, and resulting damages. *Simarjeet Kaur v. Police Officer Pollack #5597*, 2023 U.S. Dist. LEXIS 73507, at *37 (D. Md. Apr. 26, 2023). Where the alleged underlying tortious conduct does not constitute a tort, there can be no civil conspiracy as the courts

[14] *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 581-82 (D. Md. 2023) ("Under the plausibility standard, a complaint must contain 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.' . . . 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to plead a claim.") (internal citations omitted).

have "consistently held that 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.*

Here, SFH and Smith's conspiracy claims fail at the threshold because, as set forth herein, they have not plausibly alleged any underlying tort. Even assuming *arguendo*, *i.e.*, that SFH and Smith plead a viable underlying tort—which they have not—the conspiracy count nevertheless still fails because the Counterclaim fails to allege facts showing an agreement between GK and Jan beyond their status as married co-tenants pursuing common interests in the landlord-tenant dispute. The fact that spouses jointly pursue litigation regarding their shared leasehold does not give rise to an inference of conspiracy, let alone some far-fetched tortious conduct in furtherance of an alleged conspiracy. Indeed, several of the complaints of tortious conduct were only allegedly instituted by Jan, such as the filing of the peace orders and criminal charges. Moreover, SFH and Smith fail to allege any overt, unlawful act taken in furtherance of a conspiracy. The conduct complained of – filing petitions for TPOs for alleged harassment and trespass (which were granted), filing criminal charges against Smith (which were issued upon a showing of probable cause), filing a Rent Escrow and Damages Action to obtain working and safe water service, filing a declaratory judgment action to enforce the Lease, and noting an appeal from an adverse judgment – are all uses of process for the purposes those processes were designed to serve. Lawful acts cannot supply the unlawful overt act required to sustain a civil conspiracy claim. Nor do SFH and Smith plausibly allege actual legal damages flowing from any unlawful conduct. Count V is conclusory and fails to allege facts sufficient to state a plausible conspiracy claim. Accordingly, this Court should dismiss Count V for failure to state a claim upon which relief can be granted.

### F. Count VI fails to state a claim for Breach of Contract and is barred by Res Judicata.

Count VI alleges that Plaintiffs breached the Lease by failing to use the Premises solely for residential purposes and by failing to act in good faith, because Plaintiffs do not reside at the Premises[15] and are using the property for storage of their belongings and have otherwise failed to act in good faith under the Lease. ECF 34 at ¶¶ 98-99. Count VI is a clear example of SFH's second-bite-at-the-apple attempt to relitigate the very claim already litigated and adjudicated on the merits in the Damages Action. Accordingly, Count VI is barred by res judicata.

On August 2, 2023, SFH and Smith filed the State Counterclaim in the Damages Action, which alleged that Plaintiffs did not reside at the Premises and allegedly were not using the property for residential purposes but rather for storage of their belongings and have otherwise allegedly failed to act in good faith under the Lease. *See* Ex. B at ¶ 17 ("[T]he Parandhamaias have used, and are continuing to use, portions of 2440 Bittinger, aside from the house and the garage, to store farming equipment, a shipping container, building materials and other miscellaneous items (collectively, the "Equipment") beyond the Premises[.]"); ¶ 18 ("Such storage of the Equipment . . . are in violation of the Lease and General Addendum[.]"); ¶ 24 ("The Parandhamaias . . . continued . . . to store the Equipment on 2440 Bittinger[.]"); ¶¶ 50-54 (alleging Count I for Breach of Contract and alleging violation of the Lease and the Parandhamaias' breach of the duty of good faith and fair dealing inherent in the Lease). The Circuit Court's October 13, 2023 Memorandum Opinion expressly addressed the scope of Plaintiffs' leasehold and found that Plaintiffs were entitled to use the house, garage, and curtilage for residential purposes, that storing

---

[15] The Counterclaim's allegation that Plaintiffs do not reside at the Premises but use it solely for storage is contradicted by Defendants' allegations in the very same pleading, wherein SFH and Smith allege that Plaintiffs reside at the Premises and that their conduct has interfered with their residential use and enjoyment. *See* ECF 34 at ¶¶ 40 (explaining that Jan is blocking Smith and his family's use of the driveway and screamed and swore at Smith and his family from her vehicle or the Premises); ¶ 59 (explaining that the Parandhamaias are present on the Premises).

equipment on the Premises did not constitute a trespass or breach of the Lease, and that the parties acted in good faith. *See* Ex. D. The Court awarded no monetary damages to any party. *Id.* SFH litigated the scope of the Lease and Plaintiffs' use of the Property in the state court action and is therefore barred by res judicata and/or collateral estoppel from relitigating those issues here.

Further, even assuming *arguendo* that the breach of contract claim has not already been adjudicated on the merits in the state court (which it has), it nevertheless fails to state a claim for relief. SFH alleges that GK and Jan do not reside on the Property and, therefore are in breach of the Lease. ECF 34 at ¶ 99 ("[T]he Parandhamaias do not reside at the Premises at 2440 Bittinger and, as such, are not using the property for residential purposes[.]"). Accepting this allegation as true (that GK and Jan do not reside at the Property), it does not supply a basis for breach of the Lease. The Lease simply states that "[t]he tenant shall use the Premises solely for residential purposes." *See* ECF 34, Ex. A. The Lease does not require GK and Jan to reside exclusively at the Premises or reside at the Premises full time, let alone any specific amount of time. SFH is clearly trying to manufacture clauses into the Lease that do not exist, evidenced by its failure to cite to a specific provision in the Lease requiring Plaintiffs to reside in the Premises. On its face, Count VI is without merit and fails to state a claim for breach of contract. More importantly, this claim has already been litigated and adjudicated in the state court and, therefore, SFH should be prohibited from taking a second bite at the apple and this Court should dismiss Count VI.

### G. Count VII fails to state a claim for Improper Claim for Retaliatory Eviction.

Count VII alleges that Plaintiffs lacked substantial justification to assert a claim for retaliatory eviction against SFH and Smith, and that the claim was brought in bad faith as part of Plaintiffs' constant and continued attempts to re-acquire the Premises. ECF 34 at ¶¶ 101-05. On par with Counts I-VI, Count VII also fails to state a claim upon which relief can be granted.

Maryland Code, Real Property ("RP") § 8-208.1 provides that if in any proceeding the court finds that a tenant's assertion of a retaliatory action was in bad faith or without substantial justification, the court may enter judgment against the tenant for damages not to exceed the equivalent of three months' rent, reasonable attorney fees, and court costs.

This Court dismissed Plaintiffs' retaliatory eviction claim (Count V) in its Order dated June 15, 2026. ECF 30. However, dismissal of a claim on the pleadings does not establish that the claim was asserted in bad faith or without substantial justification. To recover under § 8-208.1, Defendants must prove—after discovery and at trial—that Plaintiffs asserted the retaliatory eviction claim knowing it lacked merit and for an improper purpose. The Court's dismissal of Count V was based on legal insufficiency under the heightened pleading standards of *Twombly* and *Iqbal*, not on a finding of subjective bad faith. Indeed, this Court dismissed Count V because it could not determine "whether the 'request' involved the threat of an action for possession nor whether Defendants made it within six months of Plaintiffs bringing the claim for water access" and, further, that in regards to Plaintiffs' letter demanding removal of the cameras on June 10, 2024, the letter was actually sent on December 23, 2024 and the Parandhamaias' protective activity occurred after Defendants filed the Motion for Sanctions requesting cancellation of the Lease on June 12, 2024. *Id.* As an initial matter, Plaintiffs intend to request leave to file a Second Amended Complaint following the Court's Order partially granting and partially denying Defendants' motion to dismiss the First Amended Complaint, which will, in part, correct and clarify the timeline of events with respect to Count V for Retaliatory Eviction. *See* ECF 36 (Joint Correspondence re: Scheduling Order). In any event, even assuming the Court denies the forthcoming motion for leave, the legal conclusion reached by this Court in its Memorandum Opinion and Order does not establish that Plaintiffs acted in bad faith or without substantial justification in asserting the claim.

Moreover, Counterclaim VII seeks relief available only "in any proceeding" under § 8-208.1. The statute contemplates that the court adjudicating the retaliatory eviction claim will, if appropriate, award sanctions for bad-faith assertion of that claim in the same proceeding. Defendants did not move for sanctions under § 8-208.1 in connection with this Court's dismissal of Count V. Instead, they have asserted an independent cause of action seeking damages. The statute does not authorize a freestanding cause of action for improper assertion of a retaliatory eviction defense or claim; it authorizes the court to award sanctions in the proceeding in which the claim is adjudicated, upon motion and a finding of bad faith or lack of substantial justification.

Finally, even if the Court were to construe Count VII as a motion for sanctions under § 8-208.1 arising from the dismissal of Count V in the Complaint, Defendants have not met their burden. The Counterclaim alleges in conclusory fashion that Plaintiffs lacked substantial justification and acted in bad faith as part of their attempts to re-acquire the Premises, which as set forth above in detail, is without merit. *See supra*, Arg., Sec. I; *supra*, n. 6. These allegations are threadbare recitals unsupported by factual matter showing why Plaintiffs' assertion of the retaliatory eviction claim—predicated on the June 21, 2024 Motion for Sanctions that sought termination of the Lease—was objectively baseless or brought for an improper purpose. In sum, Counterclaim VII is not an independent cause of action, is wholly conclusory, and is contradicted by this Court's Order which did not make any finding that GK and Jan acted in bad faith or without substantial justification in bringing Count V. Therefore, Count VII of the Counterclaim fails to state a claim upon which relief can be granted and should be dismissed.

## V. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion to Dismiss and dismiss Defendants' Counterclaims I through VII with prejudice.

Date: August 17, 2026

Respectfully submitted,

*/s/ Jonathan P. Kagan*
Jonathan P. Kagan (D. Md. Bar No. 23181)
kagan@kaganstern.com

*/s/ Michael J. Marinello*
Michael J. Marinello (D. Md. Bar No. 18490)
marinello@kaganstern.com

*/s/ Veronica J. Mina*
Veronica J. Mina (D. Md. Bar No. 30472)
mina@kaganstern.com
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
Phone: (410) 216-7900
Facsimile: (410) 705-0836

*/s/ Adam D. Greivell*
Adam D. Greivell, Esquire (D. Md. Bar No. 28917)
adam@gfirm.us
THE GREIVELL FIRM
5 Cornell Avenue
Hagerstown, Maryland 21742
Phone: (240) 528-8150

*Counsel for Plaintiffs/Counter-Defendants*
*GK Parandhamaia and Jan Parandhamaia*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of August, 2026, a copy of the foregoing Memorandum in Support of Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim was filed and served via the CM/ECF filing system, on the following:

Tracey B. Eberling (MD Fed. Bar ID 11393)
Steptoe & Johnson PLLC
1250 Edwin Miller Blvd, Suite 300
Martinsburg, WV 25404
(O): 304.263.6991
Email: tracey.eberling@steptoe-johnson.com

Nicholas L. Fiske*
Pennsylvania Bar No. 309696
Email: nick.fiske@steptoe-johnson.com

Joseph R. Lewis III*
Pennsylvania Bar No. 328830
Email: joseph.lewis@steptoe-johnson.com

**STEPTOE & JOHNSON PLLC**
One PPG Place, Suite 3300
Pittsburgh, Pennsylvania 15222
Telephone: 412-504-8010
Fax: 412-504-8011
**Admitted Pro Hac Vice*

*Counsel for Defendants*
*Smith Farm Holdings, LLC and Steven G. Smith*

Date: August 17, 2026

*/s/ Veronica J. Mina*
Veronica J. Mina (D. Md. Bar No. 30472)